WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore (JCS-6031)

633 West Fifth Street, Suite 1900
Los Angeles, California 90071-2007
(213) 620-7700
Craig H. Averch (Admitted *Pro Hac Vice*)

Attorneys for Plaintiff OLD LADDER LITIGATION CO., LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust, <br><br> Plaintiff, <br><br> v. <br><br> INVESTCORP BANK B.S.C., *et al.*, <br><br> Defendants. | Case No.  08 CIV 0876 (RMB)(THK) <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO INVESTCORP DEFENDANTS' MOTION FOR RECONSIDERATION** |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT………………………………………………………………...1

FACTUAL AND PROCEDURAL BACKGROUND……………………………………………..2

    1.   The Nature of This Case.............................................................................................2

    2.   The Requests for Discovery of the Doe Defendants' Identities and Locations................3

    3.   The Investcorp Defendants' Failure to Comply with the Order........................................5

I. THE MOTION ACKNOWLEDGES THAT 33 OF THE INVESTCORP DEFENDANTS
    HAVE, WITHOUT JUSTIFICATION, REFUSED TO COMPLY WITH THE COURT'S
    ORDER.......................................................................................................................6

II. THE BANK HAS FAILED TO SHOW A VALID BASIS FOR RECONSIDERATION OF
    THE APRIL 21 ORDER AS APPLICABLE TO IT ..................................................................7

    A.  The Court Committed No Error in Ordering Production........................................................8

    B.  The Motion Does Not Present Any New Evidence That Was Not Previously Available to
        the Bank..........................................................................................................................9

    C.  The Order Is Not Manifestly Unjust as to the Bank – Indeed, Justice Requires Production
        of the Information Subject to the Order ...........................................................................10

        1.   The Information Sought is Directly Relevant to this Action............................................11

        2.   The Bank Has Not Shown that Bahraini Law Prohibits Disclosure of the Information
            Sought .........................................................................................................................11

        3.   The Lack of Alternative Means of Access to the Doe Defendants' Identities Supports
            Disclosure...................................................................................................................12

        4.   The Interest of the United States in Disclosure Outweighs Any Interest of Bahrain in
            Secrecy of Customer Identities......................................................................................13

        5.   The Specificity of the Requested Information and its Origination in the United States
            Weighs in Favor of Disclosure.......................................................................................14

        6.   The Bank's Lack of Action Weighs in Favor of Disclosure ...........................................15

CONCLUSION ...................................................................................................................16

## TABLE OF AUTHORITIES

Page

### CASES

*Articrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,*
  No. 04 Civ. 10014 PKL, 2007 WL 404768 (S.D.N.Y. Feb. 5, 2007) .........................................16

*Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.,*
  No. 01 Civ. 9649, 2007 WL 2493684 (S.D.N.Y. Sept. 5, 2007)..............................................8, 9

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,*
  105 F.R.D. 16 (S.D.N.Y. 1984) ...................................................................................... passim

*Ferguson v. Lion Holding, Inc.,*
  Nos. 02 Civ. 4258, 02 Civ. 4261, 2007 WL 2265579 (S.D.N.Y. Aug. 6, 2007) ..........................8

*Fidelity Partners, Inc. v. First Trust Co. of New York,*
  58 F.Supp.2d 55 (S.D.N.Y. 1999) ....................................................................................9

*Griffin Ind., Inc. v. Petrojam, Ltd.,*
  72 F.Supp.2d 365 (S.D.N.Y. 1999) ..................................................................................16

*In re Allou Distributors, Inc.,*
  379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..................................................................................3

*In re Finley, Kuble, Wagner, Heine, Underberg, Manley, Myerson & Casey,*
  130 F.3d 52 (2nd Cir. 1997)...........................................................................................3

*In re Health Management Sys. Inc. Secs. Litg.,*
  113 F.Supp.2d 613 (S.D.N.Y. 2000) ...............................................................................7

*Koehler v. Bank of Bermuda Ltd.,*
  No., M18-302, 2005 WL 1119371, (S.D.N.Y. May 10, 2005) .................................................9

*Linde v. Arab Bank, PLC,*
  463 F.Supp.2d 310 (E.D.N.Y. 2006) ........................................................................ 13, 14, 15

*Marc Rich & Co., A.G. v. United States,*
  707 F.2d 663 (2d Cir. 1983).............................................................................................7

*Montanile v. National Broadcasting Co.,*
  216 F.Supp.2d 341 (S.D.N.Y. 2002) ......................................................................... 8, 10, 16

