WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore (JCS-6031)

633 West Fifth Street, Suite 1900
Los Angeles, California 90071-2007
(213) 620-7700
Craig H. Averch (Admitted *Pro Hac Vice*)

Attorneys for Plaintiff OLD LADDER LITIGATION CO., LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INVESTCORP BANK B.S.C., *et al.*,<br><br>　　　　　Defendants. | Case No.  08 CIV 0876 (RMB)(THK)<br><br>**DECLARATION OF QAYS HATIM ZU'BI IN OPPOSITION TO INVESTCORP DEFENDANTS' MOTION FOR RECONSIDERATION** |



Al Jasrah Tower, 12th Floor, Building No. 95, Road 1702, Area 317, Diplomatic Area, P.O. Box 2397, Manama, Kingdom of Bahrain
Telephone: (973) 17538600, Facsimile: (973) 17532342, www.qayszubilaw.com

I, **QAYS HATIM ZU'BI**, hereby declare, pursuant to Article 28 U.S.C. § 1746:

1. I am the Founder and Managing Partner of Qays H. Zu'bi Attorneys and Legal Consultants (the "Firm"). I have personal knowledge of the matters discussed herein. I submit this declaration in support of the opposition filed by plaintiff Old Ladder Litigation Co. LLC ("Old Ladder") to the Investcorp Defendants' motion for reconsideration in the above captioned action. I note from the documents provided that the action alleges hundreds of millions of dollars in fraudulent conveyances made by Werner Co. and its affiliates (collectively, "Old Werner").

2. I graduated from Duke University with a degree in economics and political science and subsequently received a law degree from the University of Cambridge. I have been practicing law in Bahrain since 1981, when I joined the law offices of Al Mahmood & Zu'bi.
In 2001, I started the Firm, which has grown to employ 13 lawyers and legal professionals. The Firm has been consistently listed in the top tier of law firms in the region by leading legal directories and periodicals. It has been described by *Chambers, UK* (2005) as "one of the few local firms in Bahrain with international capability."

3. In my almost thirty years of practicing law in Bahrain, I have advised clients in litigation matters for major financial institutions, multinational corporations and private clients. I have handled counseling in Bahrain on a wide range of local and international legal matters. I have also made significant contributions to the Bahraini legal community. I am Honorary Consul of Canada in Bahrain. I am Vice President Legal of the American Chamber of Commerce in Bahrain. I am Director of Junior Achievement International (Injaz). I am a Member of the Bahrain Bar Society. I am a Founding Member and Chairman of the Oxford & Cambridge Society, Bahrain.

5/19/2008 12:31:10 PM
27781 v1 DECLARATION - WHITE & CASE v.3
100297 0007



4. I make this declaration based on my understanding, of the following relationships among the "Investcorp Defendants" based, in part, on the Investcorp group's 2007 annual report. I have assumed for the purposes of this declaration that the relationships stated in this paragraph 4 are accurate and correct, although I have not verified this:

(a) Defendant SIPCO Limited is a Cayman Islands company that owns and controls a majority of the shares of defendant Ownership Holdings Limited, a Cayman Islands company. Ownership Holdings Limited, directly and through defendant C.P. Holdings Limited, a Cayman Islands company, controls a majority of the shares of defendant Investcorp Bank B.S.C ("Investcorp Bank").

(b) Investcorp Bank is a company organized under the laws of Bahrain as a Bahraini Shareholding Public Company. Investcorp Bank is a 100% owner of defendant Investcorp Holdings Limited, a Cayman Islands company.

(c) Investcorp Holdings Limited is a 100% owner of defendant Investcorp S.A., a Luxembourg corporation.

(d) Investcorp S.A is the 100% owner of: (1) defendant Investcorp International, Inc., a Delaware corporation; (2) defendant Investcorp Investment Equity Limited, a Cayman Islands company; and (3) defendant Invifin, S.A., a Luxembourg corporation.

(e) The rest of the Investcorp Defendants - Ballet Limited, Denary Limited, Gleam Limited, Highlands Limited, Noble Limited, Outrigger Limited, Quill Limited, Radial Limited, Shoreline Limited, Zinnia Limited, Annisville Limited, Cooperstown Limited, Frisco Limited, Platea Limited, Stepup Limited, Step Investments Limited, Equity WERA Limited, Werner Equity Limited, Climbing Products Limited, Ladder Equity Limited, Werner Investments Limited, Werner UP Limited, WL Holdings Limited, Investcorp Werner Holdings L.P., and CIP Limited - are all Cayman Islands companies. They do not appear to be



identified as subsidiaries or affiliates of the Investcorp Bank in the Investcorp group's 2007 annual report. As to many of these entities, I understand that public filings state that "Investcorp owns no stock" in them "or the beneficial owners of these entities" and it is assumed that the entities enter into revocable management services or similar agreements with affiliates of Investcorp S.A. that allows Investcorp S.A. (or an affiliate) to vote their shares in target companies.

