```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
OLD LADDER LITIGATION CO., LLC,            :
                                           :
                                           :
                            Plaintiff,     : 08 Civ. 0876 (RMB)(THK)
                                           :
           -against-                       :
                                           :MEMORANDUM OPINION AND
                                           :       ORDER
INVESTCORP BANK B.S.C., et al.,            :
                                           :
                                           :
                                           :
                            Defendants.    :
------------------------------------------X
```

**THEODORE H. KATZ, United States Magistrate Judge.**

Plaintiff Old Ladder Litigation Co. LLC ("Old Ladder") is the operating entity of a liquidated trust established pursuant to the plan of reorganization of Werner Co. ("Old Werner"), which was confirmed by the United States Bankruptcy Court of the District of Delaware. Old Ladder has been designated pursuant to the Old Werner reorganization plan to prosecute all causes of action belonging to the bankruptcy estate of Old Werner. The Complaint in this action, filed on January 24, 2008, seeks to recover in excess of $330 million transferred by Old Werner to certain defendant shareholders, insiders, and professionals in 1997, and in excess of $150 million transferred by Old Werner to certain defendant shareholders, insiders, and professionals in 2003, on grounds that the transfers were fraudulent conveyances under state and federal law. Plaintiff named as Defendants thirty-four Investcorp entities, including Investcorp Bank, B.S.C., Investcorp International, Inc., and Investcorp, S.A. (collectively

"(Investcorp Defendants"). Many of the Investcorp Defendants are Cayman Islands corporations or limited partnerships that are alleged to have been the initial transferees of the funds Plaintiff seek. Invoking section 550 of the Bankruptcy Code, Plaintiff also named numerous partners and investors in the Investcorp Defendants as "Doe" Defendants, who are alleged to have received distributions of the fraudulently conveyed funds (as "mediate transferees") from various Investcorp Defendants (the initial recipients of the alleged fraudulent conveyances).

Because the Investcorp Defendants refused to produce voluntarily the names and addresses of the Doe Defendants, on February 27, 2008, Plaintiff requested expedited discovery from each of the Investcorp Defendants regarding the identities and locations of their investor and partners who received distributions from the alleged fraudulently conveyed funds. On April 17, 2008, Defendants submitted a letter opposing the request, arguing that (1) expedited discovery was unwarranted, and (2) the Court lacked personal jurisdiction over certain of the Investcorp Defendants. At a hearing on April 21, 2008, counsel for the Investcorp Defendants represented on the record that Investcorp International, Inc., Investcorp, S.A., and Investcorp Bank, B.S.C. ("the Bank") had the ability to obtain the requested information, and agreed that the Court had jurisdiction over those entities. (See Transcript of April 21, 2008 Hearing ("Tr."), at 5, 7-8.) The

Court determined that there was a sufficient justification for the limited expedited discovery being sought, as the statute of limitations may soon expire with respect to unnamed Defendants. Up until that point, Defendants had not advanced any claim with respect to foreign secrecy laws and had not even investigated the issue.[1] It was only after bank secrecy was indirectly alluded to by the Court that Defendants' counsel stated that it was an issue he would need to explore.

Defendants have now moved for reconsideration of the Court's order to produce information on the identities and addresses of the Doe Defendants, arguing that the Bank, the ultimate parent company of the other Investcorp Defendants, is a Bahraini corporation subject to Article 117 of the Central Bank of Bahrain and Financial Institutions Law, which prohibits disclosure of investor identifying information, absent consent of the investor or an order of the Bahrain courts. Plaintiff responds that Defendants' motion should be denied because (1) reconsideration is inappropriate where the issue of Bahraini secrecy law could have been raised in opposing the initial discovery request, but it was not, and (2) there is no basis to apply Bahraini secrecy laws to the thirty-three non-Bahraini Defendant entities.

**DISCUSSION**

---

[1] Plaintiff agreed that if any issue regarding confidentiality arose, it would, at least initially, maintain the confidentiality of the information.

As an initial matter, and apart from the substantive argument Defendants advance, Defendants have not satisfied the prerequisites for a motion for reconsideration. A party seeking reconsideration of a court's order must "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local Civil Rule 6.3 of the Southern District of New York.