*Reino De Espana v. American Bureau of Shipping,*
  No. 03CIV3573LTSRLE, 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005)...................... 10, 11, 13

*Sequa Corp. v. GBJ Corp.,*
  156 F.3d 136 (2d Cir. 1998)..............................................................................................16

*Societe Nationale Industrielle Aerospatiale v. United States District Court,*
  482 U.S. 522 (1987) ...................................................................................................... 8, 10

*United States v. First National City Bank,*
  396 F.2d 897 (2d Cir. 1968)...................................................................................... 7, 13, 14

*United States v. Int'l Bd. of Teamsters,*
  247 F.3d 370 (2d Cir. 2001).............................................................................................9

## TABLE OF AUTHORITIES

(Cont'd)

Page

*Williams v. New York City Dep't of Corrections,*
   219 F.R.D. 78 (S.D.N.Y. 2003) ........................................................................8

*WTC Captive Ins. Co., Inc. v. Liberty Mutual Fire Ins. Co.,*
   537 F.Supp.2d 619 (S.D.N.Y. 2008) ................................................................9

### STATUTES

11 U.S.C. § 550 ............................................................................................ 3, 11

FRCP 33(b)(4) ..................................................................................................10

FRCP 37.............................................................................................................7

## PRELIMINARY STATEMENT

Before the Court is exactly the type of motion that makes the civil discovery process so unnecessarily painful and costly. On April 21, 2008, three of the thirty-four named Investcorp Defendants (Investcorp Bank B.S.C., Investcorp International, Inc. and Investcorp, S.A.) consented to entry of an order (the "Order") requiring disclosure of the names and addresses of named Doe defendants. Now, without having disclosed any information, all thirty-four have moved the Court to reconsider the consented-to Order. The sole basis for reargument is their new contention that Bahraini law allegedly prohibits the one Bahraini defendant – Investcorp Bank B.S.C. (the "Bank") – from producing information relating to the identities of customers of the Bank. Thus, they argue in a complete non-sequitur, none of the Investcorp Defendants should have to comply with the Order.

The Court should deny reargument. At heart, the Investcorp Defendants provide no legitimate reason why the arguments for non-disclosure which are now being raised were not raised in prior written submissions to the Court or at the two prior court hearings on the issue. Indeed, as respondents to outstanding discovery requests interposed months ago, it has been incumbent upon each of the Investcorp Defendants to determine what, if any, confidentiality issues (and other objections) would prevent disclosure and to take steps to position themselves to comply with their disclosure obligations. From the Motion, it is clear that, at best, they did nothing to determine applicable confidentiality restrictions under Bahraini law. At worst, they have actively concealed the issue in order to delay production as long as possible. Either way, there is no basis for allowing any Investcorp Defendant to reargue the Order.

More important, even if the Court were to carve the Bank out of the Order to avoid a purported conflict of laws (which it should not), the Motion offers no explanation as to why

either of the other two consenting defendants should be excused. Nor does the Motion provide any basis to relieve from discovery any of the Cayman Island and Luxembourg-based Investcorp Defendants which actually received over $123 million in fraudulent conveyances at issue. None of those Defendants are alleged to be subject to Bahraini secrecy laws, and all should be required to produce.

Given the continuing prejudice to Old Ladder by further delays in identifying all proper defendants, the Court should order each of the Investcorp Defendants to produce the requested names and addresses by May 9, 2008 and assess a monetary sanction of $5,000 per day for each calendar day thereafter that production is not made.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    The Nature of This Case

On January 24, 2008, plaintiff Old Ladder Litigation Co. LLC ("Old Ladder") filed its Complaint naming 34 different Investcorp Defendants. As noted in previous correspondence with this Court (all of which is incorporated into the record on this Motion), Old Ladder seeks to recover (a) in excess of $330 million transferred by Old Werner to certain defendant shareholders, insiders and professionals in 1997 and (b) in excess of $150 million transferred by Old Werner to certain of those defendants in 2003, in both cases on the grounds that such transfers were fraudulent conveyances under state and federal law. Invoking section 550 of the Bankruptcy Code, the Complaint named numerous "Doe" defendants as defendants who had

---

[1] According to the Motion, the Investcorp Defendants have apparently already ascertained the identity of the Doe defendants. Thus, the actual production of their names and addresses should be a ministerial task which can easily be completed in the time requested.