5. Attached as Exhibit 1 hereto is an organization chart printed from Investcorp's annual report for 2007 reflecting many of the above relationships. The chart does not identify the defendants discussed in paragraph 4(e) as being subsidiaries or affiliates of Investcorp Bank or Investcorp S.A.

6. I understand that Old Ladder seeks discovery regarding the names and addresses of Doe defendants sued in the lawsuit, which I am advised, include partners, shareholders and/or investors in the named defendant entities that held stock in Old Werner and transfers originating from Old Werner that may be avoidable under the laws of the United States. I have been advised that the focus of the discovery is largely on persons who received distributions from the entities set forth in paragraph 4(e) above.

7. The Central Bank of Bahrain ("CBB") was created under the Central Bank of Bahrain and Financial Institutions Law ("CBB Law"), which was enacted on September 6, 2006. The CBB is responsible for maintaining monetary and financial stability in Bahrain. As stated on the CBB's website, it provides a regulatory framework for financial services firms operating in Bahrain (see:
http://www.cbb.gov.bh/cmsrule/index.isp?action=article&ID=l).   In   certain circumstances, the CBB Law voids transactions by Licensees that harm creditors. Article 158 of the CBB Law is applicable to licensees that are in liquidation or administration as defined by the laws of Bahrain and provides:



> ARTICLE (158) VOID TRANSACTIONS
>
> (a) The Licensee under liquidation is prohibited from undertaking any of the following actions during the "Prohibition Period" stated in paragraph (b) of this Article: 1. Concluding any transaction at anundervalue with any person. 2. Entering into a transaction for the purpose of defrauding any of its creditors. 3. Giving preference to any person.
>
> (b) The expression "Prohibition Period" referred to in the preceding paragraph shall denote the following: i. A term of two years prior to the date in which the Licensee was placed under administration or the date in which the liquidation ruling was issued, if the date of the ruling does not precede the date of placing the Licensee under administration. This term applies to any transaction concluded, or priority given to any person who has relation with the Licensee, in violation of the provision of the above Article. ii. Six months prior to the date of placing the Licensee under administration or the date of issuing the liquidation ruling if the Licensee was not placed under administration. This term applies to any transaction concluded, or priority given to any person who has no relation with the Licensee, in violation of the provision of paragraph (a) of this Article.

8. The CBB Law identifies "Confidential Information" of "Licensees" regulated by the CBB, which governs the protection of Confidential Information, and provides penalties through its enforcement powers for bad faith disclosures.

9. Article 116 of the CBB Law provides that "Confidential Information" means "any information on the private affairs of any of the Licensee's customers." Article 1 of the CBB Law defines a "Licensee" as a person licensed by the CBB to provide "Regulated Services," which are "financial services provided by the financial institutions, including those governed by Islamic Sharia principles."

10. In relation to Investcorp Bank, Article 117 of the CBB Law states that:

> "Confidential Information must not be disclosed by a Licensee unless such disclosure is done:

Qays H. Zu'bi
Attorneys & Legal Consultants

1. *Pursuant to an unequivocal approval of the person to whom the confidential information relates.*
2. *In compliance with the provisions of the law or any international agreements to which the Kingdom is a signatory.*
3. *In the process of executing an order issued by a Competent Court.*
4. *For the purpose of implementing an instruction given by the Central Bank."*

Therefore, even though the CBB Law restricts the disclosure of Confidential Information there are exceptions to the prohibition of its disclosure by licensees. In my opinion, if Investcorp Bank had contacted the CBB earlier about the problems it faced with disclosing Confidential Information, it would have been open to the CBB to have given their approval and instruction by now for the release of any Confidential Information held by Investcorp Bank.

11. Investcorp Bank is the only Investcorp Defendant that is registered as a Licensee in Bahrain. No other Investcorp Defendant is registered in Bahrain as a Licensee. Indeed, the CBB's website lists all CBB licensees, and no Investcorp Defendant other than Investcorp Bank is listed by the CBB
(see http://www.cbb.gov.bh/cmsrule/index.isp?action=article&ID=106). Thus, as appears relevant to this litigation, the only information subject to protection under Bahraini law is information on the "private affairs" of Investcorp Bank's "customers." In my opinion, names and addresses of investors in a non-Bahraini, non-Licensee entity do not constitute Confidential Information as defined in the CBB Law, nor do I know of any decisional authority ruling that information concerning investors in a non-Bahraini, non-licensee is Confidential Information under the CBB Law. I know of no decisional authority which would prevent disclosure of the names and addresses of investors in the Investcorp Defendants other than Investcorp Bank's customers.