> A motion for reconsideration or re-argument shall be granted only if the court has overlooked " 'controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court.'" Greenwald v. Orb Commc'ns & Mktg., Inc., No. 00 Civ. 1939 (LTS), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003) (quoting Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000)) (alteration in original); see also S.D.N.Y. Local Civ. R. 6.3. Local Rule 6.3 should "be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dellefave v. Access Temps., Inc., No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001). Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995); Brown v. Barnhart, No. 04 Civ. 2450 (SAS), 2005 WL 1423241, at *1 (S.D.N.Y. June 16, 2005) ("Accordingly, the moving party may not advance new facts, issues or arguments not previously presented to the Court.") (internal quotation marks and citation omitted). "Whether to grant or deny a motion for reconsideration or reargument is in the sound discretion of a district court judge." Greenwald, 2003 WL 660844, at *1 (internal quotation marks and citation omitted).

Mikol v. Barnhart, No. 05 Civ. 5355 (WCC), 2008 WL 2115396, at *1

(S.D.N.Y. May 16, 2008). See also Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., No. 07 Civ. 2735 (DC), 2008 WL 2059324, at *2 (S.D.N.Y. May 15, 2008) ("[R]econsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (internal citations and quotation marks omitted); Regent Ins. Co. v. Storm King Contracting, Inc., No. 06 Civ. 2879 (LBS), 2008 WL 1985763, at *1 (S.D.N.Y. May 7, 2008) ("A motion for reconsideration allows a party to direct the court to an argument the party has previously raised but the court has overlooked. It is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion, and which, had they been considered, might have reasonably altered the result before the court. A motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.") (internal citations and quotation marks omitted).

Until the Court granted Plaintiff's request for expedited

discovery, approximately seven weeks after Plaintiff issued its discovery request, Defendants had not based their opposition on the contention that Bahraini secrecy law prohibited disclosure of the information being sought. Thus, the Court did not overlook any controlling matters that had been put before it. This alone justifies denying Defendants' motion.

Nevertheless, because of the serious consequences Defendants suggest they may face should they be required to disclose investor information in violation of Bahraini law, the Court will address the merits of their argument.

The first question to be resolved is whether the information sought by Plaintiff is, in fact, subject to Bahraini secrecy laws.

"Under Fed. R. Civ. P. 44.1, the determination of the effect of a foreign law presents a question of law for the Court which may consider any relevant material or source without regard to its admissibility under the Federal Rules of Evidence. Among other sources, the Court may consider the opinions of experts, but it is not bound by their testimony, even if uncontradicted." British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A., No. 90 Civ. 2370 (JFK)(FM), 2000 WL 713057, at *7 (S.D.N.Y. June 2, 2000) (internal citations and quotation marks omitted).

The parties have each submitted an affidavit from individuals who purport to be knowledgeable in Bahraini law.

<u>Defendants' Expert</u>

6

Hatim S. Zu'bi ("Zu'bi"), an attorney licensed to practice law in Bahrain, submitted a declaration in support of Defendants' motion. (See Declaration of Hatim S. Zu'bi, dated May 17, 2008 ("H. Zu'bi Decl.").) Mr. Zu'bi asserts that the ultimate parent company of the Investcorp entities is Investcorp Bank B.S.C., a Bahraini company domiciled and registered in Bahrain as a wholesale bank, which is subject to the regulatory oversight of the Regulator of the Central Bank of Bahrain. (See id. ¶ 2.) According to Mr. Zu'bi, under Article 116 of the Central Bank of Bahrain Financial Institution Laws ("CBB Laws"), the private affairs of a licensee bank's customers are deemed to be "confidential information" which, under Article 117 of the CBB Laws, must not be disclosed by a licensee unless such disclosure is done pursuant to the consent of the person whose records are being disclosed, in compliance with any international agreements to which Bahrain is a signatory, pursuant to an order issued by a competent court (a Bahrain court), or for the purpose of implementing an instruction given by the Central Bank. (See id. ¶¶ 4-5.) According to Mr. Zu'bi, the names and addresses of investors in Investcorp Bank are confidential information. Therefore, in the absence of any statutory basis for disclosing the information, the disclosure of the information by Investcorp and its affiliated entities could be a criminal offense resulting in imprisonment and the imposition of a fine, as well as a suspension of the Bank's license. (See id. ¶¶ 6-8.)