received distributions from other Investcorp Defendants as "immediate or mediate transferees" or as entities "for whose benefit such transfer[s] [were] made."[2]

Old Ladder filed the Complaint on January 24, 2008 and immediately began service. On or about February 15, 2008, counsel for the Investcorp Defendants contacted Old Ladder, introduced themselves, and requested an extension of time to respond to the Complaint. Old Ladder agreed to the extension and immediately raised with counsel, in writing, the need for limited, expedited discovery of the identities and locations of the Doe Defendants. Counsel in turn informed Old Ladder, in writing, that it had passed the discovery request along to the Investcorp Defendants, but subsequently reported that they would not produce the requested information voluntarily. To be clear then, nine weeks before the April 21, 2008 hearing, the Investcorp Defendants had full knowledge of exactly what information Old Ladder was requesting and an ample opportunity to investigate and attempt to resolve any possible issues with production.

## 2.    The Requests for Discovery of the Doe Defendants' Identities and Locations

Because the Investcorp Defendants refused to produce names and addresses voluntarily, on February 27, 2008, Old Ladder filed a letter with the Court requesting expedited discovery from each of the Investcorp Defendants. In that letter, Old Ladder specifically identified what it sought – the "identities and locations of certain 'Doe defendants.'" The letter further explained that many of the entities which were the initial transferees of the 1997 and 2003 conveyances are

---

[2] Under Section 550 of the Bankruptcy Code, proceeds of fraudulent transfers may be recovered not only from initial transferees and entities for whose benefit the transfer was made but also from all "immediate or mediate transferee[s]":
> [e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

*See* 11 U.S.C. § 550; *In re Finley, Kuble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56 (2nd Cir. 1997); *In re Allou Distributors, Inc.*, 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007).

Investcorp – affiliated companies from the Cayman Islands and Luxembourg which do not publicly identify their interest holders.[3]

On February 28, 2008, Judge Berman referred the matter to this Court, which immediately set a status conference for March 20, 2008. During that conference, Old Ladder once again explained its discovery requests in open court. In response, counsel for the Investcorp Defendants commented that it would respond to the February 27 letter, and further represented that formal discovery requests would not be necessary. (Trans. at 13).

On April 1, 2008, the Investcorp Defendants submitted their opposition letter brief to the Court, objecting to the requested discovery solely on grounds that (i) expedited discovery was not warranted and (ii) the Court lacked personal jurisdiction over certain defendants. The Investcorp Defendants did not raise in the letter brief any argument that the requested information was protected from disclosure.

On April 17, 2008, immediately following a Rule 26(f) conference with all Defendants, Old Ladder submitted a letter to the Court responding to the April 1 letter and updating the Court on other discovery matters. Contrary to the Investcorp Defendants' present representations to the Court, Old Ladder did not raise a new "contention that the requested discovery is not confidential or privileged material." (Motion at 1). Rather, the reply simply highlighted the fact that, in opposing discovery, the Investcorp Defendants had not raised any objections based on confidentiality, privilege or burden.

At the April 21, 2008, hearing, Old Ladder once again stated its discovery request on the record explaining that it wanted "the names and addresses of each of the investors in each of the

---

[3] Old Ladder is informed and believes that the Bank and/or Investcorp S.A. had and have no economic interest in most of these entities but that they, or an affiliate, controlled the voting interests of such entities in Old Werner based on management services or similar agreements. The investors in such entities were not investing in Investcorp, but rather in the target entity – in this case, Old Werner.

Cayman and other Investcorp investment vehicles who received a distribution of funds in connection with the 1997 transaction and the 2003 transaction as defined in the Complaint." (Trans. at 13). The Investcorp Defendants' counsel understood exactly what was being requested: "the names and addresses of any persons to whom funds received in the challenge[d] transactions were subsequently transferred." (Trans. at 12). In seeking to resolve the dispute and presumably avoid obtaining an adverse ruling on jurisdiction, counsel for the Investcorp Defendants made a tactical choice. Rather than continue fighting the issue, counsel represented on the record that Investcorp International, Inc., Investcorp, S.A. and the Bank "have the ability to get those documents" (Trans. at 8), agreed that the Court had jurisdiction over these entities, and conceded that the Court could order the requested production. In response, the Court ruled that the discovery was warranted and properly ordered it. (Trans. at 13).