12. In most cases, Bahraini Courts have a discretion to decide whether or not, to enforce an order made by a foreign Court. If it was asked to enforce an order made by a U.S. Court for disclosure of information held by a Bahraini entity, the Bahraini Courts would ordinarily, where relevant, have regard to the following:

Qays H. Zu'bi
Attorneys & Legal Consultants

    a.    Whether U.S. Courts enforce judgments and orders made in Bahrain;

    b.    That no proceedings on the same matter are currently before the Courts in Bahrain;

    c.    That the U.S. Courts have jurisdiction to hear the matter under their own rules and the Bahrain Courts do not have exclusive jurisdiction;

    d.    Proper notices were served on the litigants who had a chance to respond;

    e.    The U.S. judgment is a final judgment, irrespective of any appeal;

    f.    The judgment is not inconsistent with any judgments rendered in Bahrain and nothing therein violates public policy or morals.

13.    In addition to the CBB Law, the CBB has published various Rulebooks which govern CBB licensees. Rulebook 1 ("the Rules") is applicable to conventional banks and applies to Investcorp Bank.

14.    Principle 4 (PB1.1.4) of the Rules states that:
*"Conventional bank licensees and approved persons must observe in full any obligations of confidentiality, including with respect to customer information. This requirement does not over-ride lawful disclosures"*. The CBB Rules however, apply to CBB Licensees and would not expect to apply to non CBB licensees regulated in their home jurisdiction.

15.    Article 171 of the CBB Law, provides for a term of imprisonment and/or a fine not exceeding BD10,000, if any Director, manager or employee discloses in "bad faith" any Confidential Information relating to a customer of the concerned bank. In my opinion, notwithstanding whether CBB Law extends to the non Bahraini, non CBB licensees, I believe any disclosure which was made subject to a Court order may be interpreted as a "lawful disclosure" under Principle 4 of Rulebook 1, and in any event could not, in my view, be considered to be made in "bad faith." If such disclosure was made by the non Bahraini, non CBB licensed entities, it would appear contrary to the spirit of the CBB's rules to enforce penalties upon Investcorp Bank whereby such disclosure of Confidential information is made, in good faith, by separate legal entities in accordance with the rules of the country in which those entities are incorporated and subject to a Court order that it recognizes. Further, I know of no decisional



authority that the disclosure by a non-Bahraini, non-Licensee entity (such as all of the Cayman Islands investment entities) of identification information regarding its own investors or of identification information regarding investors in other non-Bahraini entities would constitute a bad faith disclosure of the private affairs of a Licensee's customers.

16. Further, Article 120 of the CBB Law describes the retroactivity of the CBB Law regarding Confidential Information existing before the law's enactment in 2006. The CBB Law retroactively protects Confidential Information received by the Bahrain Monetary Agency (the predecessor of the CBB), the Ministry of Commerce, auditors or experts appointed by the Bahrain Monetary Agency or the Ministry of Commerce, the Bahrain Stock Exchange, and any person who obtains Confidential Information from any of these entities. In my opinion, it does not apply to other types of information such as the identities of investors in non-Licensee entities. I know of no decisional authority ruling that the restrictions on disclosure of Confidential information would retroactively apply to the identities of investors in non-Bahraini, non Licensee entities regarding distributions made in 1997 and 2003, which information would not have been received by the Investcorp Defendants from any of the above entities or provided to those entities.

17. The CBB Law's objective of providing a framework to regulate financial services firms operating in Bahrain reflects no desire by the CBB to regulate conduct outside Bahrain by non-Bahraini, non-Licensee entities regarding their own investors, simply because some management relationship may exist between such entities and a Licensee. Article 40 of the CBB Law specifies that no *"person shall carry out a Regulated Service in the Kingdom [of Bahrain] unless licensed by the Central Bank."*

18. In summary, in my opinion, no Bahraini law of which I am aware restricts the disclosure of the names and addresses of investors in a non-Bahraini, non-Licensee. Such information is not Confidential Information as defined under Article 116 of the CBB Law because it is not information regarding the "private affairs" of Investcorp Bank's customers. Further, to the extent it was somehow determined to be Confidential Information, I know of no authority which would suggest that Investcorp

5/19/2008 12:31:10 PM
27781 v1 DECLARATION - WHITE & CASE v.3
100297 0007





Bank would be subject to penalties if Investcorp SA., Investcorp International, Inc. or any other non-Licensee Investcorp Defendant disclosed the information pursuant to an order by a United States court, especially considering Investcorp Bank's objection to the disclosure, as penalties under Article 171 of the CBB Law are assessed only for bad faith disclosures.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**QAYS H. ZU'BI**
**Attorney & Legal Consultant**

Executed in Bahrain
On this 19th day of May, 2008.