Plaintiff's Expert

In response, Qays Hatim Zu'bi ("Q. Zu'bi"), also a practicing attorney in Bahrain, submitted a declaration on behalf of Plaintiff. (See Declaration of Qays Hatim Zu'bi, dated May 19, 2008 ("Q. Zu'bi Decl.").) Mr. Q. Zu'bi reviewed a copy of the Investcorp group's 2007 annual report, which confirmed that with the exception of the Investcorp Bank, which is a Bahraini entity, the other Investcorp entities are either Cayman Islands, Luxembourg or United States companies. Moreover, the other Investcorp entities are not described as either subsidiaries or affiliates of Investcorp Bank. Mr. Q. Zu'bi concurs in Defendants' expert's opinion of Bahraini law governing confidential information, but clarifies that the law is aimed at the disclosure of confidential information relating to the private affairs of any customers of a "licensee" regulated by the CBB. (See id. ¶¶ 8-10.) Mr. Q. Zu'bi opines that only Investcorp Bank's customers are entitled to the protection of the confidentiality law, because only Investcorp Bank is a registered licensee in Bahrain. Mr. Q. Zu'bi knows of no decisional authority that would extend the CBB law to investor information held by non-licensee, non-Bahraini entities, simply because some management relationship may exist between the non-Bahraini entities and a Bahraini licensee. (See id. ¶¶ 11, 14-15, 17.) Relying on Section 120 of the CBB Law, Mr. Q. Zu'bi further suggests that because the CBB Law was enacted in 2006, it would

retroactively apply only to certain categories of confidential information existing before the law was enacted, and it would not apply to the information at issue in this action because the information was not received by the Bahrain Monetary Agency, the Ministry of Commerce, or the Bahrain Stock Exchange, and then passed on to Investcorp Bank. (See id. ¶ 16.) Mr. Q. Zu'bi further opines that even when the confidentiality statute is applied to Bahraini entities, there are exceptions to the prohibition on disclosure. He is of the view that had Investcorp Bank sought permission from the Central Bank to disclose the information in issue, the Bank might have authorized its disclosure. (See id. ¶ 10.)

Finally, Mr. Q. Zu'bi notes that under Section 171 of the CBB Law,, imprisonment and/or a fine for disclosure of confidential information is only authorized where the information is disclosed in "bad faith." (See id. ¶ 15.) Where disclosure is made pursuant to a court order, particularly by a non-Bahraini entity subject to United States court orders, it would not be considered to be in "bad faith," and would not result in severe sanctions. (See id. ¶ 15.)

After receiving Plaintiffs' experts' declaration, Zu'bi, Defendants' expert, submitted a supplemental declaration, which had not been authorized by the Court. The principal point made in the supplemental declaration is that the investors in the various non-

Bahraini Investcorp Defendants, whose identity is sought, are also customers of Investcorp Bank. Thus, according to Zu'bi, those customers are entitled to the protection afforded by Bahraini law against disclosure of their confidential information. (See Supplemental Declaration of Hatim S. Zu'bi in Support of Motion for Reconsideration, dated May 23, 2008 ("Supp. Decl."), ¶¶ 4-5, 10.)

Having considered the experts' opinions, the Court concludes that, for the most part, the information sought by Plaintiff is not subject to the confidentiality provisions of Bahraini law. With the exception of Investcorp Bank, none of the Defendant entities from whom information is sought is a Bahraini bank or licensee of the CBB. As discussed, all but one of the Investcorp entities are domiciled in either the Cayman Islands, Luxembourg, or the United States. Therefore, their investors are not entitled to the protections of Bahraini law.