### 3.     The Investcorp Defendants' Refusal to Comply with the Order

On April 24, 2008, Old Ladder wrote to counsel for the Investcorp Defendants and requested that, in accordance with the Order, the Investcorp Defendants produce the requested information by April 30, 2008. Old Ladder received no response leading up to or on April 30, 2008. Instead, on May 1, 2008, the Investcorp Defendants filed their Motion seeking reconsideration of the consented-to Order on the basis that Bahraini law allegedly prohibits the Bank (referred to therein as "Investcorp") from disclosing certain information regarding its customers.

**ARGUMENT**

**I.**

**THE MOTION CONCEDES THAT 33 OF THE INVESTCORP DEFENDANTS HAVE, WITHOUT JUSTIFICATION, REFUSED TO COMPLY WITH THE COURT'S ORDER**

As noted above, during the April 21, 2008 hearing, the Investcorp Defendants represented that the Bank, as well as Investcorp International, Inc., and Investcorp, S.A., have the ability to provide the requested discovery. (Trans. at 8).[4] Leaving aside specific issues with respect to the Bank which are addressed in section II, _infra_, the Motion provides no evidence, argument, or explanation as to why either Investcorp International, Inc., or Investcorp S.A. have failed to abide by this Court's Order and supply the requested information. Investcorp International, Inc. is a corporation organized in Delaware with its principal place of business in New York. Investcorp S.A. is a Luxembourg corporation with headquarters in New York. Neither of these defendants is alleged to be subject to Bahraini law, and there is no justification whatsoever as to why Bahraini law should excuse either from responding to lawful discovery in this action. Additionally, the Motion provides no evidence or argument why any Investcorp Defendants other than the Bank are constrained by Bahraini law. Importantly, none of the other Investcorp Defendants is alleged to be subject to Bahraini law – all are either Cayman or Luxembourg companies. (See Exhibit A hereto).

As a result, as to each of the Investcorp Defendants other than the Bank, the Court should confirm its Order and require each to produce the requested information by May 9, 2008. Because the Court has already concluded that discovery is warranted and should be expedited, it

---

[4] In representing that the Court has personal jurisdiction over these three Investcorp Defendants and that they could make the production, counsel deliberately sidestepped and delayed a legal determination that this Court has personal jurisdiction over all of the Investcorp Defendants. By now tying all of the Investcorp Defendants together in the Motion, any defenses of lack of personal jurisdiction have now been waived by the Investcorp Defendants, and all should be subject to the Order.

should assess a monetary sanction of $5,000 per calendar day for each day after May 9 that production is not made. In that regard, the Court has the discretion to sanction the defendants for failing to comply with the Court's Order, even if their refusal to produce is based upon perceived foreign law constraints. *See United States v. First National City Bank*, 396 F.2d 897, 900 (2d Cir. 1968) (holding the existence of a foreign bank secrecy statute did not justify the bank's failure to comply with the subpoena *duces tecum* and affirming sanctions of $2,000 fine per day and 60 days imprisonment for civil contempt); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 32 (S.D.N.Y. 1984) (noting that the court will consider imposition of the entire range of available sanctions under Rule 37 of the Federal Rules of Civil Procedure for failure to comply with its order); *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663 (2d Cir. 1983) (finding that the district court had discretion to hold the foreign defendant in contempt for failing to comply with a subpoena *duces tecum* and to impose sanctions of $50,000 per day to compel compliance).

## II.

### THE BANK HAS FAILED TO SHOW A VALID BASIS
### FOR RECONSIDERATION OF THE APRIL 21 ORDER AS APPLICABLE TO IT

As for the Bank and its new claim of confidentiality, reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Secs. Litg.*, 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000). It should only be used: (1) to correct clear error by the Court and not by parties or their counsel, as the Bank (which is the only Investcorp Defendant arguably subject to Bahraini law) seeks to do here; (2) to consider new evidence not available to the parties previously and not to allow parties to simply make late arguments that could have been made previously; and (3) to prevent manifest injustice and not to create it by allowing parties to delay and avoid providing

discovery essential to the prosecution of this case, as the Bank seeks to do here. *See e.g.*

*Montanile v. National Broadcasting Co.*, 216 F.Supp.2d 341, 342 (S.D.N.Y. 2002); *Banco*

*Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649, 2007 WL

2493684, at *2 (S.D.N.Y. Sept. 5, 2007); *Ferguson v. Lion Holding, Inc.*, Nos. 02 Civ. 4258, 02

Civ. 4261, 2007 WL 2265579, at *6-7 (S.D.N.Y. Aug. 6, 2007).

      The Motion does not satisfy any of these standards.