**EXHIBIT 1**

## (iii) Ownership

The Bank is controlled by Ownership Holdings Limited ('OHL', incorporated in the Cayman Islands), through its shareholding directly, and through C.P. Holdings Limited ('CPHL', also incorporated in the Cayman Islands), of the issued ordinary shares of the Bank. OHL is, in turn, controlled by SIPCO Limited ('SIPCO'), a company incorporated in the Cayman Islands through which employees participate in ownership of the Bank's ordinary shares. The Bank is, therefore, controlled by its employees through their beneficial ownership as a group via SIPCO, OHL and CPHL.



## (iv) Subsidiary companies

The consolidated financial statements incorporate the financial statements of the Bank and its subsidiaries. A subsidiary is an entity that the Group has the power to control so as to obtain economic benefits and therefore excludes those held in a fiduciary capacity.

The Bank has a 100% economic interest in Investcorp Holdings Limited ('IHL', incorporated in the Cayman Islands) through Series A and Series B preference shares issued by IHL. These preference shares have the right to 100% of all dividends declared by IHL and 100% of IHL's net assets in the event of liquidation. The Series B preference shares, which economically mirror the terms and conditions of the Bank's preference shares, take priority over the Series A preference shares. The ordinary shares and Series A preference shares of IHL carry voting rights.

IHL in turn has a 100% economic and voting interest in Investcorp S.A. ('ISA'), a financial holding company incorporated in Luxembourg. ISA is the principal asset-holding operating entity within the Group and, consistent with covenants contained in the Group's medium and long-term debt, the Group holds at least 95% of its assets through ISA or subsidiaries that are owned directly or indirectly by ISA.

*Held through Global Depositary Receipts ('GDRs') listed on the London Stock Exchange. Every 100 GDRs represent beneficial ownership of one ordinary share of the Bank.

INVESTCORP BANK B.S.C.
**CONSOLIDATED FINANCIAL STATEMENTS**
*June 30, 2007*

The Group structure is illustrated below:



| Parent | Wholly owned significant subsidiaries | Description of principal activities |
|---|---|---|
| Investcorp Bank B.S.C. (Bahrain) | | Bahrain-based parent company of the Group |
| Investcorp Holdings Limited (Cayman Islands) | | Holding company that provides *force majeure* investment protection to shareholders and lenders |
| | Investcorp S.A. (Luxembourg) | Financial holding company that is the principal operating and asset owning arm of the Group |
| | Investcorp Capital Limited (Cayman Islands) | Company that issues the Group's long-term notes and other capital market financings |
| | Invifin S.A. (Luxembourg) | Company through which the Group retains its investment in debt instruments across its product classes |
| | Investcorp Investment Holdings Limited (Cayman Islands) | Company through which the Group retains its equity investments across its product classes |
| | Investcorp Management Services Limited (Cayman Islands) | Company that provides investment management and advisory services to client investment holding companies for private equity and real estate investments |
| | Investcorp Investment Adviser Limited (Cayman Islands) | Company that provides investment management and advisory services to the hedge funds program (HFP) and is a SEC registered investment advisor |
| | Investcorp Funding Limited (Cayman Islands) | Company that provides short-term funding to investee and client investment holding companies |
| | Investcorp Trading Limited (Cayman Islands) | Company that executes the Group's money market, foreign exchange and derivative financial contracts and invests in single manager funds |
| | Investcorp AMP Limited (Cayman Islands) | Company through which the Group co-invests in the hedge funds program (HFP) |
| | CIP AMP Limited (Cayman Islands) | Company through which the Group co-invests in the hedge funds program (HFP) |
| | Investcorp Financial & Investment Services S.A. (Switzerland) | Company that provides M&A advisory services for deal execution in Western Europe |
| | Investcorp International Limited (UK) | The Group's principal operating subsidiary in the U.K., a further subsidiary of which (Investcorp Securities Limited) provides M&A advisory services in the U.K. |
| | Investcorp International Holdings Inc. (USA) | The Group's principal operating subsidiary in the United States of America |
| | Investcorp International Inc. (USA) | Company that provides M&A advisory services for deal execution in North America |
| | N A Investcorp LLC (USA) | Company that provides marketing services in the United States for the HFP and is a SEC registered broker dealer |
| | Investcorp Investment Adviser LLC (USA) | Company that provides investment management services in the United States for the HFP and is a SEC registered investment advisor |

**B. SIGNIFICANT ACCOUNTING POLICIES**

The consolidated financial statements of the Group are prepared in accordance with International Financial Reporting Standards ('IFRS') and in conformity with the Bahrain Commercial Companies Law and the Central Bank of Bahrain and Financial Institutions Law. The consolidated financial statements are prepared in United States dollars, this being the functional currency of the Group, and rounded to the nearest thousand ($000s) unless otherwise stated.