Even if the non-Bahraini entities were subject to the CBB laws, however, that would not necessarily preclude their being ordered to produce the requested information. "It is well settled that a foreign blocking statute does not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate the statute." Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 544, 107 S. Ct. 2542 (1987). In deciding the propriety of ordering disclosures prohibited by the

10

law of a foreign nation, courts consider: (1) the competing interests of the nations whose laws are in conflict; (2) the hardship of compliance on the party or witness from whom discovery is sought; (3) the importance to the litigation of the information sought and whether there are alternative means to secure the information; (4) the good faith of the party resisting discovery; (5) whether the information originated in the United States; and (6) the specificity of the request. See id. at 544 n.28, 107 S. Ct. at 2556; United States v. Davis, 767 F.2d 1025, 1033-34 (2d Cir. 1985); Trade Dev. Bank v. Cont'l Ins. Co., 469 F.2d 35, 41 (2d Cir. 1972); Strauss v. Credit Lyonnais, S.A., Nos. 06-CV-702 (CPS)(KAM), 07-CV-914 (CPS)(KAM), 2008 WL 2098100, at *10 (E.D.N.Y. Mar. 10, 2008); Reino De Espana v. Am. Bureau of Shipping, No. 03 Civ. 3573, 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005); Minpeco v. Conticommodity Servs., Inc., 116 F.R.D. 517, 523 (S.D.N.Y. 1987).

Taking these factors into consideration, even if the Court were to decide that the non-Bahraini Investcorp Defendants were subject to Bahraini bank confidentiality laws, the balance of factors relevant to whether disclosure should be ordered tips in Plaintiff's favor. First, the information being sought is clearly relevant to this action. Plaintiff is attempting to identify unnamed Defendant investors in offshore entities and partnerships who may have received millions of dollars in distributions from Old Werner, to the detriment of its creditors. The investors are

potentially liable for fraudulent transfers, pursuant to 11 U.S.C. § 550. Moreover, the non-Bahraini entities face little likelihood of hardship if they comply with the Court's Order, as they are not subject to Bahraini penalties for disclosure of confidential information, and, in any event, since any disclosures would not have been in "bad faith," as they would be ordered by the Court, they would have a defense to liability. The Court further finds that there are no alternative means of securing the investors' identities. In addition, the United States has a strong interest in enforcing its statutes which prohibit fraudulent conveyances of funds to the detriment of creditors. In contrast, Bahrain's interest in its secrecy laws is highly attenuated where, as here, the information is being sought from entities which are not licensees in Bahrain. Moreover, Defendants' themselves did not appear to view Bahraini secrecy laws as a serious impediment to the discovery requests, as they did not initially rely on Bahraini law in objecting to disclose the requested information. Finally, the discovery request is focused and discrete, and not an open-ended fishing expedition. Indeed, Defendants appear to have already ascertained the identities of the individuals who are Doe Defendants.

All of these factors support the Court's conclusion that responsive information must be produced by the non-Bahraini Investcorp Defendants. However, the Court will not, at this time,

require Investcorp Bank to respond to the discovery request. The Bank clearly is subject to Bahraini secrecy laws. As Plaintiff concedes, it is not seeking the identities of Investcorp Bank's direct customers; rather, it seeks the identities of investors in the downstream investment entities who received distributions from Old Werner. That information appears to be available from alternative sources, i.e., the non-Bahraini Investcorp Defendants.[2]

**CONCLUSION**

For the reasons set forth above, the Investcorp Defendants have not demonstrated that they are entitled to reconsideration of the Court's Order that they disclose the names and addresses of Doe Defendants who received proceeds from the funds that Plaintiff contends were fraudulently conveyed. Moreover, the information to be produced by the non-Bahraini Investcorp Defendants is not protected by Bahraini secrecy law.

Accordingly, the Investcorp Defendants, with the exception of Investcorp Bank, must produce the requested information within seven days of the issuance of this Order.

So Ordered.

---

[2] Simply because Defendants' expert has volunteered, albeit in an unauthorized submission, that the investors in the non-Bahraini entities are also customers of Investcorp Bank, does not alter the Court's conclusion that the non-Bahraini entities are not subject to the confidentiality provisions of Bahraini law.

13

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: May 29, 2008
       New York, New York