**A.     The Court Committed No Error in Ordering Production**

      Under Local Rule 6.3, a motion for reconsideration may be granted if the moving party

can demonstrate that the Court overlooked controlling law or factual matters which the parties

put before the Court. *Montanile v. National Broadcasting Co.*, 216 F.Supp.2d 341, 342

(S.D.N.Y. 2002) (emphasis added) (denying the motion for reconsideration because the court did

not overlook the issues the movant relied upon as grounds for reconsideration). However, "the

moving party is precluded from advancing new facts, issues or arguments not previously

presented to the court." *Williams v. New York City Dep't of Corrections*, 219 F.R.D. 78, 83

(S.D.N.Y. 2003) (internal quotations omitted).

      Here, the Bank does not contend the Court overlooked any controlling authority or made

any reversible error whatsoever in entering the Order on consent. On the contrary, the Motion

concedes that the Court has authority to order disclosure: "[I]t is well settled that [a foreign

'blocking' statute] do[es] not deprive an American court of the power to order a party subject to

its jurisdiction to produce evidence even though the act of production may violate that statute."

*See* Motion, p. 5-6; *Societe Nationale Industrielle Aerospatiale v. United States District Court*,

482 U.S. 522, 544 (1987) ("Societe Nationale"); *see also Compagnie Francaise D'Assurance*

*Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 29 (S.D.N.Y. 1984) ("a

foreign law's prohibition on discovery is not a bar to issuance of a discovery order").

**B.    The Motion Does Not Present Any New Evidence That Was Not Previously Available to the Bank**

A motion for reconsideration may also be granted based on the availability of "new evidence." Relief on that ground, however, may only be had if: "(1) newly discovered evidence is of facts existing at the time of the [prior decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) newly discovered evidence is not merely cumulative . . . of evidence already offered." *Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649, 2007 WL 2493684, at *2 (S.D.N.Y. Sept. 5, 2007) (quoting *Fidelity Partners, Inc. v. First Trust Co. of New York*, 58 F.Supp.2d 55, 59 (S.D.N.Y. 1999) (citation omitted); *see also WTC Captive Ins. Co., Inc. v. Liberty Mutual Fire Ins. Co.*, 537 F.Supp.2d 619, 623-34 (S.D.N.Y. 2008) (denying motion for reconsideration despite the moving party's reference to a new case it claimed to be important precedent because "a motion for reconsideration is not the time to bring a supposedly important precedent to the court's attention"; motions for reconsideration "are not intended to save the parties from the consequences of their own research neglects"); *Koehler v. Bank of Bermuda Ltd.*, No., M18-302, 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (denying motion for reconsideration when party inadvertently omitted materials from original brief). "A party seeking to alter or amend a judgment on the basis of newly discovered evidence b ears an 'onerous' burden." *Banco Central Del Paraguay*, 2007 WL 2493684 at *2 (citing *United States v. Int'l Bd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).

Here, the Motion does not present any newly discovered "evidence." Rather, it presents an objection that the Bank's counsel apparently neglected to interpose in its responses to discovery requests, perhaps because counsel failed to communicate with the appropriate Bank

personnel.  The Bank, however, has not offered any reasonable excuse for its ignorance of

Bahraini laws, nor can it.[5]

**C.    The Order Is Not Manifestly Unjust as to the Bank – Indeed, Justice Requires Production of the Information Subject to the Order**

The only other ground available for reconsideration is the Court's inherent power to

prevent a "manifest injustice."  *See Montanile v. National Broadcasting Co.*, 216 F.Supp.2d 341,

342 (S.D.N.Y. 2002).  In that regard, the Bank contends that, because the Order requires it to

violate Bahraini law in order to comply, the Court should vacate the Order on comity grounds.

An application of principles of international comity to this case, however, falls far short

of supporting vacatur of the Order as to the Bank.  The international comity analysis

promulgated by the Supreme Court in *Societe Nationale* identifies the following relevant factors

in assessing conflicting sovereign legislation regarding discovery requests: (1) the importance to

the litigation of the documents or other information requested; (2) the degree of specificity of the

request; (3) whether the information originated in the United States; (4) the availability of

alternative means of securing the information; and (5) the competing interests of the United

States and the other nation.  *Societe Nationale*, 482 U.S. at 544 n. 28 (1987).  The Second Circuit

considers two additional factors – hardship of compliance on the party from whom discovery is

sought and the good faith of the party resisting discovery.  *Reino De Espana v. American Bureau

of Shipping*, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005).  Each

factor is discussed below.

---

[5] For the same reason, the Bank has failed to establish the "good cause" necessary under FRCP 33(b)(4) to interpose a late objection to an interrogatory.

1.    **Justice Requires Production by the Bank of the Identities of the Investcorp Defendants' Investors that Received over $123 Million from a United States Company**

When assessing a claimed conflict between foreign and U.S. disclosure laws, "[p]roduction is favored when the evidence sought from the producing party is directly probative to the issues of the case." *Reino De Espana v. American Bureau of Shipping*, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *7 (S.D.N.Y. Aug. 1, 2005). The Court only needs to consider the relevancy of the requested documents, and "does not need to find . . . that the requested documents are 'vital'" to the litigation. *Compagnie*, 105 F.R.D. at 32.

As this Court has already found requiring discovery, there is cause for early identification of the investors in offshore companies and partnerships which received over $123 million in distributions from Old Werner to the detriment of its creditors. Such investors are "immediate or mediate transferee[s]" or entities "for whose benefit such transfer[s] [were] made," potentially subject to liability for fraudulent transfer pursuant to 11 U.S.C. § 550. The requested information is plainly necessary to identify the appropriate defendants to this lawsuit and allow Old Ladder to recover funds that were fraudulently transferred to numerous offshore companies and their investors. Indeed, the identities of defendants that received transfers could not be more relevant and vital in a fraudulent transfer action.

2.    **The Bank Has Not Shown that Bahraini Law Prohibits Disclosure of the Information Sought**

As to the hardship factor, the Bank has failed to meet its burden of showing that Bahraini law prohibits disclosure of the requested information.

First, it is our understanding (to be supported by a foreign law affidavit if necessary) that Article 117 of the Central bank of Bahrain Law (Decree No. 64 of 2666) only restricts disclosure of "Confidential Information" by a "Licensee." A "Licensee" is defined as a Bahrain-based

financial institution licensed and regulated by the Central Bank of Bahrain. As noted in Section I, supra, Investcorp S.A. (a Luxembourg corporation), Investcorp International, Inc. (a Delaware corporation), and all of the Cayman Islands and Luxembourg investment entities do not fit the definition of "Licensees" under Bahraini law. Thus, to the extent that the Court enforces its Order as to these other Investcorp Defendants, nothing in the Bahraini law would subject the Bank to penalty.

Second, the Motion fails to establish that, to the extent the Bank is required to produce, the names and addresses of investors in the investment vehicles which owned interests in Old Werner would in fact constitute "Confidential Information" of the Bank under Bahraini law. It is our understanding (again to be supported by an affidavit if necessary) that Article 117 does not restrict the Bank from disclosing information regarding customers of entities other than the Bank. Again, the focus of the discovery here is not on direct customers of the Bank, but rather on the investors in the downstream investment entities who received distributions from Old Werner.

Finally, it bears noting that even if the Bank could potentially subject itself to penalty if it provided the requested information in accordance with the Order, this Court has made clear that the imposition of penalties alone "would not necessarily be sufficient to warrant nondisclosure." *Compagnie*, 105 F.R.D. at 30.

In light of the lack of demonstrated hardship, this factor weighs in favor of disclosure.

### 3.    The Lack of Alternative Means of Access to the Doe Defendants' Identities Supports Disclosure.

To the extent that the Investcorp Defendants other than the Bank refuse to produce or are unable to produce the requested information, Old Ladder will have no way of ascertaining the identities of the Doe defendants other than through the Bank. (Again, if the others can produce,

issues relating to the Bank are moot.)  This "alternative means" element thus weighs in favor of disclosure.

### 4.    The Interest of the United States in Disclosure Outweighs Any Interest of Bahrain in Secrecy of Customer Identities

On the fourth factor, concerning balancing of sovereign interests, the interests of the United States in ordering discovery of the Doe defendants' names and addresses trumps Bahrain's alleged interest in secrecy and weighs in favor of upholding the Order.  In the context of discovery disputes, the United States has two important interests.  First, "the United States has a substantial interest in fully and fairly adjudicating matters before its courts," which is "only possible with complete discovery."  *Compagnie*, 105 F.R.D. at 30.  Second, the United States has a strong interest "in protecting its own nationals from unfair disadvantage."  *Id.*  This interest is statutorily articulated in the federal fraudulent transfer statutes on which Old Ladder's claims rest.  *See Linde v. Arab Bank, PLC*, 463 F.Supp.2d 310, 315 (E.D.N.Y. 2006) (the United States has an important interest in enforcing its statutes, and without compliance with the discovery orders at issue, "the interests expressed in those statutes [would] be difficult if not impossible to vindicate").

With respect to the other side of the scale, the Motion fails to offer any support for the concept that Bahraini secrecy laws are to be held sacrosanct.  The bare assertion that Bahrain has a "strong interest in its bank secrecy law" is plainly insufficient to vacate the Order.  *See United States v. First National City Bank*, 396 F.2d 897, 903 (2d Cir. 1968) ("There is little merit, however, in [the foreign party's] suggestion that the mere existence of a bank secrecy doctrine requires us to accept on its face . . . that compliance with the subpoena would violate an important public policy of [the foreign nation].").  Further, the authorities cited by the Bank in the Motion actually support disclosure here.  In *Reino De Espana v. American Bureau of Shipping*, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *4 (S.D.N.Y. Aug. 1, 2005), the court

found that the United States' interest in fully and fairly adjudicating matters before its courts trumped the foreign nation's public interest in maintaining secrecy in the investigative phase of criminal proceedings and ordered the foreign party to produce the documents at issue. Similarly, in *Linde v. Arab Bank, PLC*, the court held that bank secrecy laws did not excuse a Jordanian bank from being ordered to produce appropriately limited categories of documents and information. 463 F.Supp. 2d at 314-15.

Indeed, the allegation of Bahrain's "strong interest" in secrecy is substantially undermined by the fact that, under Bahraini law, customers can consent to disclosure of "Confidential Information." (*See* Motion at 2). As a matter of law, the strength of a foreign nation's interest in secrecy is materially undercut if the protections of the secrecy law at issue can be waived by the customer. *First National City Bank*, 396 F.2d at 903. In other words, the comity analysis is intended to protect sovereign, not private, interests. Thus, whether or not Investcorp's downstream customers would prefer to keep their names out of public filings is entirely irrelevant to the comity analysis.

Taking all the foregoing issues into consideration, the balancing factor supports disclosure.

### 5. The Specificity of the Requested Information and its Origination in the United States Weighs in Favor of Disclosure

Where disclosure is forbidden by foreign law, generalized searches of information are discouraged. *Reino Do Espana*, 2005 WL 1813017 at *9. Here, however, the request for information is narrowly tailored. Old Ladder simply seeks the names and addresses of those investors to whom funds from the Old Werner transactions were distributed so that Old Ladder can, if necessary, commence action against the proper defendants. Further, the information would be totally unnecessary except for the fact that the Investcorp Defendants and the Doe

defendant investors accepted fraudulent transfers amounting to over $123 million from a United States company which utilized bank accounts in the United States.

This factor, too, supports disclosure.

### 6.    The Bank's Lack of Action Weighs in Favor of Disclosure

As to the final factor, the Investcorp Defendants repeatedly assert their "good faith" as a justification for the Motion, and go so far as to argue that the "only reason" they are opposing the discovery is to avoid violating Bahraini law.  (Motion at 9).  As an initial matter, this is clearly wrong – all of the Investcorp Defendants opposed any discovery long before the Bahraini law issue surfaced.  Indeed, from the record to date, this Court could conclude that the Investcorp Defendants have tactically engaged in a pattern of activity specifically designed to forestall discovery of names and addresses until after relevant limitations periods have passed.  There is no "good faith" in that.

Further, the Motion's conclusory representation that the Bank is innocently precluded from complying with the Order demonstrates the Investcorp Defendants' continued lack of good faith in the discovery process.  As noted, Investcorp S.A., Investcorp International, Inc. and the rest of the Investcorp Defendants have all failed to provide discovery even though they are clearly not governed by Bahraini law.  More important, even if the Bahraini secrecy law applied as to the Bank, the Bank could have complied with the Order by acquiring the consent of its subsidiaries investors or petitioning the Central Bank authority.  Tellingly, the Bank has provided no evidence that it made any attempt to contact the investors and request such consent.  Nor has it provided any evidence that it has presented the Court's Order to the appropriate Bahraini authority and requested approval to comply.  If the Bank were acting in good faith, as it contends, it clearly could have done something to facilitate disclosure.  Indeed, good faith may

require a disclosing party to make reasonable efforts to obtain clearance from the relevant foreign authorities to disclose. *See Linde*, 463 F.Supp.2d at 316.

## CONCLUSION

In the end, a motion for reconsideration "is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided." *Montanile*, 216 F.Supp.2d at 342  (citing *Griffin Ind., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999); *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'"); *Articrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014 PKL, 2007 WL 404768, at *2 (S.D.N.Y. Feb. 5, 2007) (denying a trustee's motion for reconsideration offering an affidavit purporting to fill the evidentiary gap in its previous papers because a motion for reconsideration is a means for a court, not for a party or its counsel, to correct its oversights in a prior proceeding).

Here, the Bank and the other 33 Investcorp Defendants may be dissatisfied with their obligations to disclose the identities of the Doe defendants, but justice requires that disclosure. The Court should not reconsider its Order and should require all Investcorp Defendants to cooperate in the production of the requested names and addresses. The Court should further order that each of the Investcorp Defendants produce the requested information by no later than May 9, 2008, and should order sanctions of $5,000 per day for each calendar day thereafter that production is withheld.

WHITE & CASE LLP

By: _____

J. Christopher Shore (JS–6031)
1155 Avenue of the Americas
New York, New York  10036
(212) 819-8200


*Attorneys for Plaintiff OLD LADDER*
*LITIGATION CO., LLC*

Dated: _____

New York, New York

## EXHIBIT A

| | Non-Bahraini Investcorp Defendants | Amount of Fraudulent Transfer Received |
|---|---|---|
| 1. | Investcorp International, Inc., a Delaware corporation. | Over $15,000,000 |
| 2. | Step Investments Limited, a Cayman Islands company. | $12,237,502 |
| 3. | WL Holdings Limited, a Cayman Islands company. | $11,119,359 |
| 4. | Equity WERA Limited, a Cayman Islands company. | $10,392,911 |
| 5. | Werner Equity Limited, a Cayman Islands company. | $8,883,064 |
| 6. | Climbing Products Limited, a Cayman Islands company. | $8,883,064 |
| 7. | Ladder Equity Limited, a Cayman Islands company. | $8,883,064 |
| 8. | Werner Investments Limited, a Cayman Islands company. | $8,883,064 |
| 9. | Invifin, S.A., a Luxembourg corporation. | $6,000,000 |
| 10. | Stepup Limited, a Cayman Islands company. | $5,137,510 |
| 11. | Werner IIP Limited, a Cayman Islands company. | $5,528,617 |
| 12. | Investcorp Werner Holdings L.P., a Cayman Islands company. | $5,137,510 |
| 13. | Annisville Limited, a Cayman Islands company. | $3,294,800 |
| 14. | Cooperstown Limited, a Cayman Islands company. | $3,294,800 |
| 15. | Frisco Limited, a Cayman Islands company. | $3,294,800 |
| 16. | Platea Limited, a Cayman Islands company. | $3,294,800 |
| 17. | Ballet Limited, a Cayman Islands company. | $179,890 |
| 18. | Denary Limited, a Cayman Islands company. | $179,890 |
| 19. | Gleam Limited, a Cayman Islands company. | $179,890 |
| 20. | Highlands Limited, a Cayman Islands company. | $179,890 |
| 21. | Noble Limited, a Cayman Islands company. | $179,890 |

| 22. | Outrigger Limited, a Cayman Islands company. | $179,890 |
|-----|---------------------------------------------|----------|
| 23. | Quill Limited, a Cayman Islands company. | $179,890 |
| 24. | Radial Limited, a Cayman Islands company. | $179,890 |
| 25. | Shoreline Limited, a Cayman Islands company. | $179,890 |
| 26. | Zinnia Limited, a Cayman Islands company. | $179,890 |
| 27. | Investcorp Investment Equity Limited, a Cayman Islands company. | $156,426 |
| 28. | CIP Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 29. | SIPCO Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 30. | Ownership Holdings Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 31. | C.P. Holdings Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 32. | Investcorp Holdings Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 33. | Investcorp S.A., a Luxembourg corporation. | Unknown amounts in affiliated transfers |
| **Total Received by Non-Bahraini Investcorp Defendants** | | **$121,220,191** |

| **Bahraini Investcorp Defendants** | | **Amount of Fraudulent Transfer Received** |
|-----|---------------------------------------------|----------|
| 34. | Investcorp Bank B.S.C. | $2,402,810 |
| **Total Received by Bahraini Investcorp Defendants** | | **$2,402,810** |
| | | |
| **TOTAL RECEIVED BY ALL INVESTCORP DEFENDANTS:** | | **$123,623,001** |