SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
William P. Frank (William.Frank@skadden.com)
Four Times Square
New York, New York  10036
(212) 735-3000

and

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Anthony W. Clark (Anthony.Clark@skadden.com)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust, | : | 08 cv 0876 (RMB)(THK) |
| | : | |
| Plaintiff, | : | **DECLARATION OF** |
| vs. | : | **JASON M. LIBERI** |
| | : | |
| INVESTCORP BANK B.S.C., et al., | : | **ELECTRONICALLY FILED** |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JASON M. LIBERI hereby declares as follows:

1.      I am a member of the firm Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for the Investcorp Defendants in this action.

2.      I submit this declaration in support of the Investcorp Defendants' Objections to the Magistrate Judge's April 21, 2008 and May 29, 2008 Orders.

3.      This declaration also is submitted to place before the Court true and correct copies of the following documents:

| Exhibit | Document |
|---------|----------|
| 1 | Plaintiff's February 27, 2008 letter |
| 2 | Investcorp defendants' April 1, 2008 letter |
| 3 | Plaintiff's April 17, 2008 letter |
| 4 | Transcript of April 21, 2008 conference |
| 5 | Investcorp defendants' May 1, 2008 letter |
| 6 | Investcorp defendants' Motion for Reconsideration, dated May 1, 2008 |
| 7 | Plaintiff's Objection to Motion for Reconsideration, dated May 7, 2008 |
| 8 | Investcorp defendants' Reply in Support of Motion for Reconsideration, dated May 8, 2008 |
| 9 | Plaintiff's Sur-Reply in Opposition to Motion for Reconsideration, dated May 9, 2008 |
| 10 | Investcorp defendants' May 12, 2008 letter |
| 11 | Declaration of Hatim S. Zu'bi in Support of Motion for Reconsideration, dated May 17, 2008 |
| 12 | Declaration of Qays H. Zu'bi in Opposition to Motion for Reconsideration, dated May 19, 2008 |
| 13 | Supplemental Declaration of Hatim S. Zu'bi in Support of Motion for Reconsideration, dated May 23, 2008 |
| 14 | Plaintiff's May 27, 2008 letter |
| 15 | Memorandum Opinion and Order dated May 29, 2008 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 2, 2008.

Jason M. Liberi

# Exhibit 1
(Plaintiff's February 27, 2008 letter)



**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
www.whitecase.com

Direct Dial + 212.819.8394     cshore@whitecase.com

February 27, 2008

<u>VIA HAND DELIVERY</u>

The Honorable Richard M. Berman
United States District Court Judge
500 Pearl Street, Room 650
New York, NY 10007-1312

*USDC SDNY*
*DOCUMENT*
*ELECTRONICALLY FILED*
DATE: 2/28/08

Re:  *Old Ladder Litigation Co., LLC v. Investcorp Bank B.S.C., et al.,*
     Case No.  08 CV 0876 (RMB)

Dear Judge Berman:

　　　　We represent Old Ladder Litigation Co. LLC ("Old Ladder"), the plaintiff in the above-action.  Old Ladder is the operating entity of a liquidating trust established pursuant to the plan of reorganization of Werner Co. ("Old Werner") which was confirmed by the United States Bankruptcy Court for the District of Delaware in October, 2007.[1]  Specifically, Old Ladder has been designated pursuant to the Old Werner plan to bring and prosecute all causes of action belonging to the bankruptcy estate of Old Werner.  (In that regard, we have included herewith a copy of the Old Werner Plan for the Court's ongoing reference.)  We write to address two issues. First, pursuant to Local Rule 37.2, Old Ladder requests that the Court set a pre-motion conference to discuss the conducting of limited discovery, prior to any Rule 26(f) conference, into the identities and locations of certain "Doe Defendants" who have been named as parties in this action.  Second, we write to have the Court set an omnibus status conference to address open issues regarding the timing, extent and form of the upcoming responses of defendants to the complaint herein.

---

[1] "Werner" or the "Company" as used herein refers to Werner Holding Co. (PA), Inc., and subsidiaries/affiliates Werner Holding Co. (DE), Inc., Werner Co., and/or WIP Technologies, Inc., all of whom filed for bankruptcy protection on June 12, 2006 and are no longer operating entities.  To clarify any potential confusion, such references do not refer to New Werner Holding Co., Inc. or its operating subsidiary Werner Co., (collectively, "New Werner") which are newly formed corporations that purchased substantially all of the assets of the former Werner companies during their bankruptcy.  New Werner is not a party to this action.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG
HELSINKI   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUNICH
NEW YORK   PALO ALTO   PARIS   PRAGUE   RIYADH   SAN PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON DC

NEWYORK 6513048 (2K)

The Honorable Richard M. Berman



February 27, 2008

<u>Requests for Discovery</u>

       With respect to the discovery issue, pre-conference discovery is warranted under the circumstances.

       As one of its primary forms of relief, Old Ladder seeks to recover (a) in excess of $330 million transferred by Old Werner to certain defendant shareholders, insiders and professionals in 1997 and (b) in excess of $150 million transferred by Old Werner to certain of those defendants in 2003, in both cases on the grounds that such transfers were fraudulent conveyances under state and federal law.  Under Section 550 of the Bankruptcy Code, proceeds of fraudulent transfers may be recovered not only from initial transferees and entities for whose benefit the transfer was made but also from all "immediate or mediate transferee[s]":

> [e]xcept as otherwise provided in this section, to the extent that a
> transfer is avoided under section 544, 545, 547, 548, 549, 553(b),
> or 724(a) of this title, the trustee may recover, for the benefit of the
> estate, the property transferred, or, if the court so orders, the value
> of such property, from--
> (1) the initial transferee of such transfer or the entity for whose
> benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

<u>See</u> 11 U.S.C. § 550; <u>In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey</u>, 130 F.3d 52, 56 (2nd Cir. 1997); <u>In re Allou Distributors, Inc.</u>, 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007).

       As alleged in the Complaint, many of the entities which were the initial transferees of the 1997 and 2003 conveyances are Cayman Islands corporations or limited partnerships that are affiliated with Investcorp, a named defendant in the Complaint.  At this time, it is unclear whether these Cayman funds are currently operating entities or, if they are, whether they have sufficient assets to satisfy any judgment.  Further, although these Cayman defendants presumably distributed portions of their transfers to their partners or investors, Old Ladder has no present means to ascertain the identities of these initial, immediate or mediate transferees and entities for whose benefit the transfers were made without conducting limited discovery.

       Recent court decisions in this district allow for pre-conference, expedited discovery upon a showing of "good cause" and/or "reasonableness."  <u>Stern v. Crosby</u>, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); <u>Ayyash v. Bank Al-Madina</u>, 233 F.R.D. 325, 326-327 (S.D.N.Y. 2005).  As one court described, "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." <u>Semitool, Inc. v. Tokyo Electron America, Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Expedited discovery of the identity of "Doe" defendants has been specially authorized, including prior to any answering of the relevant complaint.  <u>See Columbia Ins. Co. v. Seescandy.com</u>, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); <u>cf.</u> <u>Sony Music Entertainment Inc. v. Does 1-40</u>, 356 F.Supp.2d 556, 562-67 (S.D.N.Y. 2004); <u>Wesley v. Muhammad</u>, 2008 WL

2

The Honorable Richard M. Berman



February 27, 2008

123812 at *13 (S.D.N.Y. Jan. 10, 2008).

As will be shown in the contemplated motion, good cause clearly exists here, and reasonableness and justice support granting limited expedited discovery for the sole purpose of ascertaining the identities and location of the Doe Defendants. The discovery would be narrowly circumscribed and is directly relevant to the initial/immediate/mediate transferee claims brought under section 550 of the Bankruptcy Code. Second, the discovery will likely pose no burden to Investcorp (whose counsel is copied here), as Investcorp should have ready access to and control over the names and locations of its funds' distributees. Third, identification and timely service of the Doe Defendants prior to what could be significant motion practice with respect to the Complaint and complicated discovery scheduling will serve the interests of judicial economy and will, among other things, permit the initial/immediate/mediate transferees to participate in these important preliminary matters. Finally, early identification of all defendants will avoid any issues which could arise as to the potential tolling and/or expiration of relevant statutes of limitation.

The Investcorp defendants from whom Old Ladder would seek the above-described limited discovery have been served with the Complaint and have accepted service. Further, we have been in contact with their counsel and have discussed this issue of discovery into identities and locations. At this time, however, Investcorp will not consent to provide the requested information.

Case Status Conference

To date, we have heard from ten law firms representing sixty-two of the defendants named in the Complaint. (A list of the present appearances is appended hereto.) We have also heard from various individuals who are not yet represented by counsel. We have agreed to adjourn the answering dates of defendants with their commitment to accept service and the expectation that, given the extra time, the defendants will be able to streamline their responses such that the Court is not faced with duplicative dismissal pleadings.

Given that the requested response dates vary between March 21, 2008 and April 21, 2008 (and more than one hundred defendants have yet to appear), it may be useful for the Court to hold a status conference in conjunction with the discovery issue noted above, at which defense counsel can appear in person or on the phone, to discuss (a) a single omnibus response date for answering or moving with respect to the Complaint, (b) the means by which the parties will work to minimize the Court's burden with respect to anticipated motion practice, and (c) the preferred method for addressing the non-appearance of defendants. For our part, we are available at the Court's convenience.

3

The Honorable Richard M. Berman

WHITE & CASE

February 27, 2008

        For the foregoing reasons, Old Ladder respectfully requests a pre-motion conference at the Court's early convenience, and thanks the Court in advance for its consideration of that request.

Respectfully submitted,

J. Christopher Shore

Enclosure

cc:  To the Attached Distribution List (w/o encl.) (via email and Federal Express)

Take up discovery issues with
negotiate to Kotz (o release has
been made). FYI, all motions
(defense) should be joint + in
accord with Court Rules. Status
Conference on 3/30/08 @ 9:30.

SO ORDERED:
Date: 2/28/08          Richard A. Berman
                       Richard M. Berman, U.S.D.J.

4

# Exhibit 2
(Investcorp defendants' April 1, 2008 letter)

**OFFICE COPY**

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P.O. BOX 636

WILMINGTON, DELAWARE 19899-0636
—
TEL: (302) 651-3000

FAX: (302) 651-3001

www.skadden.com

DIRECT DIAL
(302) 651-3080
DIRECT FAX
(888) 329-3081
EMAIL ADDRESS
ANTHONY.CLARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

April 1, 2008

**BY HAND DELIVERY**

The Honorable Theodore H. Katz
United States Magistrate Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007-1312



RE:    Old Ladder Litigation Co., LLC v. Investcorp Bank
B.S.C., et al., Case No. 08 CV 0876 (RMB) (THK)

Dear Magistrate Judge Katz:

In accordance with Your Honor's direction at the March 20, 2008 conference, this responds to the February 27, 2008 letter from plaintiff's counsel and summarizes the arguments, on behalf of the alleged "Cayman Islands corporations or limited partnerships that are affiliated with Investcorp" referred to in counsel's letter (at 2), in opposition to plaintiff's request for expedited discovery. In so responding, our clients do not waive any defenses they may have, including lack of personal jurisdiction.

As explained below, the request for expedited discovery should be denied until motions to transfer venue and dismiss the complaint are resolved.

<u>Lack of Personal Jurisdiction</u>

To avoid dismissal under Rule 12(b)(2), the plaintiff must make a prima facie showing that personal jurisdiction exists over the defendants. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Plaintiff has failed to do so

The Honorable Theodore H. Katz
April 1, 2008
Page 2

with respect to 33 of the 34 Investcorp affiliated entities named as defendants in the complaint, all of which are alleged to be corporations organized in the Cayman Islands, Luxembourg or Bahrain, and none of which is alleged to have any contact with the United States beyond ownership of Werner stock. (Complaint ¶¶ 17-26) Such allegations are not sufficient to establish personal jurisdiction over these defendants. *See In re Federalpha Steel LLC*, 341 B.R. 872, 890, n. 15 (Bankr. N.D. Ill. 2006); *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005); *In re DaimlerChrysler AG Sec. Litig.*, 197 F. Supp. 2d 86, 98-99 (D. Del. 2002).

Until plaintiff has established personal jurisdiction over the defendants from whom it seeks discovery, it is not entitled to discovery beyond the jurisdictional issue. *See, e.g., Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) ("generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery") (citations omitted); *Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, 2007 U.S. Dist. LEXIS 43567, at *28 (S.D.N.Y. June 13, 2007) (same) (citations omitted). On the face of its complaint, plaintiff has not alleged facts sufficient to establish personal jurisdiction, and the discovery it seeks is unrelated to that issue. Therefore, discovery should be denied at this time.

<u>Expedited Discovery Standards</u>

Traditionally, courts considering requests for expedited discovery apply a four-part test. The movant must establish (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery is greater than the injury that the defendant will suffer if the expedited relief is granted. *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

Plaintiff ignores this well-established standard and, instead, focuses on recent decisions allowing expedited discovery upon a showing of "good cause" and "reasonableness."[1]  (Plaintiff's Feb. 27, 2008 letter, at 2)  However, most of

---

[1]    The determination of the appropriate legal standard to be applied to requests for expedited discovery depends on the facts and circumstances of the specific case. *See, e.g., Std. Inv. Chartered, Inc. v. NASD*, 2007 U.S. Dist. LEXIS 27342, * 16 (S.D.N.Y. Apr. 11, 2007) (explaining that while some recent decisions have applied the "good cause" and "reasonableness" standard, the *Notaro* test remains "well-suited to the circumstances of that case and often used in this District"); *BlackRock, Inc. v. Schroders PLC*, 2007 U.S. Dist. LEXIS 39279, * 23-24 (S.D.N.Y. May 30, 2007) (noting that "[c]ourts in this district apply one of two tests to determine

The Honorable Theodore H. Katz
April 1, 2008
Page 3

these cases involved unique and compelling circumstances threatening the judicial process; and one case turned on judicial inefficiency and undue burden where the proceedings were past the motion to dismiss stage. *See, e.g., Stern v. Crosby*, 246 F.R.D. 453 (S.D.N.Y. 2007) (witness tampering); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) (foreign defendants potentially hiding assets); *Sony Entm't Inc. v. Does 1-40*, 326 F.Supp. 2d 556 (S.D.N.Y. 2004) (critical internet user activity logs would be maintained for only a limited period of time before data was erased); *Wesley v. Muhammad*, 2008 WL 123812, *13 (S.D.N.Y. Jan. 10, 2008) (complaint survived motion to dismiss).

These cases are not relevant here. Plaintiff simply seeks a head start on discovery based on nothing more than its speculations that the "Cayman defendants *presumably*" redistributed portions of the alleged transfers, and the requested expedited discovery "*will likely pose no burden* to Investcorp … as Investcorp *should have* ready access to and control" of the information sought. (Plaintiff's Feb. 27, 2008 Letter, at 2, 3) (emphasis added) Regardless of the legal standard applied, sweeping assumptions like these do not satisfy the requirements for expedited discovery. *See, e.g., Don King Prods., Inc. v. Hopkins*, 2004 WL 2997800, at *3 (S.D.N.Y. Dec. 23, 2004) (applying *Notaro* standard and denying request for expedited discovery where movant failed to demonstrate that either "irreparable harm" or "substantial prejudice" would result if the action proceeded at a normal pace); *Mitra v. State Bank of India*, 2005 WL 2143144, at *7 (S.D.N.Y. Sept. 6, 2005) (denying request for expedited discovery where, although potential witnesses in employment gender discrimination case might soon be relocated to a foreign country, plaintiff would likely be able to obtain necessary discovery via a 30(b)(6) notice of the defendant corporation).

Therefore, the Investcorp defendants respectfully submit that discovery should be denied until the Court has determined the threshold venue transfer and dismissal motions that the defendants have asked to bring.

Respectfully,

Anthony W. Clark

cc:    J. Christopher Shore, Esq.
       William P. Frank, Esq.
       Counsel on attached distribution list

---

whether the expedited discovery is appropriate;" either the *Notaro* test or the "good cause" and "reasonableness" test).

# Exhibit 3
(Plaintiff's April 17, 2008 letter)

WHITE & CASE

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
www.whitecase.com

Direct Dial +.212.819.8394    cshore@whitecase.com

April 17, 2008

<u>VIA HAND DELIVERY</u>

The Honorable Theodore H. Katz
United States Magistrate Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007-1312

Re:  *Old Ladder Litigation Co., LLC v. Investcorp Bank B.S.C., et al.,*
     Case No.  08 CV 0876 (RMB) (THK)

Dear Judge Katz:

On behalf of Old Ladder, we hereby provide this reply to the letter of the Investcorp Defendants, dated April 1, 2008, concerning our request for limited expedited discovery in the above case.[1]

In their letter, the Investcorp Defendants:

(1)    do not deny the existence of downstream investors who received distributions in connection with the fraudulent conveyances alleged in the Complaint;

(2)    do not contend that the requested discovery regarding the names and locations of those investors is irrelevant, would be burdensome to provide, or would otherwise require them to disclose confidential or privileged materials;

(3)    do not argue that they are not in possession, custody or control of all requested names and addresses; and

(4)    do not seriously challenge that Old Ladder has set forth a prima facie showing of "good cause" to support the disclosure of that information at this time.

---

[1] Capitalized terms are defined in our letter to Judge Richard Berman dated February 27, 2008, which initiated the reference to this Court.

ALMATY  ANKARA  BANGKOK  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUDAPEST  DRESDEN  DÜSSELDORF  FRANKFURT  HAMBURG
HELSINKI  HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MEXICO CITY  MIAMI  MILAN  MOSCOW  MUNICH
NEW YORK  PALO ALTO  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SINGAPORE  STOCKHOLM  TOKYO  WARSAW  WASHINGTON DC

LOSANGELES 735580 (2K)

The Honorable Theodore H. Katz

April 17, 2008

Instead, the Investcorp Defendants contend that such discovery should be denied because either the Court lacks personal jurisdiction over certain of its foreign investment companies or because Old Ladder has failed to make a showing of "irreparable injury" to support any expedited discovery. Neither argument has merit.

### This Court Has Sufficient Jurisdiction Over the Investcorp Defendants to Order the Requested Expedited Discovery

At page 2 of their letter, the Investcorp Defendants contend that the Complaint does not allege facts that establish personal jurisdiction over 33 of the 34 Investcorp Defendants. Leaving aside contentions regarding alleged pleading deficiencies (which are irrelevant in that personal jurisdiction does not need to be pleaded), this Court has personal jurisdiction over all of the relevant Investcorp Defendants sufficient to compel them to produce the requested names and addresses immediately.

As an initial matter, Investcorp International, Inc. is indisputably a corporation organized in Delaware with its principal place of business in New York. Similarly, Investcorp S.A. and Investcorp B.S.C. - - two of the primary Investcorp Defendants -- each list New York as a "headquarters" on their website.[2] Given that the financial statements of these two entities disclose that their subsidiaries are entities over which they have "the power to control," this Court may order the parent entities to produce all information within their possession, custody or control, even if the information technically "belongs" to affiliates. *See, e.g., M.L.C., Inc. v. North American Philips Corp.*, 109 F.R.D. 134, 136-137 (S.D. N.Y. 1986); *Ferber v. Sharp Electronics Corp.*, 1984 WL 912479 (S.D. N.Y. 1984); *George Hantscho Co. v. Miehle-Goss-Dexter, Inc.*, 33 F.R.D. 332 (S.D. N.Y. 1963).

Even without general jurisdiction over the parent entities, this Court can still order disclosure directly from the investment entities. And, while it may be uncertain whether any of the 25 investment entities at issue have the systematic contacts needed for general jurisdiction in the U.S. courts, specific jurisdiction clearly exists over them. As alleged in the Complaint, these defendants affirmatively targeted the United States by purchasing, or facilitating the purchase of, a controlling interest in a privately held corporation in the United States and proceeding to cause the corporation to pay them millions of dollars utilizing United States banks and laws. The specific direct actions these defendants took and the specific benefit they received from purchasing a United States company and doing business in the United States is sufficient to confer jurisdiction here. *See, e.g., In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1345-1347 (11th Cir. 1988) (jurisdiction exists based on transfers made out of United States bank accounts), *rev'd on other grounds by Granfinanciera S.A. v. Norberg*, 492 U.S. 33 (1989); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 192 B.R. 73, 79-80 (S.D. N.Y. 1996); *In re Teknek, LLC*, 354 B.R. 181, 199 (Bankr. N.D. Ill. 2006) (act of causing withdrawal of money from an LLC operating in the forum is a contact establishing the bases for specific personal jurisdiction).

Perhaps more important, in addition to their specific targeting activities, 25 of the investment entities are parties to a 2003 Recapitalization Agreement, entered into with Old

---

[2] http://www.investcorp.com/Template2b.aspx?pageid=AI7.0

2

The Honorable Theodore H. Katz

April 17, 2008

Ladder's predecessor-in-interest in connection with the 2003 conveyance at issue. In that agreement, each partnership agreed as follows:

> The parties hereby irrevocably submit to the jurisdiction of the courts of the State of New York and the Federal courts of the United States of America located in the Borough of Manhattan, the City of New York solely in respect of the interpretation and enforcement of the provisions of this Agreement and the transactions contemplated hereby.

(Relevant portions of the 2003 Recapitalization Agreement are attached as Exhibit A). Given that the 2003 fraudulent conveyance claims arise out of the "transactions contemplated" by this agreement, jurisdiction exists in this Court.

To the extent, however, that there is any doubt about the existence of personal jurisdiction over any of the Investcorp Defendants, we would request that the Court immediately authorize limited discovery relating to jurisdictional contacts from each of them, including the nature and extent of all of their investments, and investment activities, in the United States. Such discovery is warranted where, as here, there has been a threshold showing of jurisdiction and the position is not frivolous. See *Unique Industries, Inc.* v. *Sui & Sons Int'l Trading Corp.*, 2007 WL 3378256 *6 (S.D.N.Y. 2007) (Slip Op.).

## Expedited Discovery Is Warranted Under Any Standard

Perhaps conceding that jurisdiction might extend to at least some Investcorp Defendants, they next contend that expedited discovery is not warranted because Old Ladder has failed to make a showing of "irreparable harm," citing *Notaro* v. *Koch*, 95 F.R.D. 403, (S.D.N.Y. 1982).

While the irreparable harm test discussed in Defendants' letter has been applied in certain cases, the general trend is towards the more flexible good cause/reasonableness standard. See *Stern* v. *Crosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (citing *Ayyash* v. *Bank Al-Madina*, 233 F.R.D. 325, 326-327 (S.D.N.Y. 2005) and *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *O'Connor*, 194 F.R.D. 618, 623-24 and noting that the *Notaro* test is similar to the rigorous standard required for granting a preliminary injunction). Indeed, in one of the very cases cited by Defendants, the Court acknowledged that the *Notaro* test, which may have been found useful in the context of *Notaro*'s specific circumstances of "expedited depositions in a politically volatile situation," is not controlling authority. *Std. Inv. Chartered, Inc.* v. *NASD*, 2007 WL 1121734 at *5 (S.D.N.Y. April 11, 2007).

In any event, the Investcorp Defendants do nothing to explain why discovery should not be had under either standard. They certainly do not allege any prejudice on their part or explain why names and addresses that will be discoverable later should not be produced now. On the other hand, the harm to Old Ladder could, in fact, be irreparable to the extent that causes of actions against the Doe Defendants are later subject to statute of limitations defenses. In other similar cases, under similar circumstances, expedited discovery of the identity of "Doe" defendants has been specifically ordered. For example, in *Sony Music Entertainment Inc.* v. *Does 1-40*, 356 F.Supp.2d 556 (S.D.N.Y. 2004), the Court allowed expedited discovery of

3

The Honorable Theodore H. Katz

April 17, 2008

identifying information, including names, addresses, email addresses and media access control addresses, about Doe defendants accused of downloading copyrighted music. *Id.* at 562-67 (also rejecting argument regarding lack of personal jurisdiction). In *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999), the Court acknowledged that courts have allowed limited expedited discovery to permit the plaintiff to discover identifying facts necessary to permit service on defendants. *Id.* at 577 *citing Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (district court abused discretion by dismissing case with respect to Doe defendants without ordering named defendants to answer interrogatories seeking names and addresses), *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995), and *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980). Finally, in *Wesley v. Muhammad*, 2008 WL 123812 at *13 (S.D.N.Y. Jan. 10, 2008), the Court granted leave to pursue "targeted discovery regarding the identity of the John Doe defendants and to request responses to his written requests for that information on a two-week cycle."

\*    \*    \*

In the end, the production of names and addresses simply should not be controversial, and Defendants should be ordered to produce them forthwith.

We look forward to seeing the Court on April 21.

Respectfully submitted,

J. Christopher Shore

Enclosure

cc: To the Attached Distribution List (w/o encl) (By facsimile and email)

4

# Exhibit 4

(Transcript of April 21, 2008 conference)

841zoldc                    Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    OLD LADDER LITIGATION,

4                    Plaintiff,

5              v.                        08 CV 876 (RMB)(THK)

6    INVESTCORP BANK, et al.,

7                    Defendants.

8    ------------------------------x

9                                       April 21, 2008
                                        9:50 a.m.
10
     Before:
11
                    HON. THEODORE H. KATZ,
12
                                        Magistrate Judge
13
                         APPEARANCES
14   WHITE & CASE
     J. CHRISTOPHER SHORE
15        Attorneys for Plaintiff

16   SKADDEN ARPS
          Attorneys for Investcorp Defendants
17   BY:  ANTHONY W. CLARK

18

19

20

21

22

23

24

25

                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

841zoldc                         Conference

1          (In open court)

2          THE COURT:  Good morning, folks.  Have a seat.

3          MR. SHORE:  Good morning, your Honor.

4          THE COURT:  All right.  So why don't you first update

5   me on what's happening -- what happened in front of Judge

6   Berman, and what's going on with the rest of the case.

7          MR. SHORE:  Sure.  Chris Shore from White & Case for

8   Old Ladder Litigation Company.

9          There were various letters which were submitted to the

10  Court to address issues of jurisdiction and venue.  The Court

11  said that he was prepared to rule on that, but the parties

12  agreed that we were going to brief it for him.  Everything will

13  be submitted by the end of July, and he will have a short oral

14  argument at a date to be set after the papers are submitted.

15         THE COURT:  So there is no anticipated discovery on

16  the jurisdiction issue?

17         MR. SHORE:  He said to take that up with you.

18         THE COURT:  Do you expect there to be a need for

19  discovery?

20         MR. SHORE:  I would expect, depending on whether or

21  not we can't get the information from those defendants over

22  whom the Court I think clearly has jurisdiction at this point.

23         THE COURT:  Okay.  And so motions to dismiss are going

24  to be fully briefed by July.

25         MR. SHORE:  Yes.

841zoldc                    Conference

1          THE COURT:  And are those going to be on behalf of

2   just the Cayman entities --

3          MR. CLARK:  No.  The motions that are going to go

4   forward before Judge Berman, your Honor, include -- sort of

5   reply briefing, include motion to transfer venue to the

6   Delaware District and then various motions to dismiss, subject

7   matter jurisdiction grounds, personal jurisdiction grounds,

8   12(b)(6) grounds, probably a few other grounds --

9          THE COURT:  Okay.

10          MR. CLARK:  -- throw in there as well.  That is to be

11   done by July the 29th.  And as Mr. Shore indicated -- by the

12   way, it's Tony Clark for the Investcorp defendants.  I'm sorry.

13          There will be a brief hearing, a time to be set after

14   the briefing is done.

15          Judge Berman also indicated that he thought it was

16   premature to enter a case scheduling or case management order

17   at this time till he figures out where these cases are going to

18   be and what's left in these cases.

19          He did indicate we should take up discovery with

20   respect to personal jurisdiction issues with your Honor.  I

21   think if not entirely, or perhaps entirely, that discovery is

22   going to be directed at the Investcorp defendants.  And we

23   understand from the body language, if not an actual ruling,

24   that we're expected, to the extent that we're raising personal

25   jurisdiction issues, to participate in limited discovery

841zoldc                    Conference

1    directed to those issues.  So whenever the plaintiff serves

2    that on us, we'll take a look at it and we'll respond to what

3    we think is appropriate and object to what we think is not.

4            THE COURT:  Okay.

5            MR. SHORE:  I just want to clarify one point, because

6    I don't think that, or I didn't perceive Judge Berman to be

7    saying that all issues with respect to pretrial scheduling are

8    premature.  I think he said scheduling of the trial date, or

9    the end date for the discovery would be premature; i.e., he did

10   specifically say that, to the extent that any defendant wants

11   to take the position that there should be no discovery pending

12   any motion or pending any ruling on the motions to dismiss,

13   that that would be an issue that you would have to address and

14   they would have to raise.

15           THE COURT:  Okay, so let's deal with the immediate

16   issue.

17           Mr. Clark, I don't think you had a chance to respond

18   to the last letter that Mr. Shore submitted.  But specifically

19   with regard to the primary defendant as to whom there is no

20   personal jurisdiction argument, what's your position with

21   respect to whether that Investcorp has custody and control of

22   documents with regard to the foreign entities?

23           MR. CLARK:  Your Honor, the question hasn't been asked

24   before today.  I was a little surprised it hadn't been.  But

25   now that your Honor's asked it, my understanding is that

841zoldc                    Conference

1    Investcorp International and/or Investcorp. Bank BSC,

2    Investcorp International, which is they allege a New York

3    corporation based in New York, it's actually a Delaware

4    corporation based in New York, but clearly there is personal

5    jurisdiction over that entity here.  And based on inquiries

6    that we have made of the client, I believe that there is also

7    personal jurisdiction, because of general contacts, in the

8    United States over Investcorp Bank BSC.

9            And my understanding is that between those two

10   entities, they probably have or are able to get ahold of the

11   documents that would establish two things:  One, whether or not

12   there's personal jurisdiction over the other entities -- and we

13   think there is not, or at least over most of them because they

14   are simply passive investment entities that hold stock or held

15   stock in the company.

16           And as to what I've been thinking of as the transferee

17   discovery that they're asking for, I think those records are

18   also in the possession of or certainly under the control of

19   entities that are subject to jurisdiction before this Court.

20           THE COURT:  So does that moot this dispute?

21           MR. CLARK:  No, I don't think so, your Honor.  I think

22   that with respect to personal jurisdiction discovery, as I

23   indicated before, if they asked for it, we'll respond to it.

24   And if we think it's appropriate, we'll provide discovery.  And

25   I'm sure some of it will be appropriate.

841zoldc                    Conference

1          With respect to transferee discovery, that really I

2     think fairly comes under the rubric more of merits discovery.

3     And that discovery ought to be held in abeyance until rulings

4     on the motions for venue, transfer of venue and the motions to

5     dismiss on various grounds.  They're dispositive motions.  They

6     will determine who, if anybody, is left in this case.  They'll

7     determine what claims, if any, are left in this case.  And

8     until those issues have been determined, it seems to me that

9     that sort of discovery ought to be held in abeyance unless

10    there's some kind of irreparable harm under the Tara test that

11    we cited to your Honor and there isn't any.  What they'd like

12    is they'd like more discovery sooner, which I think --

13          THE COURT:  Well, they're really only seeking

14    identities, not anything substantive.

15          MR. CLARK:  Well, I would not quibble with the Court,

16    but I would argue that that --

17          THE COURT:  That is substantive.

18          MR. CLARK:  That is substantive discovery.  What they

19    want is they want discovery to find other people and entities

20    who they can try and drag in front of the Court on these

21    claims, and that -- that's more substantive than procedural.

22          THE COURT:  Now, will your motions -- do you

23    anticipate that your motions would address the plausibility of

24    a complaint even against these unnamed transferees?

25          MR. CLARK:  Yes, it necessarily would, your Honor.

841zoldc                        Conference

1    The 12(b)(6) aspects of that motion certainly would be

2    applicable to anybody who would be sued on these claims, at

3    least under the current allegations, things like statutes of

4    limitations and the like that would apply regardless of who the

5    defendants are, doe defendants or named defendants.  So, yes,

6    the arguments, at least many of the arguments would apply to

7    the unnamed doe defendants at this point too.

8        THE COURT:  Mr. Shore.

9        MR. SHORE:  Okay.  I actually think there are three

10   entities over whom you clearly have personal jurisdiction.  The

11   other one is going to be Investcorp SA.

12       MR. CLARK:  I didn't mean to -- I'm sorry, I don't

13   mean to interrupt.  I didn't mean to leave them out.  I just

14   sort of --

15       THE COURT:  Right.

16       MR. CLARK:  -- lost track of it.  But those entities I

17   think are, based on communications I've had with the clients, I

18   think they're all subject to jurisdiction here.

19       THE COURT:  So it's Investcorp BSC and Investcorp SA?

20       MR. CLARK:  It's -- actually, it's Investcorp Bank

21   BSC, Investcorp International, Inc., and Investcorp SA., all of

22   which are either based in the United States or have sufficient

23   general contacts with the United States to be subject to

24   jurisdiction.

25       THE COURT:  Right, okay.

841zoldc                    Conference

1          MR. SHORE:  Second, I'm a little concerned about the

2    qualification that got raised a couple of times, that they

3    might have control over these documents.  This issue was raised

4    at the first conference before your Honor, that if you had

5    jurisdiction over someone.  Clearly they should be finding out

6    whether they have control.  So we don't have an answer yet.  So

7    rather than --

8          THE COURT:  No, I took there was a strong suggestion

9    that they do.

10         MR. CLARK:  Yeah.  I asked, and everything I was told

11   indicated to me that they have sufficient control over any

12   documents related to any Investcorp affiliated entities like

13   these wholly owned investment entities.  So if I was equivocal,

14   I didn't mean to be, your Honor.  I believe we have the ability

15   to get those documents.

16         THE COURT:  Right.

17         MR. SHORE:  Okay.  Which I guess leaves the only issue

18   with respect to today's discovery being a why now question.

19   Again, as you pointed out, the issue we're dealing with are

20   just the names and locations of doe defendants.

21         To the extent that any of those defendants would want

22   to raise a Statute of Limitations defense and take the position

23   that being named a doe was not sufficient to stop -- we do need

24   to get a complaint and summons out to those defendants before

25   the Statute of Limitations, which tolled during the bankruptcy,

841zoldc                        Conference

1    will expire.  So we have pressing need to get that right now.

2              Second, I think it is important, going to be important

3    for those parties, to the extent that a claim is asserted

4    against them, to participate in the pretrial matters that are

5    going on.  That opening brief on the motion to dismiss is due

6    June 6th.  To the extent that we can get the names and

7    addresses and commence suit against them, they will have plenty

8    of time to come in.  And I would be surprised to think that the

9    investment company, which they placed money with, had the

10   authority to respond on their behalf to personal claims that

11   are alleged against them under Section 550 of the Bankruptcy

12   Code.  And in the absence of some binding representation from

13   Investcorp's counsel, I think those defendants are going to

14   have personal defenses to a claim that would -- would not

15   necessarily be addressed in the context of the motions to

16   dismiss; for example, whether or not the Court has personal

17   jurisdiction over them.  And one can easily imagine that if

18   there are U.S. investors in these Cayman companies, whereas you

19   would not have jurisdiction over the Cayman company if it came

20   to pass, you might still have jurisdiction over the U.S.

21   investor in that.  So I think it is going to be important prior

22   to the date, which is now set of June 6th for the motions to

23   dismiss, to have those defendants named and analysis undertaken

24   to determine whether or not the Old Ladder Litigation Trust

25   should proceed against them and have those complaints on file

841zoldc                        Conference

1    quickly so that the June date will apply as to those defendants

2    as well.

3         And then I would, you know, sort of end with the flip

4    side of the analysis, which is there is no prejudice here.

5    There is no burden here.  There is no allegation of

6    confidentiality.  There is no allegation of privilege or

7    anything else.  So in weighing between the reasons why we

8    should have the discovery now and the reasons why it shouldn't

9    issue now, I think it clearly tips in favor of the plaintiff

10   here.

11        THE COURT:  Do you have anything else you want to be

12   to be heard on, Mr. Clark?

13        MR. CLARK:  Your Honor, one word that Mr. Shore

14   mentioned that I do want to say something about is

15   confidentiality.  I haven't explored that issue in-depth with

16   my clients, but it would be entirely conceivable to me that the

17   individual investors, or that my clients would believe that the

18   information with respect to the individual investors, who they

19   are and where they're located, should be kept confidential

20   subject to some sort of protective order.  I don't know that

21   that's the case, but it may be.

22        I am reminded of a case that I was involved in a few

23   years ago down in Bankruptcy Court in Texas involving some

24   foreign investors in some funds that invested in the United

25   States.  These folks, as I recall, were from Mexico, and there

841zoldc                       Conference

1   was a very serious issue there about if their identities were

2   revealed in a public way, they might be subject to physical

3   harm and criminal activity in Mexico, kidnappings and the like.

4          Now, I don't know if anything like that applies here,

5   but I haven't said anything about it because it was premature

6   to say anything about it. So if I say something about it

7   later, I don't want anyone to think that I was foreclosed.

8          THE COURT: Right. But you're not suggesting that

9   there are any secrecy laws. It's more of a question of

10  personal confidentiality.

11         MR. CLARK: I'm not aware of whether there are any

12  secrecy laws involved either. Good point, your Honor. So I'll

13  reserve on that.

14         THE COURT: I didn't mean to suggest --

15         MR. CLARK: I just don't know. And until they serve

16  discovery and we see exactly what it is they're asking for, and

17  I'm able to show that to the business people who know about

18  this, I really have to just reserve on any issues related to

19  confidentiality.

20         MR. SHORE: Let me break that apart. They know what

21  discovery we want on names and address. I think that's clear.

22  With respect to those, I will happily hold those on an

23  attorneys eyes only basis. Then when they gather the

24  documents, to the extent that there is some confidentiality in

25  individual investor agreement which they need to raise or if

841zoldc                    Conference

1    there is any secrecy law, we can address that at some --

2    hopefully on some expedited basis before we'd have to file a

3    complaint naming them because I wouldn't want to file the

4    complaint under seal unless I absolutely had to.

5         With respect to the jurisdictional discovery, we'll

6    propound that to them either tonight or tomorrow.  I don't

7    perceive that there are going to be any great issues with

8    respect to that.  But again we -- not again.  We have prepared

9    a confidentiality order and stipulation.  We'll circulate it to

10   everybody, and hopefully that will be the first information

11   that gets covered by it.

12        MR. CLARK:  Your Honor, when plaintiff's counsel

13   propounds the discovery on jurisdictional issues, they should

14   also propound the discovery on transferee issues so I know

15   exactly what they're asking for and in exactly what form

16   they're asking for it.

17        THE COURT:  I think you have their request on the

18   transferee issues already, don't you?

19        MR. CLARK:  They've described generically in their

20   letter what they think they're after.  If I were to construe

21   that, your Honor, I would say that what they're doing is

22   propounding an interrogatory to us that says, give me the names

23   and addresses of any persons to whom funds received in the

24   challenge transactions were subsequently transferred.  If I've

25   stated that correctly, then I can respond to it.  If there's

841zoldc                      Conference

1    something different that they want, then they need to tell us

2    in a clear way.

3              MR. SHORE:  I stood up at the last conference and I

4    said, do we need to have some sort of formal discovery; do you

5    want me to send you a document request laying it out?  And I

6    heard clearly, that's not going to be necessary, we'll just

7    handle it in the letters.

8              I think I had been very clear, I want -- and it's set

9    forth in the initial letter which got referred down here, I

10   want the names and addresses of each of the investors in each

11   of the Cayman and other Investcorp investment vehicles who

12   received a distribution of funds in connection with the 1997

13   transaction and the 2003 transaction as defined in the

14   complaint.

15             MR. CLARK:  And Mr. Court Reporter has now got that

16   down, your Honor.

17             THE COURT:  So now it's --

18             MR. CLARK:  I got my interrogatory.  I know what I'm

19   responding to.

20             THE COURT:  Okay.  So on the immediate issue, I'm

21   going to authorize the discovery regarding identities and

22   addresses of these investors.  I think there's a sufficient

23   basis to proceed with that limited discovery at this point.

24   There is no issues yet with regard to jurisdictional discovery

25   because you haven't produced them yet.

84lzoldc                              Conference

1             So with regard to your jurisdictional discovery, I

2    guess the goal here is to get that done in time to brief the

3    issue.

4             MR. SHORE:  Yes.

5             MR. CLARK:  Yes, Judge.

6             THE COURT:  Anything else we need to do today?

7             MR. CLARK:  I don't believe so, your Honor.

8             THE COURT:  Okay.  So, hopefully I won't hear from you

9    about disputes about the jurisdictional discovery, but if I do

10   just get me a letter, respond in three days and I'll deal with

11   it.

12            MR. CLARK:  Thank you, your Honor.

13            THE COURT:  Okay, take care.  Good to see you.

14            (Adjourned)

15

16

17

18

19

20

21

22

23

24

25

# Exhibit 5

(Investcorp defendants' May 1, 2008 letter)

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P.O. BOX 636

WILMINGTON, DELAWARE 19899-0636

TEL: (302) 651-3000

FAX: (302) 651-3001

www.skadden.com

DIRECT DIAL
(302) 651-3080
DIRECT FAX
(888) 329-3081
EMAIL ADDRESS
ANTHONY.CLARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
―――
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 1, 2008

**BY HAND DELIVERY**

The Honorable Theodore H. Katz
United States Magistrate Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007-1312

RE:    Old Ladder Litigation Co., LLC v. Investcorp Bank
B.S.C., et al., Case No. 08 CV 0876 (RMB) (THK)

Dear Magistrate Judge Katz:

In accordance with Your Honor's Individual Practices, we respectfully request that Your Honor schedule oral argument on the Investcorp Defendants' Motion to Reconsider, which motion was filed on May 1, 2008.

We are available at the convenience of the Court.

Respectfully,

*Anthony W. Clark / EOH*

Anthony W. Clark

cc:    J. Christopher Shore, Esq.
William P. Frank, Esq.
Counsel on the attached distribution list

# Exhibit 6

(Investcorp defendants' Motion for
Reconsideration, dated May 1, 2008)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
William P. Frank (William.Frank@skadden.com)
Four Times Square
New York, New York 10036
(212) 735-3000

and

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Anthony W. Clark (Anthony.Clark@skadden.com)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

OLD LADDER LITIGATION CO., LLC, as Litigation   :
Designee on behalf of the Liquidation Trust,     :

                                         :   08 cv 0876 (RMB)(THK)

                      Plaintiff,      :

             vs.                 :   **NOTICE OF MOTION**

                                         :

INVESTCORP BANK B.S.C., et al.,          :   **ELECTRONICALLY FILED**

                                         :

                 Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PLEASE TAKE NOTICE that, upon the accompanying declaration of

Anthony W. Clark, the accompanying memorandum of law and all prior proceedings had

herein, the Investcorp Defendants will move this Court before the Honorable Theodore H.

Katz, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, for

reconsideration of the ruling of the Court made from the bench at a conference held April

21, 2008.

Dated: New York, New York
          May 1, 2008

William P. Frank (William.Frank@skadden.com)
SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

and

Anthony W. Clark (Anthony.Clark@skadden.com)
SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Investcorp Entity Defendants
and Investcorp Director Defendants

William P. Frank (William.Frank@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

      and

Anthony W. Clark (Anthony.Clark@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Investcorp Entity Defendants
and Investcorp Director Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

OLD LADDER LITIGATION CO., LLC, as Litigation    :
Designee on behalf of the Liquidation Trust,       :
                        :    08 cv 0876 (RMB)(THK)
           Plaintiff,      :
      vs.               :    **ELECTRONICALLY FILED**
                        :
INVESTCORP BANK B.S.C., et al.,      :    **ORAL ARGUMENT**
                        :    **REQUESTED**
      Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN SUPPORT OF
## INVESTCORP DEFENDANTS' MOTION FOR RECONSIDERATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

I.      Recent Events Warrant The Court's Reconsideration Of Its Order. ..................... 4

II.     Principles Of Comity Weigh In Favor Of Denying Or Placing Conditions
        On The Requested Discovery. ................................................................................. 5

CONCLUSION ................................................................................................................... 10

**TABLE OF AUTHORITIES**

<u>**CASES**</u>                                                                          <u>**PAGE(S)**</u>

*First American Corp. v. Price Waterhouse, LLP,*
    154 F.3d 16 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Westinghouse Electric Corp. Uranium Contracts Litigation,*
    563 F.2d 992 (10th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Linde v. Arab Bank, PLC,*
    463 F. Supp 2d 310, 314 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Mandanes v. Mandanes,*
    186 F.R.D. 279 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Minpeco, S.A. v. Conticommodity Services, Inc.,*
    116 F.R.D. 517 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.,*
    2005 U.S. Dist. LEXIS 27815 (S.D.N.Y. Nov. 10, 2005),
    aff'd 476 F.3d 140 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Reino de Espana v. America Bureau of Shipping,*
    2005 U.S. Dist. LEXIS 15685 (S.D.N.Y. Aug. 1, 2005) . . . . . . . . . . . 6, 7, 8

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Societe Nationale Industrielle Aerospatiale v. United States District Court,*
    482 U.S. 522 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Townsend v. Benjamin Enterprises Inc.,*
    2008 U.S. Dist. LEXIS 31582 (S.D.N.Y. Apr. 17, 2008) . . . . . . . . . . . . . . 4

*U.S. Titan, Inc. v. Guangzhou Men Hua Shipping Co.,*
    182 F.R.D. 97 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>**LOCAL RULES**</u>

S.D.N.Y. Local Civil Rule 6.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

i

Pursuant to Local Civil Rule 6.3, the Investcorp defendants respectfully submit this memorandum of law in support of their motion for reconsideration of the Court's ruling from the bench at the April 21, 2008 conference (the "Order").[1]

## STATEMENT OF FACTS

On January 24, 2008, plaintiff initiated this action by filing a 187-page complaint, naming more than 220 defendants and asserting 30 separate causes of action. A month later, in a February 27th letter to the Court, plaintiff sought leave to file a motion for expedited discovery from the Investcorp defendants of the names and addresses of their investors to whom funds from the Werner transactions were distributed. Following an initial status conference with the Court, the Investcorp defendants responded to plaintiff's letter on April 1st.

On April 17, 2008, the last business day before the April 21 conference, plaintiff submitted yet another letter on its request for expedited discovery of investor information from Investcorp. Plaintiff raised several new issues and arguments not addressed in the parties' prior correspondence with the Court, including the contention that the requested discovery is not confidential or privileged material. As the Court noted (Trans. at 4), the Investcorp defendants had no opportunity to respond to plaintiff's April 17 letter before the conference.

When confidentiality was discussed at the conference, and the Court specifically asked about the applicability of secrecy laws, Investcorp's counsel reserved

---

[1]    The transcript of the April 21, 2008 conference is attached as Exhibit 1 to the Declaration of Anthony W. Clark and is cited as "Trans. at ___."

his clients' rights with respect to these newly raised issues in order to confer with his clients about the matter. (Trans. at 10-12) Thus, when the Court thereafter permitted discovery of the investor information (Trans. at 13), while not explicitly so saying, we understood that it was without prejudice to Investcorp's right to address any confidentiality concerns that might appear after further inquiry.

Following the conference, Investcorp promptly conferred with counsel in Bahrain, where defendant Investcorp Bank B.S.C., the ultimate parent company of the affiliated entities named as defendants in this action, is domiciled and registered about the confidentiality question. Investcorp has been informed that (i) under Article 117 of the Central Bank of Bahrain and Financial Institutions Law (Decree Law No. 64/2006), it is prohibited from disclosing the investor identifying information subject to the Court's discovery ruling absent consent of the investors (of which there are more than 290) or an order of the Bahrain courts authorizing such disclosure, and (ii) disclosure of this information other than in accordance with Article 117 could be a criminal offence under Article 371 of the Bahrain Penal Code (Decree Law No. 15/1976).[2]  A violation of the prohibition on disclosing this information under Article 117 may result in imprisonment and a fine of 10,000 Bahrain Dinars (more than $25,000), and could subject Investcorp Bank B.S.C. to suspension or revocation of its banking license.

---

2    Local Civil Rule 6.3 precludes the filing of a supporting affidavit "unless directed by the court." The Investcorp defendants will obtain and will file, if permitted by the Court, a supporting declaration from Bahrainian counsel attesting to the facts concerning Bahrain law stated above.

Therefore, in order to avoid undue prejudice, the Investcorp defendants respectfully request that the Court reconsider and deny plaintiff's request for the investor discovery or, alternatively, modify the April 21 Order to condition the investor discovery on plaintiff obtaining authorization under Bahrain law for Investcorp to disclose the requested information.

## ARGUMENT

### I.    Recent Events Warrant The Court's Reconsideration Of Its Order.

"Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence." *Townsend v. Benjamin Enters. Inc.*, 2008 U.S. Dist. LEXIS 31582, *2 (S.D.N.Y. Apr. 17, 2008) (internal citations and quotations omitted); *U.S. Titan, Inc. v. Guangzhou Men Hua Shipping Co.*, 182 F.R.D. 97, (S.D.N.Y. 1998) (stating that Local Rule 6.3 "provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice").

Under the circumstances here, reconsideration should be granted. The confidentiality issue was not raised until plaintiff's reply letter immediately before the April 21 conference, so Investcorp had no opportunity to respond. Moreover, Investcorp has brought the Bahrainian secrecy law issue to the Court promptly upon learning of it.

Plaintiff claims a "pressing need" for this discovery to avoid a statute of limitations problem. (Trans. at 9) That rings hollow, since it is plaintiff and its predecessor in interest, the Werner creditors' committee who delayed pressing these issues until shortly before the statute of limitations will expire. Thus, the committee knew about the claims that were to be asserted in this action from the start of the Werner bankruptcy case in June 2006; indeed, for well over a year before this action was filed, the committee took extensive discovery on these claims from Investcorp and others in the Delaware bankruptcy court – Investcorp alone produced more than 180,000 pages of documents – yet the investor information was never requested. Then, even after the

Werner bankruptcy plan was confirmed and became effective and the plaintiff succeeded as the creditors' representative authorized to act, it waited another three months to file suit. And it was not until February 2008, a month after this action commenced, and three and a half months before the statute of limitations on the claims under section 547 of the Bankruptcy Code is due to expire, did plaintiff finally ask for Investcorp's individual investors to be identified. Even then, plaintiff tactically waited until the last moment, just one business day before the April 21st conference, to raise the confidentiality issue in its reply letter to the Court. Had plaintiff or the committee raised the issue earlier, it could have been resolved, and relief could have been sought from the Bahrain courts, long ago.

On these facts, it would be manifestly unjust to put Investcorp to the impossible choice of violating its home country's laws and risking criminal sanctions and the loss of its banking license or disregarding a discovery order of this Court, so the requested investor discovery should be denied. But even if the discovery were to be permitted, the problem facing Investcorp can be avoided by conditioning plaintiff's right to the investor discovery on it obtaining authorization in Bahrain for the disclosure of that information. Whatever burden that may cause plaintiff is greatly outweighed by the prejudice to Investcorp and is justified since plaintiff and the creditors' committee, not Investcorp, are the parties responsible for the delay in raising the issue.

## II.   Principles Of Comity Weigh In Favor Of Denying Or Placing Conditions On The Requested Discovery.

This Court has discretionary authority to order disclosure of information protected by foreign law, including bank secrecy laws. *Linde v. Arab Bank, PLC*, 463 F.

Supp 2d 310, 314 (E.D.N.Y. 2006). The exercise of that discretion in disputes regarding

foreign discovery is to be guided by principles of comity and foreign relations. *Id., citing*

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court*, 482 U.S. 522

(1987). Thus, "[i]n deciding whether to compel foreign entities to engage in discovery

practices arguably prohibited by foreign law, courts must determine whether comity

requires deference to the foreign law." *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook*

*Tire Co., Ltd.*, 2005 U.S. Dist. LEXIS 27815, *3 (S.D.N.Y. Nov. 10, 2005), aff'd 476

F.3d 140 (2d Cir. 2007).

The international comity balancing test adopted by the Second Circuit is

derived from the Restatement of the Foreign Relations Law of the United States, and

considers four principal factors: (1) the competing interests of the nations whose laws are

in conflict, (2) the hardship of compliance on the party or witness from whom discovery

is sought, (3) the importance to the litigation of the information and documents requested,

and (4) the good faith of the party resisting discovery. *Reino de Espana v. Am. Bureau of*

*Shipping*, 2005 U.S. Dist. LEXIS 15685, *10 (S.D.N.Y. Aug. 1, 2005) (citations omitted);

*Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27815, at *3, *citing First Am. Corp. v.*

*Price Waterhouse, LLP*, 154 F.3d 16, 22 (2d Cir. 1998).

In the international comity analysis, the balance of national interests

"directly addresses the relations between sovereign nations." *Reino de Espana*, 2005 U.S.

Dist. LEXIS 15685, at *11, *citing Mandanes v. Mandanes*, 186 F.R.D. 279, 286

(S.D.N.Y. 1999). Here, "[t]he United States has a general interest in ensuring compliance

with discovery rules, and in ensuring that plaintiffs have access to discoverable

information", but "there are necessarily limits on plaintiffs' ability to discover relevant information." *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27815, at *6. By contrast, Bahrain has a strong national interest in its secrecy laws that should be given "substantial weight." *Reino de Espana*, 2005 U.S. Dist. LEXIS 15685, at *17; *see also Linde v. Arab Bank, PLC*, 463 F.Supp 2d at 315 (explaining that "maintaining bank secrecy is an important interest of the foreign jurisdictions" where discovery is sought, and noting that the United States has enacted similar bank secrecy protections). On the facts of this case, Bahrain's strong interest in its bank secrecy laws outweighs the United States' general interest in overseeing its discovery procedures.

The potential hardship imposed on the producing party is also an important factor in the comity analysis, and the "courts have considered the sanctions that may be imposed upon those who violate the foreign law, as well as the threat of prosecution." *Reino de Espana*, 2005 U.S. Dist. LEXIS 15685, at *22-23 (citations omitted); *See, e.g., Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 520-21 (S.D.N.Y. 1987) (denying motion to compel discovery of confidential customer identification information protected by Swiss bank secrecy laws that would subject disclosing party to penal sanctions, even if disclosure was made pursuant to US court order). The hardship to Investcorp from the discovery at issue is palpable – without authorization from the Bahrain courts, Investcorp would have to violate Bahrain law and be exposed to the risk of criminal sanctions and possible loss of its banking license in order to disclose the requested information.

By comparison, the discovery sought has no real importance in this litigation, and plaintiff has no compelling need for it. In this context, it is appropriate to consider that the fraudulent transfer claims as to which the discovery pertains are, at best, weak, since they are based on the strained allegation that Werner was insolvent for nine years before it filed for bankruptcy protection, and during most of that nine years, the company reported significant profits. Moreover, there are already more than 220 well-heeled defendants, who are alleged to have received hundreds of millions of dollars in the transactions at issue, in the case, so it is highly unlikely that even if plaintiff were to prevail on some claims, the existing defendants would turn out to be judgment-proof. There is simply no need to add another 290+ defendants to an already unwieldy litigation. Thus, plaintiff will suffer no real prejudice if the requested discovery is denied, particularly in comparison to what Investcorp faces if ordered to disclose the investor information in violation of Bahrain law. "Where the outcome of litigation 'does not stand or fall on the present discovery order,'. . . courts have generally been unwilling to override foreign secrecy laws." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992), *citing In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992, 999 (10th Cir. 1977). Thus, these factors also weigh in favor of denying the requested discovery.

The final factor to be considered is the good faith shown by the party from whom the discovery is sought. *Reino de Espana*, 2005 U.S. Dist. LEXIS 15685, at *25 (citations omitted). Here, there is no assertion that Investcorp has acted other than with the utmost good faith, nor could there be. When Werner went into bankruptcy, all equity

holders, including Investcorp and its investors, saw their remaining investments wiped out at a loss of tens of millions of dollars. Despite these losses, Investcorp cooperated in the creditors' investigation of potential claims and responded fully and diligently to their discovery requests in the bankruptcy case at great additional expense. And the only reason Investcorp is opposing the investor discovery at this time is to avoid violating Bahrainian law and risking Draconian penalties thereunder. Plainly, this factor also favors denial of the discovery.

## CONCLUSION

For all of the foregoing reasons, the Investcorp defendants respectfully request that the Court reconsider its April 21 Order and deny the discovery sought by plaintiff or, alternatively, condition such discovery on plaintiff obtaining authorization from the Bahrain courts authorizing disclosure of the investor information by Investcorp.

Dated: New York, New York
        May 1, 2008

> William P. Frank (William.Frank@skadden.com)
> SKADDEN, ARPS, SLATE,
>    MEAGHER & FLOM LLP
> Four Times Square
> New York, New York  10036
> (212) 735-3000
>
>
> Anthony W. Clark (Anthony.Clark@skadden.com)
> SKADDEN, ARPS, SLATE,
>    MEAGHER & FLOM LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, Delaware 19899
> (302) 651-3000
>
> Attorneys for Investcorp Entity Defendants
> and Investcorp Director Defendants

10

# Exhibit 7
(Plaintiff's Objection to Motion for
Reconsideration, dated May 7, 2008)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore (JCS-6031)

633 West Fifth Street, Suite 1900
Los Angeles, California 90071-2007
(213) 620-7700
Craig H. Averch (Admitted *Pro Hac Vice*)

Attorneys for Plaintiff OLD LADDER LITIGATION CO., LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>INVESTCORP BANK B.S.C., *et al.*,<br><br>Defendants. | Case No.  08 CIV 0876 (RMB)(THK)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO INVESTCORP DEFENDANTS' MOTION FOR RECONSIDERATION** |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND................................................2

    1.  The Nature of This Case................................................................2

    2.  The Requests for Discovery of the Doe Defendants' Identities and Locations................3

    3.  The Investcorp Defendants' Failure to Comply with the Order........................5

I. THE MOTION ACKNOWLEDGES THAT 33 OF THE INVESTCORP DEFENDANTS HAVE, WITHOUT JUSTIFICATION, REFUSED TO COMPLY WITH THE COURT'S ORDER................................................................................................6

II. THE BANK HAS FAILED TO SHOW A VALID BASIS FOR RECONSIDERATION OF THE APRIL 21 ORDER AS APPLICABLE TO IT .......................................7

  A.  The Court Committed No Error in Ordering Production........................8

  B.  The Motion Does Not Present Any New Evidence That Was Not Previously Available to the Bank........................................................................9

  C.  The Order Is Not Manifestly Unjust as to the Bank – Indeed, Justice Requires Production of the Information Subject to the Order .......................................10

    1.  The Information Sought is Directly Relevant to this Action........................11

    2.  The Bank Has Not Shown that Bahraini Law Prohibits Disclosure of the Information Sought ................................................................................11

    3.  The Lack of Alternative Means of Access to the Doe Defendants' Identities Supports Disclosure........................................................................12

    4.  The Interest of the United States in Disclosure Outweighs Any Interest of Bahrain in Secrecy of Customer Identities........................................................13

    5.  The Specificity of the Requested Information and its Origination in the United States Weighs in Favor of Disclosure................................................14

    6.  The Bank's Lack of Action Weighs in Favor of Disclosure ........................15

CONCLUSION ................................................................................16

## TABLE OF AUTHORITIES

Page

### CASES

*Articrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,*
  No. 04 Civ. 10014 PKL, 2007 WL 404768 (S.D.N.Y. Feb. 5, 2007) .........................................16

*Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.,*
  No. 01 Civ. 9649, 2007 WL 2493684 (S.D.N.Y. Sept. 5, 2007)...............................................8, 9

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,*
  105 F.R.D. 16 (S.D.N.Y. 1984) ....................................................................................... passim

*Ferguson v. Lion Holding, Inc.,*
  Nos. 02 Civ. 4258, 02 Civ. 4261, 2007 WL 2265579 (S.D.N.Y. Aug. 6, 2007) ..........................8

*Fidelity Partners, Inc. v. First Trust Co. of New York,*
  58 F.Supp.2d 55 (S.D.N.Y. 1999) ...............................................................................................9

*Griffin Ind., Inc. v. Petrojam, Ltd.,*
  72 F.Supp.2d 365 (S.D.N.Y. 1999) ...........................................................................................16

*In re Allou Distributors, Inc.,*
  379 B.R. 5 (Bankr. E.D.N.Y. 2007) .............................................................................................3

*In re Finley, Kuble, Wagner, Heine, Underberg, Manley, Myerson & Casey,*
  130 F.3d 52 (2nd Cir. 1997)........................................................................................................3

*In re Health Management Sys. Inc. Secs. Litg.,*
  113 F.Supp.2d 613 (S.D.N.Y. 2000) ...........................................................................................7

*Koehler v. Bank of Bermuda Ltd.,*
  No., M18-302, 2005 WL 1119371, (S.D.N.Y. May 10, 2005) .....................................................9

*Linde v. Arab Bank, PLC,*
  463 F.Supp.2d 310 (E.D.N.Y. 2006) ............................................................................. 13, 14, 15

*Marc Rich & Co., A.G. v. United States,*
  707 F.2d 663 (2d Cir. 1983)........................................................................................................7

*Montanile v. National Broadcasting Co.,*
  216 F.Supp.2d 341 (S.D.N.Y. 2002) ................................................................................ 8, 10, 16

*Reino De Espana v. American Bureau of Shipping,*
  No. 03CIV3573LTSRLE, 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005).......................... 10, 11, 13

*Sequa Corp. v. GBJ Corp.,*
  156 F.3d 136 (2d Cir. 1998)......................................................................................................16

*Societe Nationale Industrielle Aerospatiale v. United States District Court,*
  482 U.S. 522 (1987) ............................................................................................................. 8, 10

*United States v. First National City Bank,*
  396 F.2d 897 (2d Cir. 1968)............................................................................................ 7, 13, 14

*United States v. Int'l Bd. of Teamsters,*
  247 F.3d 370 (2d Cir. 2001).......................................................................................................9

ii

<u>**TABLE OF AUTHORITIES**</u>

(Cont'd)                                                                    Page

*Williams v. New York City Dep't of Corrections,*
    219 F.R.D. 78 (S.D.N.Y. 2003) ..........................................................................8

*WTC Captive Ins. Co., Inc. v. Liberty Mutual Fire Ins. Co.,*
    537 F.Supp.2d 619 (S.D.N.Y. 2008) ...................................................................9

**STATUTES**

11 U.S.C. § 550 ...................................................................................................... 3, 11

FRCP 33(b)(4) ...........................................................................................................10

FRCP 37.....................................................................................................................7

## PRELIMINARY STATEMENT

Before the Court is exactly the type of motion that makes the civil discovery process so unnecessarily painful and costly. On April 21, 2008, three of the thirty-four named Investcorp Defendants (Investcorp Bank B.S.C., Investcorp International, Inc. and Investcorp, S.A.) consented to entry of an order (the "Order") requiring disclosure of the names and addresses of named Doe defendants. Now, without having disclosed any information, all thirty-four have moved the Court to reconsider the consented-to Order. The sole basis for reargument is their new contention that Bahraini law allegedly prohibits the one Bahraini defendant – Investcorp Bank B.S.C. (the "Bank") – from producing information relating to the identities of customers of the Bank. Thus, they argue in a complete non-sequitur, none of the Investcorp Defendants should have to comply with the Order.

The Court should deny reargument. At heart, the Investcorp Defendants provide no legitimate reason why the arguments for non-disclosure which are now being raised were not raised in prior written submissions to the Court or at the two prior court hearings on the issue. Indeed, as respondents to outstanding discovery requests interposed months ago, it has been incumbent upon each of the Investcorp Defendants to determine what, if any, confidentiality issues (and other objections) would prevent disclosure and to take steps to position themselves to comply with their disclosure obligations. From the Motion, it is clear that, at best, they did nothing to determine applicable confidentiality restrictions under Bahraini law. At worst, they have actively concealed the issue in order to delay production as long as possible. Either way, there is no basis for allowing any Investcorp Defendant to reargue the Order.

More important, even if the Court were to carve the Bank out of the Order to avoid a purported conflict of laws (which it should not), the Motion offers no explanation as to why

either of the other two consenting defendants should be excused. Nor does the Motion provide any basis to relieve from discovery any of the Cayman Island and Luxembourg-based Investcorp Defendants which actually received over $123 million in fraudulent conveyances at issue. None of those Defendants are alleged to be subject to Bahraini secrecy laws, and all should be required to produce.

Given the continuing prejudice to Old Ladder by further delays in identifying all proper defendants, the Court should order each of the Investcorp Defendants to produce the requested names and addresses by May 9, 2008 and assess a monetary sanction of $5,000 per day for each calendar day thereafter that production is not made.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    The Nature of This Case

On January 24, 2008, plaintiff Old Ladder Litigation Co. LLC ("Old Ladder") filed its Complaint naming 34 different Investcorp Defendants. As noted in previous correspondence with this Court (all of which is incorporated into the record on this Motion), Old Ladder seeks to recover (a) in excess of $330 million transferred by Old Werner to certain defendant shareholders, insiders and professionals in 1997 and (b) in excess of $150 million transferred by Old Werner to certain of those defendants in 2003, in both cases on the grounds that such transfers were fraudulent conveyances under state and federal law. Invoking section 550 of the Bankruptcy Code, the Complaint named numerous "Doe" defendants as defendants who had

---

[1] According to the Motion, the Investcorp Defendants have apparently already ascertained the identity of the Doe defendants. Thus, the actual production of their names and addresses should be a ministerial task which can easily be completed in the time requested.

received distributions from other Investcorp Defendants as "immediate or mediate transferees" or as entities "for whose benefit such transfer[s] [were] made."[2]

Old Ladder filed the Complaint on January 24, 2008 and immediately began service. On or about February 15, 2008, counsel for the Investcorp Defendants contacted Old Ladder, introduced themselves, and requested an extension of time to respond to the Complaint. Old Ladder agreed to the extension and immediately raised with counsel, in writing, the need for limited, expedited discovery of the identities and locations of the Doe Defendants. Counsel in turn informed Old Ladder, in writing, that it had passed the discovery request along to the Investcorp Defendants, but subsequently reported that they would not produce the requested information voluntarily. To be clear then, nine weeks before the April 21, 2008 hearing, the Investcorp Defendants had full knowledge of exactly what information Old Ladder was requesting and an ample opportunity to investigate and attempt to resolve any possible issues with production.

**2.    The Requests for Discovery of the Doe Defendants' Identities and Locations**

Because the Investcorp Defendants refused to produce names and addresses voluntarily, on February 27, 2008, Old Ladder filed a letter with the Court requesting expedited discovery from each of the Investcorp Defendants. In that letter, Old Ladder specifically identified what it sought – the "identities and locations of certain 'Doe defendants.'" The letter further explained that many of the entities which were the initial transferees of the 1997 and 2003 conveyances are

---

[2] Under Section 550 of the Bankruptcy Code, proceeds of fraudulent transfers may be recovered not only from initial transferees and entities for whose benefit the transfer was made but also from all "immediate or mediate transferee[s]":

> [e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

*See* 11 U.S.C. § 550; *In re Finley, Kuble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56 (2nd Cir. 1997); *In re Allou Distributors, Inc.*, 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007).

Investcorp – affiliated companies from the Cayman Islands and Luxembourg which do not publicly identify their interest holders.[3]

On February 28, 2008, Judge Berman referred the matter to this Court, which immediately set a status conference for March 20, 2008. During that conference, Old Ladder once again explained its discovery requests in open court. In response, counsel for the Investcorp Defendants commented that it would respond to the February 27 letter, and further represented that formal discovery requests would not be necessary. (Trans. at 13).

On April 1, 2008, the Investcorp Defendants submitted their opposition letter brief to the Court, objecting to the requested discovery solely on grounds that (i) expedited discovery was not warranted and (ii) the Court lacked personal jurisdiction over certain defendants. The Investcorp Defendants did not raise in the letter brief any argument that the requested information was protected from disclosure.

On April 17, 2008, immediately following a Rule 26(f) conference with all Defendants, Old Ladder submitted a letter to the Court responding to the April 1 letter and updating the Court on other discovery matters. Contrary to the Investcorp Defendants' present representations to the Court, Old Ladder did not raise a new "contention that the requested discovery is not confidential or privileged material." (Motion at 1). Rather, the reply simply highlighted the fact that, in opposing discovery, the Investcorp Defendants had not raised any objections based on confidentiality, privilege or burden.

At the April 21, 2008, hearing, Old Ladder once again stated its discovery request on the record explaining that it wanted "the names and addresses of each of the investors in each of the

---

[3] Old Ladder is informed and believes that the Bank and/or Investcorp S.A. had and have no economic interest in most of these entities but that they, or an affiliate, controlled the voting interests of such entities in Old Werner based on management services or similar agreements. The investors in such entities were not investing in Investcorp, but rather in the target entity – in this case, Old Werner.

Cayman and other Investcorp investment vehicles who received a distribution of funds in

connection with the 1997 transaction and the 2003 transaction as defined in the Complaint."

(Trans. at 13). The Investcorp Defendants' counsel understood exactly what was being

requested: "the names and addresses of any persons to whom funds received in the challenge[d]

transactions were subsequently transferred." (Trans. at 12). In seeking to resolve the dispute and

presumably avoid obtaining an adverse ruling on jurisdiction, counsel for the Investcorp

Defendants made a tactical choice. Rather than continue fighting the issue, counsel represented

on the record that Investcorp International, Inc., Investcorp, S.A. and the Bank "have the ability

to get those documents" (Trans. at 8), agreed that the Court had jurisdiction over these entities,

and conceded that the Court could order the requested production. In response, the Court ruled

that the discovery was warranted and properly ordered it. (Trans. at 13).

### 3.    The Investcorp Defendants' Refusal to Comply with the Order

On April 24, 2008, Old Ladder wrote to counsel for the Investcorp Defendants and

requested that, in accordance with the Order, the Investcorp Defendants produce the requested

information by April 30, 2008. Old Ladder received no response leading up to or on April 30,

2008. Instead, on May 1, 2008, the Investcorp Defendants filed their Motion seeking

reconsideration of the consented-to Order on the basis that Bahraini law allegedly prohibits the

Bank (referred to therein as "Investcorp") from disclosing certain information regarding its

customers.

**ARGUMENT**

**I.**

**THE MOTION CONCEDES THAT 33 OF THE INVESTCORP DEFENDANTS HAVE, WITHOUT JUSTIFICATION, REFUSED TO COMPLY WITH THE COURT'S ORDER**

As noted above, during the April 21, 2008 hearing, the Investcorp Defendants represented that the Bank, as well as Investcorp International, Inc., and Investcorp, S.A., have the ability to provide the requested discovery. (Trans. at 8).[4] Leaving aside specific issues with respect to the Bank which are addressed in section II, infra, the Motion provides no evidence, argument, or explanation as to why either Investcorp International, Inc., or Investcorp S.A. have failed to abide by this Court's Order and supply the requested information. Investcorp International, Inc. is a corporation organized in Delaware with its principal place of business in New York. Investcorp S.A. is a Luxembourg corporation with headquarters in New York. Neither of these defendants is alleged to be subject to Bahraini law, and there is no justification whatsoever as to why Bahraini law should excuse either from responding to lawful discovery in this action. Additionally, the Motion provides no evidence or argument why any Investcorp Defendants other than the Bank are constrained by Bahraini law. Importantly, none of the other Investcorp Defendants is alleged to be subject to Bahraini law – all are either Cayman or Luxembourg companies. (See Exhibit A hereto).

As a result, as to each of the Investcorp Defendants other than the Bank, the Court should confirm its Order and require each to produce the requested information by May 9, 2008. Because the Court has already concluded that discovery is warranted and should be expedited, it

---

[4] In representing that the Court has personal jurisdiction over these three Investcorp Defendants and that they could make the production, counsel deliberately sidestepped and delayed a legal determination that this Court has personal jurisdiction over all of the Investcorp Defendants. By now tying all of the Investcorp Defendants together in the Motion, any defenses of lack of personal jurisdiction have now been waived by the Investcorp Defendants, and all should be subject to the Order.

should assess a monetary sanction of $5,000 per calendar day for each day after May 9 that production is not made. In that regard, the Court has the discretion to sanction the defendants for failing to comply with the Court's Order, even if their refusal to produce is based upon perceived foreign law constraints. *See United States v. First National City Bank*, 396 F.2d 897, 900 (2d Cir. 1968) (holding the existence of a foreign bank secrecy statute did not justify the bank's failure to comply with the subpoena *duces tecum* and affirming sanctions of $2,000 fine per day and 60 days imprisonment for civil contempt); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 32 (S.D.N.Y. 1984) (noting that the court will consider imposition of the entire range of available sanctions under Rule 37 of the Federal Rules of Civil Procedure for failure to comply with its order); *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663 (2d Cir. 1983) (finding that the district court had discretion to hold the foreign defendant in contempt for failing to comply with a subpoena *duces tecum* and to impose sanctions of $50,000 per day to compel compliance).

## II.

## THE BANK HAS FAILED TO SHOW A VALID BASIS FOR RECONSIDERATION OF THE APRIL 21 ORDER AS APPLICABLE TO IT

As for the Bank and its new claim of confidentiality, reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Secs. Litg.*, 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000). It should only be used: (1) to correct clear error by the Court and not by parties or their counsel, as the Bank (which is the only Investcorp Defendant arguably subject to Bahraini law) seeks to do here; (2) to consider new evidence not available to the parties previously and not to allow parties to simply make late arguments that could have been made previously; and (3) to prevent manifest injustice and not to create it by allowing parties to delay and avoid providing

discovery essential to the prosecution of this case, as the Bank seeks to do here.  *See e.g.*

*Montanile v. National Broadcasting Co.*, 216 F.Supp.2d 341, 342 (S.D.N.Y. 2002); *Banco*

*Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649, 2007 WL

2493684, at *2 (S.D.N.Y. Sept. 5, 2007); *Ferguson v. Lion Holding, Inc.*, Nos. 02 Civ. 4258, 02

Civ. 4261, 2007 WL 2265579, at *6-7 (S.D.N.Y. Aug. 6, 2007).

The Motion does not satisfy any of these standards.

A.    **The Court Committed No Error in Ordering Production**

Under Local Rule 6.3, a motion for reconsideration may be granted if the moving party

can demonstrate that the Court overlooked controlling law or factual matters which the parties

put before the Court.  *Montanile v. National Broadcasting Co.*, 216 F.Supp.2d 341, 342

(S.D.N.Y. 2002) (emphasis added) (denying the motion for reconsideration because the court did

not overlook the issues the movant relied upon as grounds for reconsideration).  However, "the

moving party is precluded from advancing new facts, issues or arguments not previously

presented to the court." *Williams v. New York City Dep't of Corrections*, 219 F.R.D. 78, 83

(S.D.N.Y. 2003) (internal quotations omitted).

Here, the Bank does not contend the Court overlooked any controlling authority or made

any reversible error whatsoever in entering the Order on consent.  On the contrary, the Motion

concedes that the Court has authority to order disclosure: "[I]t is well settled that [a foreign

'blocking' statute] do[es] not deprive an American court of the power to order a party subject to

its jurisdiction to produce evidence even though the act of production may violate that statute."

*See* Motion, p. 5-6; *Societe Nationale Industrielle Aerospatiale v. United States District Court*,

482 U.S. 522, 544 (1987) ("Societe Nationale"); *see also Compagnie Francaise D'Assurance*

*Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 29 (S.D.N.Y. 1984) ("a

foreign law's prohibition on discovery is not a bar to issuance of a discovery order").

**B.**    **The Motion Does Not Present Any New Evidence That Was Not Previously Available to the Bank**

A motion for reconsideration may also be granted based on the availability of "new evidence." Relief on that ground, however, may only be had if: "(1) newly discovered evidence is of facts existing at the time of the [prior decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) newly discovered evidence is not merely cumulative . . . of evidence already offered." *Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649, 2007 WL 2493684, at *2 (S.D.N.Y. Sept. 5, 2007) (quoting *Fidelity Partners, Inc. v. First Trust Co. of New York*, 58 F.Supp.2d 55, 59 (S.D.N.Y. 1999) (citation omitted); *see also WTC Captive Ins. Co., Inc. v. Liberty Mutual Fire Ins. Co.*, 537 F.Supp.2d 619, 623-34 (S.D.N.Y. 2008) (denying motion for reconsideration despite the moving party's reference to a new case it claimed to be important precedent because "a motion for reconsideration is not the time to bring a supposedly important precedent to the court's attention"; motions for reconsideration "are not intended to save the parties from the consequences of their own research neglects"); *Koehler v. Bank of Bermuda Ltd.*, No., M18-302, 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (denying motion for reconsideration when party inadvertently omitted materials from original brief). "A party seeking to alter or amend a judgment on the basis of newly discovered evidence b ears an 'onerous' burden." *Banco Central Del Paraguay*, 2007 WL 2493684 at *2 (citing *United States v. Int'l Bd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).

Here, the Motion does not present any newly discovered "evidence." Rather, it presents an objection that the Bank's counsel apparently neglected to interpose in its responses to discovery requests, perhaps because counsel failed to communicate with the appropriate Bank

personnel.  The Bank, however, has not offered any reasonable excuse for its ignorance of

Bahraini laws, nor can it.[5]

**C.    The Order Is Not Manifestly Unjust as to the Bank – Indeed, Justice Requires
Production of the Information Subject to the Order**

The only other ground available for reconsideration is the Court's inherent power to

prevent a "manifest injustice."  *See Montanile v. National Broadcasting Co.*, 216 F.Supp.2d 341,

342 (S.D.N.Y. 2002).  In that regard, the Bank contends that, because the Order requires it to

violate Bahraini law in order to comply, the Court should vacate the Order on comity grounds.

An application of principles of international comity to this case, however, falls far short

of supporting vacatur of the Order as to the Bank.  The international comity analysis

promulgated by the Supreme Court in *Societe Nationale* identifies the following relevant factors

in assessing conflicting sovereign legislation regarding discovery requests: (1) the importance to

the litigation of the documents or other information requested; (2) the degree of specificity of the

request; (3) whether the information originated in the United States; (4) the availability of

alternative means of securing the information; and (5) the competing interests of the United

States and the other nation.  *Societe Nationale*, 482 U.S. at 544 n. 28 (1987).  The Second Circuit

considers two additional factors – hardship of compliance on the party from whom discovery is

sought and the good faith of the party resisting discovery.  *Reino De Espana v. American Bureau

of Shipping*, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005).  Each

factor is discussed below.

---

[5] For the same reason, the Bank has failed to establish the "good cause" necessary under FRCP 33(b)(4) to interpose a
late objection to an interrogatory.

1.    **Justice Requires Production by the Bank of the Identities of the Investcorp Defendants' Investors that Received over $123 Million from a United States Company**

When assessing a claimed conflict between foreign and U.S. disclosure laws, "[p]roduction is favored when the evidence sought from the producing party is directly probative to the issues of the case." *Reino De Espana v. American Bureau of Shipping*, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *7 (S.D.N.Y. Aug. 1, 2005). The Court only needs to consider the relevancy of the requested documents, and "does not need to find . . . that the requested documents are 'vital'" to the litigation. *Compagnie*, 105 F.R.D. at 32.

As this Court has already found requiring discovery, there is cause for early identification of the investors in offshore companies and partnerships which received over $123 million in distributions from Old Werner to the detriment of its creditors. Such investors are "immediate or mediate transferee[s]" or entities "for whose benefit such transfer[s] [were] made," potentially subject to liability for fraudulent transfer pursuant to 11 U.S.C. § 550. The requested information is plainly necessary to identify the appropriate defendants to this lawsuit and allow Old Ladder to recover funds that were fraudulently transferred to numerous offshore companies and their investors. Indeed, the identities of defendants that received transfers could not be more relevant and vital in a fraudulent transfer action.

2.    **The Bank Has Not Shown that Bahraini Law Prohibits Disclosure of the Information Sought**

As to the hardship factor, the Bank has failed to meet its burden of showing that Bahraini law prohibits disclosure of the requested information.

First, it is our understanding (to be supported by a foreign law affidavit if necessary) that Article 117 of the Central bank of Bahrain Law (Decree No. 64 of 2666) only restricts disclosure of "Confidential Information" by a "Licensee." A "Licensee" is defined as a Bahrain-based

financial institution licensed and regulated by the Central Bank of Bahrain. As noted in Section I, supra, Investcorp S.A. (a Luxembourg corporation), Investcorp International, Inc. (a Delaware corporation), and all of the Cayman Islands and Luxembourg investment entities do not fit the definition of "Licensees" under Bahraini law. Thus, to the extent that the Court enforces its Order as to these other Investcorp Defendants, nothing in the Bahraini law would subject the Bank to penalty.

Second, the Motion fails to establish that, to the extent the Bank is required to produce, the names and addresses of investors in the investment vehicles which owned interests in Old Werner would in fact constitute "Confidential Information" of the Bank under Bahraini law. It is our understanding (again to be supported by an affidavit if necessary) that Article 117 does not restrict the Bank from disclosing information regarding customers of entities other than the Bank. Again, the focus of the discovery here is not on direct customers of the Bank, but rather on the investors in the downstream investment entities who received distributions from Old Werner.

Finally, it bears noting that even if the Bank could potentially subject itself to penalty if it provided the requested information in accordance with the Order, this Court has made clear that the imposition of penalties alone "would not necessarily be sufficient to warrant nondisclosure." *Compagnie*, 105 F.R.D. at 30.

In light of the lack of demonstrated hardship, this factor weighs in favor of disclosure.

### 3.    The Lack of Alternative Means of Access to the Doe Defendants' Identities Supports Disclosure.

To the extent that the Investcorp Defendants other than the Bank refuse to produce or are unable to produce the requested information, Old Ladder will have no way of ascertaining the identities of the Doe defendants other than through the Bank. (Again, if the others can produce,

issues relating to the Bank are moot.) This "alternative means" element thus weighs in favor of disclosure.

### 4.    The Interest of the United States in Disclosure Outweighs Any Interest of Bahrain in Secrecy of Customer Identities

On the fourth factor, concerning balancing of sovereign interests, the interests of the United States in ordering discovery of the Doe defendants' names and addresses trumps Bahrain's alleged interest in secrecy and weighs in favor of upholding the Order. In the context of discovery disputes, the United States has two important interests. First, "the United States has a substantial interest in fully and fairly adjudicating matters before its courts," which is "only possible with complete discovery." *Compagnie*, 105 F.R.D. at 30. Second, the United States has a strong interest "in protecting its own nationals from unfair disadvantage." *Id.* This interest is statutorily articulated in the federal fraudulent transfer statutes on which Old Ladder's claims rest. *See Linde v. Arab Bank, PLC*, 463 F.Supp.2d 310, 315 (E.D.N.Y. 2006) (the United States has an important interest in enforcing its statutes, and without compliance with the discovery orders at issue, "the interests expressed in those statutes [would] be difficult if not impossible to vindicate").

With respect to the other side of the scale, the Motion fails to offer any support for the concept that Bahraini secrecy laws are to be held sacrosanct. The bare assertion that Bahrain has a "strong interest in its bank secrecy law" is plainly insufficient to vacate the Order. *See United States v. First National City Bank*, 396 F.2d 897, 903 (2d Cir. 1968) ("There is little merit, however, in [the foreign party's] suggestion that the mere existence of a bank secrecy doctrine requires us to accept on its face . . . that compliance with the subpoena would violate an important public policy of [the foreign nation]."). Further, the authorities cited by the Bank in the Motion actually support disclosure here. In *Reino De Espana v. American Bureau of Shipping*, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *4 (S.D.N.Y. Aug. 1, 2005), the court

found that the United States' interest in fully and fairly adjudicating matters before its courts trumped the foreign nation's public interest in maintaining secrecy in the investigative phase of criminal proceedings and ordered the foreign party to produce the documents at issue. Similarly, in *Linde v. Arab Bank, PLC*, the court held that bank secrecy laws did not excuse a Jordanian bank from being ordered to produce appropriately limited categories of documents and information. 463 F.Supp. 2d at 314-15.

Indeed, the allegation of Bahrain's "strong interest" in secrecy is substantially undermined by the fact that, under Bahraini law, customers can consent to disclosure of "Confidential Information." (*See* Motion at 2). As a matter of law, the strength of a foreign nation's interest in secrecy is materially undercut if the protections of the secrecy law at issue can be waived by the customer. *First National City Bank*, 396 F.2d at 903. In other words, the comity analysis is intended to protect sovereign, not private, interests. Thus, whether or not Investcorp's downstream customers would prefer to keep their names out of public filings is entirely irrelevant to the comity analysis.

Taking all the foregoing issues into consideration, the balancing factor supports disclosure.

### 5. The Specificity of the Requested Information and its Origination in the United States Weighs in Favor of Disclosure

Where disclosure is forbidden by foreign law, generalized searches of information are discouraged. *Reino Do Espana*, 2005 WL 1813017 at *9. Here, however, the request for information is narrowly tailored. Old Ladder simply seeks the names and addresses of those investors to whom funds from the Old Werner transactions were distributed so that Old Ladder can, if necessary, commence action against the proper defendants. Further, the information would be totally unnecessary except for the fact that the Investcorp Defendants and the Doe

defendant investors accepted fraudulent transfers amounting to over $123 million from a United

States company which utilized bank accounts in the United States.

This factor, too, supports disclosure.

### 6.    The Bank's Lack of Action Weighs in Favor of Disclosure

As to the final factor, the Investcorp Defendants repeatedly assert their "good faith" as a

justification for the Motion, and go so far as to argue that the "only reason" they are opposing the

discovery is to avoid violating Bahraini law. (Motion at 9). As an initial matter, this is clearly

wrong – all of the Investcorp Defendants opposed any discovery long before the Bahraini law

issue surfaced. Indeed, from the record to date, this Court could conclude that the Investcorp

Defendants have tactically engaged in a pattern of activity specifically designed to forestall

discovery of names and addresses until after relevant limitations periods have passed. There is

no "good faith" in that.

Further, the Motion's conclusory representation that the Bank is innocently precluded

from complying with the Order demonstrates the Investcorp Defendants' continued lack of good

faith in the discovery process. As noted, Investcorp S.A., Investcorp International, Inc. and the

rest of the Investcorp Defendants have all failed to provide discovery even though they are

clearly not governed by Bahraini law. More important, even if the Bahraini secrecy law applied

as to the Bank, the Bank could have complied with the Order by acquiring the consent of its

subsidiaries investors or petitioning the Central Bank authority. Tellingly, the Bank has

provided no evidence that it made any attempt to contact the investors and request such consent.

Nor has it provided any evidence that it has presented the Court's Order to the appropriate

Bahraini authority and requested approval to comply. If the Bank were acting in good faith, as it

contends, it clearly could have done something to facilitate disclosure. Indeed, good faith may

require a disclosing party to make reasonable efforts to obtain clearance from the relevant

foreign authorities to disclose. *See Linde*, 463 F.Supp.2d at 316.

## CONCLUSION

In the end, a motion for reconsideration "is not intended as a vehicle for a party

dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in

connection with the underlying motion, nor to secure a rehearing on the merits with regard to

issues already decided." *Montanile*, 216 F.Supp.2d at 342 (citing *Griffin Ind., Inc. v. Petrojam,*

*Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999); *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136,

144 (2d Cir. 1998) (a motion for reconsideration "is not a vehicle for relitigating old issues,

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

'second bite at the apple'"); *Articrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04

Civ. 10014 PKL, 2007 WL 404768, at *2 (S.D.N.Y. Feb. 5, 2007) (denying a trustee's motion

for reconsideration offering an affidavit purporting to fill the evidentiary gap in its previous

papers because a motion for reconsideration is a means for a court, not for a party or its counsel,

to correct its oversights in a prior proceeding).

Here, the Bank and the other 33 Investcorp Defendants may be dissatisfied with their

obligations to disclose the identities of the Doe defendants, but justice requires that disclosure.

The Court should not reconsider its Order and should require all Investcorp Defendants to

cooperate in the production of the requested names and addresses. The Court should further

order that each of the Investcorp Defendants produce the requested information by no later than

May 9, 2008, and should order sanctions of $5,000 per day for each calendar day thereafter that

production is withheld.

WHITE & CASE LLP

By: _____

J. Christopher Shore (JS–6031)
1155 Avenue of the Americas
New York, New York  10036
(212) 819-8200


*Attorneys for Plaintiff OLD LADDER*
*LITIGATION CO., LLC*

Dated: _____5/7/08_____
             New York, New York

## EXHIBIT A

| | Non-Bahraini Investcorp Defendants | Amount of Fraudulent Transfer Received |
|---|---|---|
| 1. | Investcorp International, Inc., a Delaware corporation. | Over $15,000,000 |
| 2. | Step Investments Limited, a Cayman Islands company. | $12,237,502 |
| 3. | WL Holdings Limited, a Cayman Islands company. | $11,119,359 |
| 4. | Equity WERA Limited, a Cayman Islands company. | $10,392,911 |
| 5. | Werner Equity Limited, a Cayman Islands company. | $8,883,064 |
| 6. | Climbing Products Limited, a Cayman Islands company. | $8,883,064 |
| 7. | Ladder Equity Limited, a Cayman Islands company. | $8,883,064 |
| 8. | Werner Investments Limited, a Cayman Islands company. | $8,883,064 |
| 9. | Invifin, S.A., a Luxembourg corporation. | $6,000,000 |
| 10. | Stepup Limited, a Cayman Islands company. | $5,137,510 |
| 11. | Werner IIP Limited, a Cayman Islands company. | $5,528,617 |
| 12. | Investcorp Werner Holdings L.P., a Cayman Islands company. | $5,137,510 |
| 13. | Annisville Limited, a Cayman Islands company. | $3,294,800 |
| 14. | Cooperstown Limited, a Cayman Islands company. | $3,294,800 |
| 15. | Frisco Limited, a Cayman Islands company. | $3,294,800 |
| 16. | Platea Limited, a Cayman Islands company. | $3,294,800 |
| 17. | Ballet Limited, a Cayman Islands company. | $179,890 |
| 18. | Denary Limited, a Cayman Islands company. | $179,890 |
| 19. | Gleam Limited, a Cayman Islands company. | $179,890 |
| 20. | Highlands Limited, a Cayman Islands company. | $179,890 |
| 21. | Noble Limited, a Cayman Islands company. | $179,890 |

| 22. | Outrigger Limited, a Cayman Islands company. | $179,890 |
|-----|-----------------------------------------------|----------|
| 23. | Quill Limited, a Cayman Islands company. | $179,890 |
| 24. | Radial Limited, a Cayman Islands company. | $179,890 |
| 25. | Shoreline Limited, a Cayman Islands company. | $179,890 |
| 26. | Zinnia Limited, a Cayman Islands company. | $179,890 |
| 27. | Investcorp Investment Equity Limited, a Cayman Islands company. | $156,426 |
| 28. | CIP Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 29. | SIPCO Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 30. | Ownership Holdings Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 31. | C.P. Holdings Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 32. | Investcorp Holdings Limited, a Cayman Islands company. | Unknown amounts in affiliated transfers |
| 33. | Investcorp S.A., a Luxembourg corporation. | Unknown amounts in affiliated transfers |
| **Total Received by Non-Bahraini Investcorp Defendants** | | **$121,220,191** |

| **Bahraini Investcorp Defendants** | | **Amount of Fraudulent Transfer Received** |
|-----|-----------------------------------------------|----------|
| 34. | Investcorp Bank B.S.C. | $2,402,810 |
| **Total Received by Bahraini Investcorp Defendants** | | **$2,402,810** |
| | | |
| **TOTAL RECEIVED BY ALL INVESTCORP DEFENDANTS:** | | **$123,623,001** |

# Exhibit 8

(Investcorp defendants' Reply in Support of
Motion for Reconsideration, dated May 8, 2008)

William P. Frank (William.Frank@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

       and

Anthony W. Clark (Anthony.Clark@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Investcorp Entity Defendants
and Investcorp Director Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

OLD LADDER LITIGATION CO., LLC, as Litigation : 
Designee on behalf of the Liquidation Trust, :

                Plaintiff, :

       vs. :

INVESTCORP BANK B.S.C., et al., :

             Defendants. :

------------------------------------------------x

08 cv 0876 (RMB)(THK)

**<u>ELECTRONICALLY FILED</u>**

**INVESTCORP DEFENDANTS' REPLY IN SUPPORT
OF MOTION FOR RECONSIDERATION**

The Investcorp defendants respectfully submit this reply in support of their

motion for reconsideration of the Court's ruling at the April 21, 2008 conference.

## PRELIMINARY STATEMENT

In responding to the reconsideration motion, plaintiff seeks to recast the

dispute from one concerning whether the investor discovery it wants to take should be

authorized into one for sanctions for Investcorp's alleged failure to comply with an order

compelling discovery under Fed. R. Civ. P. 37.  Plaintiff badly misperceives the state of

the record, which shows the following:

- At the April 21 conference, there were two matters before the Court – (1) whether plaintiff may take discovery on personal jurisdiction issues, and (2) whether plaintiff should be authorized to seek discovery of the names and addresses of Investcorp's investors.

- On the first question, there was no dispute.  Through counsel, Investcorp agreed to provide personal jurisdiction discovery.  (Trans. at 3-4)[1]  That is the only thing to which Investcorp consented.

- On the second question, after hearing opposing arguments on the issue, the Court stated, "I'm going to authorize the discovery regarding identities and addresses of these investors."  (Trans. at 13)  Contrary to plaintiff's assertions, Investcorp never consented to this relief.

- To this day, plaintiff has not served any of the discovery that has been authorized, either on personal jurisdiction issues or for the investor names and addresses.  All its counsel did was send an informal letter to Investcorp's counsel demanding the investor information.

- Investcorp has never waived its right to object to particular discovery requests, if, as and when made.  To the contrary, Investcorp expressly reserved its right to object to any such discovery, as it is entitled to do

---

[1] Citation forms and defined terms from defendants' May 1, 2008 Memorandum Of Law In Support Of Investcorp Defendants' Motion For Reconsideration are also used herein.

under Fed. R. Civ. P. 33(b)(3), including specifically on the bank secrecy law issue now before the Court.[2]

- Thus, since plaintiff elected not to propound discovery requests under the applicable discovery rules, there have been no motions to compel discovery and no Court orders compelling discovery, nor could there be.

So, contrary to plaintiff's contention, the reconsideration motion does not "present[] an objection that [Investcorp's] counsel apparently neglected to interpose in its responses to discovery requests" (plaintiff's Opposition at 9), because there have been no such discovery requests. There is no legal or factual basis on which any sanctions, like those plaintiff requests, could be ordered.

Thus, the balancing equation before the Court remains the same. On the one hand, plaintiff demands the confidential identities of yet another 290 parties to add as defendants to this litigation on dubious fraudulent transfer claims that are not likely to survive the motions to dismiss being presented to Judge Berman, on the off chance that the 220 defendants already named in the litigation will turn out to be judgment proof. On the other hand, unless the Court reconsiders its April 21 Order and denies the discovery sought by plaintiff or conditions it on plaintiff obtaining relief from the Bahrain courts authorizing disclosure of the investor information, Investcorp will be forced to violate Bahrain law and risk civil and criminal penalties, including possible revocation of its banking license, to comply with the Order.

---

2    *See* Trans. at 4 ("So whenever the plaintiff serves that [personal jurisdiction discovery] on us, we'll take a look at it and we'll respond to what we think is appropriate and object to what we think is not"), and 11 ("I'm not aware of whether there are any secrecy laws.... So I'll reserve on that.... [U]ntil they serve [investor] discovery and we see exactly what it is they're asking for, and I'm able to show that to the business people who know about this, I really have to just reserve on any issues related to confidentiality").

2

## ARGUMENT

**Bahrain Law Precludes Disclosure By
Investcorp Bank B.S.C. Or Its Subsidiaries And Affiliates.**

Plaintiff argues (Opposition at 6) that only Investcorp Bank B.S.C., and not its subsidiaries, is subject to Bahrain law, so Investcorp International, Inc. and Investcorp S.A. are free to turn over the investor information. That is not true.

Investcorp respectfully requests leave to file with the Court the declaration of Bahrainian counsel to explain the controlling law, who specifically has advised that (1) the names and addresses of the investors sought by plaintiff are "Confidential Information" under Bahrain law, and (2) Article 117 of the Central Bank of Bahrain and Financial Institutions Law (Decree Law No. 64/2006) prohibits Investcorp Bank B.S.C. and its affiliated entities from disclosing this information. If, as plaintiff suggests (Opposition at 11-12), it has obtained an affidavit from a competent Bahrain law expert specifically refuting these two facts, which we very much doubt, it too should be filed, and so the Court can consider both and determine who is right. The grave risk of harm to Investcorp if its expert is correct and it is forced to violate Bahrain secrecy law outweighs plaintiff's desire to find hundreds more defendants against whom to file its tenuous claims, and warrants having a full factual record for the Court to decide the issues.

**The Investcorp Defendants Have Not Generally Waived Any Personal Jurisdiction
Defenses Over Foreign Entities.**

Plaintiff inexplicably asserts that all of the Investcorp entity defendants have waived the defense of lack of personal jurisdiction (Opposition at 6 n.4), despite the

fact that Investcorp has asserted the defense at every possible opportunity, and briefing on this issue, among others, is proceeding before the District Court.

To make the record clear, while there is no dispute as to personal jurisdiction over Investcorp Bank B.S.C., Investcorp International, Inc. or Investcorp S.A. (*see* Trans. at 4-5, 7), the issue of personal jurisdiction over the more than two dozen other foreign Investcorp entities named as defendants has not been conceded, and the defense has not been waived.

**The Confidentiality And Secrecy Law Issue Has Been Timely Raised.**

One other bit of plaintiff's hyperbole warrants a specific response – that the Investcorp defendants "have actively concealed the issue [concerning Bahrain secrecy laws] in order to delay production as long as possible." (Opposition at 1; *see also id.* at 15) Nothing could be further from the truth.

As we stated when the Court raised the matter at the April 21 conference, as of that time the question of whether any secrecy laws apply had not been considered. (Trans. at 11) Since discovery of the investor information had not yet been authorized, and no discovery requests for the information had been served, there was no reason to look into the question before the Court suggested it. Promptly after the conference, Investcorp made appropriate inquiry of a Bahrain law expert, got the answer and timely raised it in the reconsideration motion in accordance with the Court's rules. To suggest, as plaintiff does, that Investcorp and its counsel made misrepresentations to the Court in order to gain tactical advantage is unsupportable.

4

For whatever reason, plaintiff has chosen to approach the issue of investor discovery not in the manner provided by the discovery rules – which, had they been followed, would have assured a clear record of the requests and objections thereto – but by a letter to the Court seeking authorization to propound such discovery and then, when the authorization was granted, by an informal letter to Investcorp's counsel. For its part, Investcorp has acted in good faith and brought the matter to the Court for determination as promptly as could be reasonably expected under the circumstances.

## CONCLUSION

For all of the foregoing reasons, and those stated in their May 1 supporting memorandum of law, the Investcorp defendants respectfully request that the Court reconsider its April 21 Order and deny the discovery sought by plaintiff or, alternatively, condition such discovery on plaintiff obtaining relief from the Bahrain courts authorizing disclosure of the investor information by Investcorp.

Dated: New York, New York
       May 8, 2008

William P. Frank (William.Frank@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

and

_____
Anthony W. Clark (Anthony.Clark@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Investcorp Entity Defendants
and Investcorp Director Defendants

# Exhibit 9

(Plaintiff's Sur-Reply in Opposition to
Motion for Reconsideration, dated May 9, 2008)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore (JCS-6031)

633 West Fifth Street, Suite 1900
Los Angeles, California 90071-2007
(213) 620-7700
Craig H. Averch (Admitted *Pro Hac Vice*)

Attorneys for Plaintiff OLD LADDER LITIGATION CO., LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust, | Case No.  08 CIV 0876 (RMB)(THK) |
| Plaintiff, | **PLAINTIFF'S SUR-REPLY IN OPPOSITION TO INVESTCORP DEFENDANTS' MOTION FOR RECONSIDERATION** |
| v. | |
| INVESTCORP BANK B.S.C., *et al.*, | |
| Defendants. | |

Old Ladder files this limited sur-reply to address a discrete legal contention raised in the Investcorp Defendants' reply brief, dated May 8, 2008 (the "Reply") that was not presented in the Motion.[1]  Specifically, at page 3 of the Reply, counsel for the Investcorp Defendants contend that Article 117 not only subjects the Bank (a Bahraini "Licensee") to a potential penalty for producing information regarding its customers, the law subjects <u>all other Investcorp Defendants</u> to Bahraini penalties for disclosing information about their customers and investors, regardless of where those Defendants are located, in what jurisdiction they are chartered, what law governs their operations, or what ties they have to the Bank.[2]

The procedural games have to stop.  We trust that, in reviewing the record, the Court will be asking many of the same questions that we have regarding the Investcorp Defendants' claimed procedural expectations – Did they anticipate that, after two court hearings on the issue of discovery of names and addresses, there was going to be a <u>third</u> to address any other impediments to disclosure that might arise?  If there is an absolute bar to production under foreign law, why did they ever need to raise arguments with respect to timing, scope or jurisdiction?  What was the point of counsel agreeing on the record at the first hearing that the letters to the Court would serve as formal discovery, if they were going to contend in the Reply that "there have been no discovery requests?"  If counsel was actually expecting "formal" written requests and a subsequent opportunity to present their claimed secrecy objections, why are we now having a motion to reconsider an order that, in their view, only permitted (not ordered) discovery?  When counsel stated at the second hearing that three of the Investcorp Defendants have "control" over the information but "it would be entirely conceivable" that a protective order

---

[1] Capitalized terms not otherwise defined herein are defined in Old Ladder's Memorandum of Law in Opposition to Investcorp Defendants' Motion for Reconsideration Filed on May 7, 2008.

[2] In that regard, the Bank has not shown that it has any direct ownership interest in, or even operational control over, any of the Investcorp entities whose investors are the subject of the outstanding discovery.

might need to be entered, did they expect to reserve on the issue as to whether the information would ever have to be produced at all?

The Investcorp Defendants' latest procedural chicanery goes far too far.  In the Motion, counsel was somewhat lax in their use of defined terms for their clients, alternating between referring to the group collectively as "Investcorp" or the "Investcorp defendants."  But, when it came to discussing Article 117, counsel was quite specific: "a violation of the prohibition on disclosing this information under Article 117 may result in imprisonment and a fine of 10,000 Bahrain Dinars (more than $25,000), and could subject <u>Investcorp Bank B.S.C.</u> to suspension or revocation of its banking license."  (Motion at 2) (emphasis added).  That threat of penalty exists, the Motion contends, because the Bank is a "Licensee" under Article 117.  Nowhere in the Motion did counsel contend that any other Investcorp Defendant is a "Licensee" under Article 117 (which they clearly are not) or that any is subject to penalties under that law if they produce names and addresses in accordance with a valid United States court order in a United States litigation.  Thus, as we argued in opposition, the Court should simply order production from the non-Bahraini Investcorp Defendants and make clear that such order was over the strenuous objection of the Bank.

Now, the Investcorp Defendants seek to counter by contending, <u>for the first time</u>, that they too would violate Bahraini law if they produced information regarding their operations. Clearly, one might question the concept that a Bahraini law governing Bahraini banks could restrict a United States court from exercising discovery authority over companies organized and operating in the United States, the Cayman Islands, and Luxembourg.  That concept would, for example, come as a stark surprise to entities such as Tiffany, Gucci and Circle K convenience stores, each of which is owned in part by "Investcorp."  <u>See</u>

http://www.investcorp.com/Template1a.aspx?pageid=OB2.0.  The Court need not, however, oversee a battle of the experts on that point.[3]

It is blackletter law that a party may not raise new factual or legal matters in a reply brief  *See, e.g., Estate of Morris v. Dapolito*, 297 F.Supp.2d 680, 689 n.7 (S.D.N.Y. 2004) ("We do not reach these contentions because it is well settled that arguments may not be raised for the first time in a reply brief as that tactic denies the plaintiff the opportunity to respond").  Here, an application of that rule is particularly critical given that the process of contacting and seeking advice from Bahraini legal counsel is significantly complicated by language and time barriers.  Simply, had the Investcorp Defendants raised the new argument in its Motion, Old Ladder would have had time to counter the argument.  Under present circumstances, it does not, and the new argument in the Reply should be stricken.

WHITE & CASE LLP


By: _J. Christopher Shore JMG_
J. Christopher Shore (JS–6031)
1155 Avenue of the Americas
New York, New York  10036
(212) 819-8200


*Attorneys for Plaintiff OLD LADDER
LITIGATION CO., LLC*


Dated: _May 9, 2008_____
New York, New York

---

[3] We note that, in arguing for such a battle, the Reply presupposes that the Court will grant reargument.  However, although they vehemently deny intentionally springing the issue, the Investcorp Defendants never explain in a satisfactory fashion why the present issues relating to Article 117 were not raised weeks ago.  To the extent, however, that the Court grants reargument, Old Ladder reserves the right to address the new Reply argument in any foreign law affidavit which may need to be filed.

# Exhibit 10
(Investcorp defendants' May 12, 2008 letter)

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P.O. BOX 636

WILMINGTON, DELAWARE 19899-0636

TEL: (302) 651-3000

FAX: (302) 651-3001

www.skadden.com

DIRECT DIAL
(302) 651-3080
DIRECT FAX
(888) 329-3081
EMAIL ADDRESS
ANTHONY.CLARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 12, 2008

**BY HAND DELIVERY**

The Honorable Theodore H. Katz
United States Magistrate Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007-1312

RE:    Old Ladder Litigation Co., LLC v. Investcorp Bank
       B.S.C., et al., Case No. 08 CV 0876 (RMB) (THK)

Dear Magistrate Judge Katz:

I write in response to the "Sur-Reply" plaintiff filed on Friday in opposition to Investcorp's motion for reconsideration. Such a pleading is not authorized under the Court's rules and, therefore, should be stricken.

However, plaintiff's unauthorized filing does show a basic misunderstanding of Bahrain law and, thus, highlights the need for evidence from Bahrain law experts, as we have asked for leave to file. The point we made in Investcorp's reply – and properly so, as it simply responded to plaintiff's opposition argument that since the non-Bahrain affiliates are not subject to the constraints of Bahrain law, the Court could simply order them to produce the Confidential Information protected by Bahrain's bank secrecy laws – was that if Investcorp Bank B.S.C.'s affiliates were to disclose the protected information, Investcorp Bank B.S.C. itself, not the non-Bahrain affiliates, would be subject to sanctions under Bahrain law. Evidence from the parties' Bahrain law experts will only help to inform the Court on this important issue.

The Honorable Theodore H. Katz
May 12, 2008
Page 2

We are available at the convenience of the Court.

Respectfully,

*Anthony W. Clark /E.O.*

Anthony W. Clark

cc:     J. Christopher Shore, Esq.
        William P. Frank, Esq.
        Counsel on the attached distribution list

# Exhibit 11

(Declaration of Hatim S. Zu'bi in Support of
Motion for Reconsideration, dated May 17, 2008)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OLD LADDER LITIGATION CO., LLC, as
Litigation Designee on behalf of the                    :
Liquidation Trust,

                                                        :
                        Plaintiff,                              08 cv 0876 (RMB)
            vs.                                         :

INVESTCORP BANK B.S.C. et al.,                          :

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF HATIM S. ZU'BI
### IN SUPPORT OF MOTION FOR RECONSIDERATION

HATIM S. ZU'BI declares as follows:

1. I am the senior partner in the law firm of Hatim S. Zu'bi & Partners in
Manama, Bahrain and I submit this declaration in support of the motion of the Investcorp
defendants for reconsideration of the Court's bench ruling on April 21, 2008, authorizing
discovery by plaintiff of the names and addresses of certain Investcorp investors to whom
some of the funds received in the 1997 and 2003 Werner transactions by the Investcorp
affiliated entities named as defendants in this action were subsequently distributed. I am
licensed and have been admitted to practice law in Bahrain as an Advocate since 1971,
and as a Legal Consultant since 1983. A brief summary of my experience and credentials,
as published by Martindale-Hubbell, is attached as Exhibit A hereto.

2. The ultimate parent company of most of the Investcorp entities named
as defendants in this action is Investcorp Bank B.S.C., which has Bahrain nationality and
is domiciled and registered in Bahrain as a wholesale bank ("Licensee") under the
regulatory oversight of the Regulator the Central Bank of Bahrain.

3. Under Bahrain law, bank secrecy and confidentiality are subject to the CBB Law and the Bahrain Penal Code.

4. Article 116 of the Central Bank of Bahrain and Financial Institutions Law No. 64/2006 (the "CBB Law") states that "In this chapter, "Confidential Information" means any information on the private affairs of any of the Licensee's customers".

5. Article 117 of the Central Bank of Bahrain and Financial Institutions Law (Decree Law No. 64/2006) states as follows:

> Confidential Information must not be disclosed by a Licensee unless such disclosure is done:
>
> 1.    Pursuant to an unequivocal approval of the person to whom the confidential information relates.
>
> 2.    In compliance with the provisions of the law of any international agreements to which the Kingdom is a signatory.
>
> 3.    In the process of executing an order issued by a Competent Court.
>
> 4.    For the purpose of implementing an instruction given by the Central Bank.

6. Investcorp Bank B.S.C. is a "Licensee" that is subject to the CBB Law. Information concerning the names and addresses of the investors in Investcorp Bank B.S.C.'s affiliated entities is "Confidential Information" within the meaning of this law. While disclosure pursuant to an order issued by a "Competent Court" is permitted, that refers to an order of the Bahrain courts and any other court which has reciprocal enforcement with Bahrain's courts, and there is no such reciprocity between any United States courts and the Bahrain courts. Therefore, unless the investors agree to disclosure of this information or the plaintiff obtains an order for such disclosure from the Bahrain



2

courts, Article 117 prohibits Investcorp Bank B.S.C. and its affiliated entities from disclosing investor names and addresses.

7. Article 171 of the CBB Law provides that a violation of the prohibition on disclosing Confidential Information under Article 117 may result in imprisonment and a fine of 10,000 Bahrain Dinars (more than $25,000) and pursuant to Article 48 (c) 2 could subject Investcorp Bank B.S.C. to suspension or revocation of its banking license.

8. Moreover, disclosure of this information other than in accordance with Article 117 could be a criminal offence under Article 371 of the Bahrain Penal Code (Decree Law No. 15/1976) which states as follows:

> It is a criminal offence if anyone, who as a result of their trade, profession or art becomes recipient of a secret and discloses that secret in cases other than those authorised by law unless the person to whom the secret refers gives authority.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Manama, Bahrain on 17 May, 2008.

_____
Hatim S. Zu'bi

3

# EXHIBIT A



 **LexisNexis®**

Print    Close Window

## Hatim Sharif Zu'bi, Hon. G.B.E.

**Hatim Sharif Zu'bi, Hon. G.B.E.**
*Senior Partner*

Hatim S Zu'bi & Partners
Bab El Bahrain Building, Suite No. 1, First Floor, 150 Government Road, P.O. Box 502
Manama, Bahrain  315

Telephone: +973 17225151
Fax: +973 17224744
http://www.hatimzubilaw.com

Email: Contact via email

### Experience & Credentials

| | |
|---|---|
| **Practice Areas** | Banking; Corporate; Commercial; Construction; International Arbitration; Maritime; Labour; Litigation |
| **Education** | University College, London University (LL.B., Hons., 1949); Kings College, London School of Economics and Political Science; Lincoln's Inn, London |
| **Admitted** | 1950, England as Barrister at Law, Lincoln's Inn; 1954, Jordan as Advocate; 1971, Abu Dhabi (UAE) and Bahrain as Advocate; 1971, Qatar as Advocate, 1974, Dubai and Sharjah (UAE) and Sultanate of Oman as Advocate; 1979, Saudi Arabia as Legal Consultant; 1983, Bahrain as Legal Consultant, licensed to practice in Association with Advocate Hamid Al Mahmood (Al Mahmood & Zu'bi) |
| **Memberships** | English Bar; Jordan Bar; International Bar Association (Regional Chairman for the Middle East Region, International Litigation Committee, Banking Law and International Litigation); ICC Jordan National Committee (Member, ICC Court of International Commercial Arbitration); Arab Society for Protection of Industrial Property. |
| **Languages** | English, Arabic |
| **Biography** | Advocate and Legal Advisor to Ministry of Finance, Jeddah and Dammam, Saudi Arabia, 1951-1954. Deputy General Manager and Director, Cairo Amman Bank, Jordan, 1955-1965. Minister of National Economy of Jordan, 1965-1969. Governor for Jordan at the International Bank for Reconstruction and Development, Washington, D.C., 1965-1969. Fellow: Chartered Institute of Arbitrators, England (F.Ch.I. Arb.). Member, Panel of Arbitrators, Gulf Cooperation Council Arbitration Center, Bahrain. Editorial Advisory Board, Int. Construction Law Review, London. |
| **ISLN** | 902506945 |

Print    Close Window

*Source: Martindale-Hubbell*

# Exhibit 12

(Declaration of Qays H. Zu'bi in Opposition to
Motion for Reconsideration, dated May 19, 2008)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore (JCS-6031)

633 West Fifth Street, Suite 1900
Los Angeles, California 90071-2007
(213) 620-7700
Craig H. Averch (Admitted *Pro Hac Vice*)

Attorneys for Plaintiff OLD LADDER LITIGATION CO., LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust,<br><br>       Plaintiff,<br><br>    v.<br><br>INVESTCORP BANK B.S.C., *et al.*,<br><br>       Defendants. | Case No. 08 CIV 0876 (RMB)(THK)<br><br>**DECLARATION OF QAYS HATIM ZU'BI IN OPPOSITION TO INVESTCORP DEFENDANTS' MOTION FOR RECONSIDERATION** |



Al Josrah Tower, 12th Floor, Building No. 95, Road 1702, Area 317, Diplomatic Area, P.O. Box 2397, Manama, Kingdom of Bahrain
Telephone: (973) 17538600, Facsimile: (973) 17532342, www.qayszubilaw.com

I, **QAYS HATIM ZU'BI**, hereby declare, pursuant to Article 28 U.S.C. § 1746:

1.      I am the Founder and Managing Partner of Qays H. Zu'bi Attorneys and Legal Consultants (the "Firm"). I have personal knowledge of the matters discussed herein. I submit this declaration in support of the opposition filed by plaintiff Old Ladder Litigation Co. LLC ("Old Ladder") to the Investcorp Defendants' motion for reconsideration in the above captioned action. I note from the documents provided that the action alleges hundreds of millions of dollars in fraudulent conveyances made by Werner Co. and its affiliates (collectively, "Old Werner").

2.      I graduated from Duke University with a degree in economics and political science and subsequently received a law degree from the University of Cambridge.  I have been practicing law in Bahrain since 1981, when I joined the law offices of Al Mahmood & Zu'bi.
In 2001, I started the Firm, which has grown to employ 13 lawyers and legal professionals.  The Firm has been consistently listed in the top tier of law firms in the region by leading legal directories and periodicals. It has been described by *Chambers, UK* (2005) as "one of the few local firms in Bahrain with international capability."

3.      In my almost thirty years of practicing law in Bahrain, I have advised clients in litigation matters for major financial institutions, multinational corporations and private clients. I have handled counseling in Bahrain on a wide range of local and international legal matters.  I have also made significant contributions to the Bahraini legal community. I am Honorary Consul of Canada in Bahrain. I am Vice President Legal of the American Chamber of Commerce in Bahrain. I am Director of Junior Achievement International (Injaz). I am a Member of the Bahrain Bar Society. I am a Founding Member and Chairman of the Oxford & Cambridge Society, Bahrain.

Bahrain Investors Center; West Hall Unit 391, Building 2102, Road 2825, Block 428
Telephone: +973 17 562 269/9  Facsimile: +973 17 587 030

Qays H. Zu'bi
Attorneys & Legal Consultants

4.  I make this declaration based on my understanding, of the following relationships among the "Investcorp Defendants" based, in part, on the Investcorp group's 2007 annual report. I have assumed for the purposes of this declaration that the relationships stated in this paragraph 4 are accurate and correct, although I have not verified this:

(a)  Defendant SIPCO Limited is a Cayman Islands company that owns and controls a majority of the shares of defendant Ownership Holdings Limited, a Cayman Islands company. Ownership Holdings Limited, directly and through defendant C.P. Holdings Limited, a Cayman Islands company, controls a majority of the shares of defendant Investcorp Bank B.S.C ("Investcorp Bank").

(b)  Investcorp Bank is a company organized under the laws of Bahrain as a Bahraini Shareholding Public Company. Investcorp Bank is a 100% owner of defendant Investcorp Holdings Limited, a Cayman Islands company.

(c)  Investcorp Holdings Limited is a 100% owner of defendant Investcorp S.A., a Luxembourg corporation.

(d)  Investcorp S.A is the 100% owner of: (1) defendant Investcorp International, Inc., a Delaware corporation; (2) defendant Investcorp Investment Equity Limited, a Cayman Islands company; and (3) defendant Invifin, S.A., a Luxembourg corporation.

( e)  The rest of the Investcorp Defendants - Ballet Limited, Denary Limited, Gleam Limited, Highlands Limited, Noble Limited, Outrigger Limited, Quill Limited, Radial Limited, Shoreline Limited, Zinnia Limited, Annisville Limited, Cooperstown Limited, Frisco Limited, Platea Limited, Stepup Limited, Step Investments Limited, Equity WERA Limited, Werner Equity Limited, Climbing Products Limited, Ladder Equity Limited, Werner Investments Limited, Werner UP Limited, WL Holdings Limited, Investcorp Werner Holdings L.P., and CIP Limited - are all Cayman Islands companies. They do not appear to be

Qays H. Zu'bi
Attorneys & Legal Consultants

identified as subsidiaries or affiliates of the Investcorp Bank in the Investcorp group's 2007 annual report. As to many of these entities, I understand that public filings state that "Investcorp owns no stock" in them "or the beneficial owners of these entities" and it is assumed that the entities enter into revocable management services or similar agreements with affiliates of Investcorp S.A. that allows Investcorp S.A. (or an affiliate) to vote their shares in target companies.

5.    Attached as Exhibit 1 hereto is an organization chart printed from Investcorp's annual report for 2007 reflecting many of the above relationships. The chart does not identify the defendants discussed in paragraph 4( e) as being subsidiaries or affiliates of Investcorp Bank or Investcorp S.A.

6.    I understand that Old Ladder seeks discovery regarding the names and addresses of Doe defendants sued in the lawsuit, which I am advised, include partners, shareholders and/or investors in the named defendant entities that held stock in Old Werner and transfers originating from Old Werner that may be avoidable under the laws of the United States. I have been advised that the focus of the discovery is largely on persons who received distributions from the entities set forth in paragraph 4(e) above.

7.    The Central Bank of Bahrain ("CBB") was created under the Central Bank of Bahrain and Financial Institutions Law ("CBB Law"), which was enacted on September 6, 2006. The CBB is responsible for maintaining monetary and financial stability in Bahrain. As stated on the CBB's website, it provides a regulatory framework for financial services firms operating in Bahrain (see:
    http://www.cbb.gov.bh/cmsrule/index.isp?action=article&ID=l).        In    certain
    circumstances, the CBB Law voids transactions by Licensees that harm creditors. Article 158 of the CBB Law is applicable to licensees that are in liquidation or administration as defined by the laws of Bahrain and provides:

Qays H. Zu'bi

ARTICLE (158) VOID TRANSACTIONS

*(a) The Licensee under liquidation is prohibited from undertaking any of the following actions during the "Prohibition Period" stated in paragraph (b) of this Article: 1. Concluding any transaction at anundervalue with any person. 2. Entering into a transaction for the purpose of defrauding any of its creditors. 3. Giving preference to any person.*

*(b) The expression "Prohibition Period" referred to in the preceding paragraph shall denote the following: i. A term of two years prior to the date in which the Licensee was placed under administration or the date in which the liquidation ruling was issued, if the date of the ruling does not precede the date of placing the Licensee under administration. This term applies to any transaction concluded, or priority given to any person who has relation with the Licensee, in violation of the provision of the above Article. ii. Six months prior to the date of placing the Licensee under administration or the date of issuing the liquidation ruling if the Licensee was not placed under administration. This term applies to any transaction concluded, or priority given to any person who has no relation with the Licensee, in violation of the provision of paragraph (a) of this Article.*

8.     The CBB Law identifies "Confidential Information" of "Licensees" regulated by the CBB, which governs the protection of Confidential Information, and provides penalties through its enforcement powers for bad faith disclosures.

9.     Article 116 of the CBB Law provides that "Confidential Information" means "any information on the private affairs of any of the Licensee's customers." Article 1 of the CBB Law defines a "Licensee" as a person licensed by the CBB to provide "Regulated Services," which are "financial services provided by the financial institutions, including those governed by Islamic Sharia principles."

10.    In relation to Investcorp Bank, Article 117 of the CBB Law states that:

       *"Confidential Information must not be disclosed by a Licensee unless such disclosure is done:*

Qays H. Zu'bi
Attorneys & Legal Consultants

1.    *Pursuant to an unequivocal approval of the person to whom the confidential information relates.*

2.    *In compliance with the provisions of the law or any international agreements to which the Kingdom is a signatory.*

3.    *In the process of executing an order issued by a Competent Court.*

4.    *For the purpose of implementing an instruction given by the Central Bank."*

Therefore, even though the CBB Law restricts the disclosure of Confidential Information there are exceptions to the prohibition of its disclosure by licensees. In my opinion, if Investcorp Bank had contacted the CBB earlier about the problems it faced with disclosing Confidential Information, it would have been open to the CBB to have given their approval and instruction by now for the release of any Confidential Information held by Investcorp Bank.

11.    Investcorp Bank is the only Investcorp Defendant that is registered as a Licensee in Bahrain. No other Investcorp Defendant is registered in Bahrain as a Licensee. Indeed, the CBB's website lists all CBB licensees, and no Investcorp Defendant other than Investcorp Bank is listed by the CBB (see   http://www.cbb.gov.bh/cmsrule/index.isp?action=article&ID=106).   Thus, as appears relevant to this litigation, the only information subject to protection under Bahraini law is information on the "private affairs" of Investcorp Bank's "customers." In my opinion, names and addresses of investors in a non-Bahraini, non-Licensee entity do not constitute Confidential Information as defined in the CBB Law, nor do I know of any decisional authority ruling that information concerning investors in a non-Bahraini, non-licensee is Confidential Information under the CBB Law. I know of no decisional authority which would prevent disclosure of the names and addresses of investors in the Investcorp Defendants other than Investcorp Bank's customers.

12.    In most cases, Bahraini Courts have a discretion to decide whether or not, to enforce an order made by a foreign Court. If it was asked to enforce an order made by a U.S. Court for disclosure of information held by a Bahraini entity, the Bahraini Courts would ordinarily, where relevant, have regard to the following:

Qays H. Zu'bi

a.  Whether U.S. Courts enforce judgments and orders made in Bahrain;

b.  That no proceedings on the same matter are currently before the Courts in Bahrain;

c.  That the U.S. Courts have jurisdiction to hear the matter under their own rules and the Bahrain Courts do not have exclusive jurisdiction;

d.  Proper notices were served on the litigants who had a chance to respond;

e.  The U.S. judgment is a final judgment, irrespective of any appeal;

f.  The judgment is not inconsistent with any judgments rendered in Bahrain and nothing therein violates public policy or morals.

13.  In addition to the CBB Law, the CBB has published various Rulebooks which govern CBB licensees. Rulebook 1 ("the Rules") is applicable to conventional banks and applies to Investcorp Bank.

14.  Principle 4 (PB1.1.4) of the Rules states that:
    *"Conventional bank licensees and approved persons must observe in full any obligations of confidentiality, including with respect to customer information. This requirement does not over-ride lawful disclosures"*. The CBB Rules however, apply to CBB Licensees and would not expect to apply to non CBB licensees regulated in their home jurisdiction.

15.  Article 171 of the CBB Law, provides for a term of imprisonment and/or a fine not exceeding BD10,000, if any Director, manager or employee discloses in "bad faith" any Confidential Information relating to a customer of the concerned bank. In my opinion, notwithstanding whether CBB Law extends to the non Bahraini, non CBB licensees, I believe any disclosure which was made subject to a Court order may be interpreted as a "lawful disclosure" under Principle 4 of Rulebook 1, and in any event could not, in my view, be considered to be made in "bad faith." If such disclosure was made by the non Bahraini, non CBB licensed entities, it would appear contrary to the spirit of the CBB's rules to enforce penalties upon Investcorp Bank whereby such disclosure of Confidential information is made, in good faith, by separate legal entities in accordance with the rules of the country in which those entities are incorporated and subject to a Court order that it recognizes.  Further, I know of no decisional



Qays H. Zu'bi
Attorneys & Legal Consultants

authority that the disclosure by a non-Bahraini, non-Licensee entity (such as all of the Cayman Islands investment entities) of identification information regarding its own investors or of identification information regarding investors in other non-Bahraini entities would constitute a bad faith disclosure of the private affairs of a Licensee's customers.

16.    Further, Article 120 of the CBB Law describes the retroactivity of the CBB Law regarding Confidential Information existing before the law's enactment in 2006. The CBB Law retroactively protects Confidential Information received by the Bahrain Monetary Agency (the predecessor of the CBB), the Ministry of Commerce, auditors or experts appointed by the Bahrain Monetary Agency or the Ministry of Commerce, the Bahrain Stock Exchange, and any person who obtains Confidential Information from any of these entities. In my opinion, it does not apply to other types of information such as the identities of investors in non-Licensee entities. I know of no decisional authority ruling that the restrictions on disclosure of Confidential information would retroactively apply to the identities of investors in non-Bahraini, non Licensee entities regarding distributions made in 1997 and 2003, which information would not have been received by the Investcorp Defendants from any of the above entities or provided to those entities.

17.    The CBB Law's objective of providing a framework to regulate financial services firms operating in Bahrain reflects no desire by the CBB to regulate conduct outside Bahrain by non-Bahraini, non-Licensee entities regarding their own investors, simply because some management relationship may exist between such entities and a Licensee. Article 40 of the CBB Law specifies that no *"person shall carry out a Regulated Service in the Kingdom [of Bahrain] unless licensed by the Central Bank."*

18.    In summary, in my opinion, no Bahraini law of which I am aware restricts the disclosure of the names and addresses of investors in a non-Bahraini, non-Licensee. Such information is not Confidential Information as defined under Article 116 of the CBB Law because it is not information regarding the "private affairs" of Investcorp Bank's customers. Further, to the extent it was somehow determined to be Confidential Information, I know of no authority which would suggest that Investcorp



Bank would be subject to penalties if Investcorp SA., Investcorp International, Inc. or any other non-Licensee Investcorp Defendant disclosed the information pursuant to an order by a United States court, especially considering Investcorp Bank's objection to the disclosure, as penalties under Article 171 of the CBB Law are assessed only for bad faith disclosures.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**QAYS H. ZU'BI**
**Attorney & Legal Consultant**

Executed in Bahrain
On this 19th day of May, 2008.

**EXHIBIT 1**

### (iii) Ownership

The Bank is controlled by Ownership Holdings Limited ('OHL', incorporated in the Cayman Islands), through its shareholding directly, and through C.P. Holdings Limited ('CPHL', also incorporated in the Cayman Islands), of the issued ordinary shares of the Bank. OHL is, in turn, controlled by SIPCO Limited ('SIPCO'), a company incorporated in the Cayman Islands through which employees participate in ownership of the Bank's ordinary shares. The Bank is, therefore, controlled by its employees through their beneficial ownership as a group via SIPCO, OHL and CPHL.



### (iv) Subsidiary companies

The consolidated financial statements incorporate the financial statements of the Bank and its subsidiaries. A subsidiary is an entity that the Group has the power to control so as to obtain economic benefits and therefore excludes those held in a fiduciary capacity.

The Bank has a 100% economic interest in Investcorp Holdings Limited ('IHL', incorporated in the Cayman Islands) through Series A and Series B preference shares issued by IHL. These preference shares have the right to 100% of all dividends declared by IHL and 100% of IHL's net assets in the event of liquidation. The Series B preference shares, which economically mirror the terms and conditions of the Bank's preference shares, take priority over the Series A preference shares. The ordinary shares and Series A preference shares of IHL carry voting rights.

IHL in turn has a 100% economic and voting interest in Investcorp S.A. ('ISA'), a financial holding company incorporated in Luxembourg. ISA is the principal asset-holding operating entity within the Group and, consistent with covenants contained in the Group's medium and long-term debt, the Group holds at least 95% of its assets through ISA or subsidiaries that are owned directly or indirectly by ISA.

---

*Held through Global Depositary Receipts ('GDRs') listed on the London Stock Exchange. Every 100 GDRs represent beneficial ownership of one ordinary share of the Bank.*

INVESTCORP BANK B.S.C.
## CONSOLIDATED FINANCIAL STATEMENTS
*June 30, 2007*

The Group structure is illustrated below:



| Parent | Wholly owned significant subsidiaries | Description of principal activities |
|---|---|---|
| Investcorp Bank B.S.C. (Bahrain) | | Bahrain-based parent company of the Group |
| Investcorp Holdings Limited (Cayman Islands) | | Holding company that provides *force majeure* investment protection to shareholders and lenders |
| Investcorp S.A. (Luxembourg) | | Financial holding company that is the principal operating and asset owning arm of the Group |
| | Investcorp Capital Limited (Cayman Islands) | Company that issues the Group's long-term notes and other capital market financings |
| | Invifin S.A. (Luxembourg) | Company through which the Group retains its investment in debt instruments across its product classes |
| | Investcorp Investment Holdings Limited (Cayman Islands) | Company through which the Group retains its equity investments across its product classes |
| | Investcorp Management Services Limited (Cayman Islands) | Company that provides investment management and advisory services to client investment holding companies for private equity and real estate investments |
| | Investcorp Investment Adviser Limited (Cayman Islands) | Company that provides investment management and advisory services to the hedge funds program (HFP) and is a SEC registered investment advisor |
| | Investcorp Funding Limited (Cayman Islands) | Company that provides short-term funding to investee and client investment holding companies |
| | Investcorp Trading Limited (Cayman Islands) | Company that executes the Group's money market, foreign exchange and derivative financial contracts and invests in single manager funds |
| | Investcorp AMP Limited (Cayman Islands) | Company through which the Group co-invests in the hedge funds program (HFP) |
| | CIP AMP Limited (Cayman Islands) | Company through which the Group co-invests in the hedge funds program (HFP) |
| | Investcorp Financial & Investment Services S.A. (Switzerland) | Company that provides M&A advisory services for deal execution in Western Europe |
| | Investcorp International Limited (UK) | The Group's principal operating subsidiary in the U.K., a further subsidiary of which (Investcorp Securities Limited) provides M&A advisory services in the U.K. |
| | Investcorp International Holdings Inc. (USA) | The Group's principal operating subsidiary in the United States of America |
| | Investcorp International Inc. (USA) | Company that provides M&A advisory services for deal execution in North America |
| | N A Investcorp LLC (USA) | Company that provides marketing services in the United States for the HFP and is a SEC registered broker dealer |
| | Investcorp Investment Adviser LLC (USA) | Company that provides investment management services in the United States for the HFP and is a SEC registered investment advisor |

## B. SIGNIFICANT ACCOUNTING POLICIES
The consolidated financial statements of the Group are prepared in accordance with International Financial Reporting Standards ('IFRS') and in conformity with the Bahrain Commercial Companies Law and the Central Bank of Bahrain and Financial Institutions Law. The consolidated financial statements are prepared in United States dollars, this being the functional currency of the Group, and rounded to the nearest thousand ($000s) unless otherwise stated.

# Exhibit 13

(Supplemental Declaration of Hatim S. Zu'bi in Support
of Motion for Reconsideration, dated May 23, 2008)



**Hatim S. Zu'bi & Partners**
Al Mahmood & El Nayal
Attorneys and Legal Consultants

**Hatim S. Zu'bi** Hon. O.B.E.
L. L. B (Hons.) London, F.C.b.) Arb
of Lincoln's Inn, Barrister-at-law

**Hamid A. Al Mahmood** L.L.B
**Ma'awia T. El Nayal** L.L.B
**E. Hugh Stokes**
M A (Oxon), A C I Arb
**Maaria Ashraf** L.L.M
**Dr. Mohammed H. Salama**
**Wafa Zayani** L.L.B
**Hashim Juma** L.L.B
**Naji Al Shafie** L.L.B
**Hassana Hussami Zu'bi**
D.F.A Pane (I S of Scotland)

Senior Partner/Advocate

Partner / Advocate
Partner/Advocate
Solicitor/Senior Associate

Associate
Senior Consultant
Advocate
Advocate
Consultant
(Former Judge) Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
OLD LADDER LITIGATION CO., LLC, as
Litigation Designee on behalf of the
Liquidation Trust,

      Plaintiff,

    vs.

INVESTCORP BANK B.S.C. et al.,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - x

    08 cv 0876 (RMB)

## SUPPLEMENTAL DECLARATION OF HATIM S. ZU'BI
## IN SUPPORT OF MOTION FOR RECONSIDERATION

    HATIM S. ZU'BI declares as follows:

    1.  I have been shown a Declaration made on May 19, 2008 by Mr. Qays

Hatim Zu'bi, Attorney and Legal Consultant of Bahrain ("Plaintiff's Declaration") in

opposition to the Investcorp Defendants' Motion For Reconsideration. I wish to make

this Supplemental Declaration further to my Declaration of May 17, 2008 in support of

the Motion For Reconsideration.

    2.  As I explain further below, several statements in Plaintiff's Declaration

lack a good or acceptable basis or foundation in Bahrain law. But the principal focus,

and error, in Plaintiff's Declaration is the assertion that the names and addresses of the

investors in the Cayman Investcorp entity defendants listed in paragraph 4(e) of the

بناية باب البحرين، ١٥٠ شارع الحكومة، الطابق الأول، ٣١٥ المنامة - مملكة البحرين هاتف، ١٧٢٢٥١٥١ فاكس، ١٧٢٢٤٧٤٤ ص. ب ٥٠٢ المنامة - مملكة البحرين
Bab Al Bahrain Building, 150 Government Road, 1st Floor, Manama 315-Kingdom of Bahrain, P.O. Box 502 Manama-Kingdom of Bahrain
Tel •973 17225151 Fax •973 17224744 www.hati mzubilaw.com

declaration are not "Confidential Information" subject to the disclosure prohibition in Article 117 of the CBB Law. This error flows from a fundamental misconception of the relationship between these investors and the Investcorp defendants.

3. Plaintiff's Declaration agrees with my earlier declaration that (i) "Confidential Information" means "any information on the private affairs of any of the Licensee's customers", (ii) under Article 117 of the CBB Law, such Confidential Information may not be disclosed except in certain limited circumstances, none of which applies here, and (iii) Investcorp Bank B.S.C. is a registered Licensee subject to these laws. (Plaintiff's Declaration 9-11) Also, Plaintiff's Declaration does not dispute that customer name and address information comes within the definition of Confidential Information.

4. Rather, the argument in Plaintiff's Declaration is that because the Cayman Investcorp entity defendants at issue are not subsidiaries of Investcorp Bank B.S.C., the investors in those entities are not customers of Investcorp Bank B.S.C. and, therefore, their names and addresses are not Confidential Information. (Plaintiff's Declaration 4(e), 11) This assumes, with no factual support, that the investors in the Cayman Investcorp entity defendants are not also customers of Investcorp Bank B.S.C. That assumption is wrong.

5. In fact, all of the investors in the Cayman Investcorp entity defendants are customers of Investcorp Bank B.S.C. In accordance with its normal practice, when Investcorp Bank B.S.C. proposed the Werner investment, the offering documents required that subscriptions for the investment be made to Investcorp Bank B.S.C. at its head office in Bahrain. In other words, anyone who wanted to participate in the Werner

2



Continuation Sheet

investment had to first become a customer of the investment placement services group at Investcorp Bank B.S.C., which is based in Bahrain and serves a client base in the six countries of the Gulf Cooperation Council. Thus, because these investors are customers of Investcorp Bank B.S.C., they are entitled to the protection afforded by Bahrain law against disclosure of their Confidential Information, including their names and addresses. The ultimate conclusion in Plaintiff's Declaration (11), that there is "no decisional authority which would prevent disclosure of the names and addresses of investors in the Investcorp Defendants *other than Investcorp Bank's customers*", implicitly acknowledges that fact.

6.    There are several other errors and unsubstantiated assertions in Plaintiff's Declaration. I will highlight just a few of them.

7.    The assertion in Plaintiff's Declaration (10), that if Investcorp Bank B.S.C. only asked, the Central Bank of Bahrain (the "CBB") would approve the release of the investor identification Confidential Information, is without basis. Article 117 of the CBB Law, the customer confidentiality provision, is a mandatory rule of public policy which the CBB is duty bound to enforce and ensure that all licensees observe the non-disclosure requirement. The CBB cannot, and I am sure would not, give approval or instructions to Investcorp Bank B.S.C. to break this mandatory rule of the law.

8. Contrary to the suggestion in Plaintiff's Declaration (12), the courts of Bahrain do not have any discretion to decide whether or not to enforce an order made by a foreign court unless it satisfies the conditions expressly provided in Article 252 of the Law of Civil and Commercial Procedure of 1971 as amended, which provides:

3

MSW - Draft May 22, 2008 - 9:18 PM



Court judgments and orders passed in any foreign country may be ordered to be enforced on the same conditions as are laid down in the law of that country for enforcing court judgments and orders issued in Bahrain.

Because there is no reciprocity treaty between Bahrain and the United States of America, a Bahrain Court may not enforce a disclosure order made by a U.S. Court. Moreover, beyond the reciprocity requirement, Article 252 provides that foreign court orders may not be enforced unless the Bahrain Law Courts are not competent to hear the case in respect of which the order is made; here, the Bahrain courts are competent. Article 252 also provides that if the foreign court order contravenes the mandatory rules of secrecy which are part of the rules of public policy (Bahrain being an international banking center), it may not be enforced.

9. The contention (Plaintiff's Declaration 15) that "any disclosure which was made subject to a Court order" would be "lawful" under Bahrain law is also misleading. The exception to the confidentiality non-disclosure requirement provided by paragraph 3 of Article 117 expressly is limited to disclosure made "in the process of executing an order issued by a *Competent Court*". The U.S. Court is not a competent court in so far as enforcement of CBB Law is concerned.

10. Lastly, the arguments in paragraphs 16 and 17 of Plaintiff's Declaration concerning retroactivity of the CBB Law and regulation of "conduct outside Bahrain by non-Bahraini, non-Licensee entities regarding their own investors" are based on the same faulty assumption – that the Cayman entity investors are not customers of Investcorp Bank B.S.C. – refuted above. These investors are, in fact, customers of Investcorp Bank B.S.C. who are expressly afforded the clear protection of non-disclosure of their Confidential Information under Bahrain law.

4



Continuation Sheet

**Hatim S. Zu'bi & Partners**
Al Mahmood & El Nayal
Attorneys and Legal Consultants

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Manama, Bahrain, on May 23, 2008.

_____
Hatim S. Zu'bi

5

# Exhibit 14
(Plaintiff's May 27, 2008 letter)

**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
www.whitecase.com

Direct Dial + 212.819.8394     cshore@whitecase.com

May 27, 2008

<u>VIA HAND DELIVERY</u>

The Honorable Theodore H. Katz
United States Magistrate Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007-1312

Re:  *Old Ladder Litigation Co., LLC v. Investcorp Bank B.S.C., et al.*,
     Case No. 08 CV 0876 (RMB) (THK)

Dear Judge Katz:

Old Ladder Litigation Co., LLC ("Old Ladder") received on May 23, 2008 the Investcorp
Defendants' "supplemental declaration," which was neither requested nor authorized by the
Court. The unauthorized filing is misleading and, given its filing on the Friday before a holiday
weekend, smacks of gamesmanship. We trust that the Court will see it as such. We write only to
remind the Court that time is of the essence given the impending statute of limitations deadlines
and request a ruling from the Court as soon as possible or a hearing at the earliest convenient
date.

Respectfully submitted,

J. Christopher Shore

cc:  To the Attached Distribution List (By email)

ABU DHABI   ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT
HAMBURG   HELSINKI   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUNICH
NEW YORK   PALO ALTO   PARIS   PRAGUE   RIYADH   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

LOSANGELES 759103 (2K)

# Exhibit 15

(Memorandum Opinion and Order dated May 29, 2008)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/29/08
```

```
------------------------------------X
OLD LADDER LITIGATION CO., LLC,          :
                                          :
                          Plaintiff,      :  08 Civ. 0876 (RMB)(THK)
                                          :
            -against-                     :
                                          :MEMORANDUM OPINION AND
                                          :        ORDER
INVESTCORP BANK B.S.C., et al.,          :
                                          :
                                          :
                          Defendants.     :
------------------------------------X
```

**THEODORE H. KATZ, United States Magistrate Judge.**

Plaintiff Old Ladder Litigation Co. LLC ("Old Ladder") is the operating entity of a liquidated trust established pursuant to the plan of reorganization of Werner Co. ("Old Werner"), which was confirmed by the United States Bankruptcy Court of the District of Delaware.  Old Ladder has been designated pursuant to the Old Werner reorganization plan to prosecute all causes of action belonging to the bankruptcy estate of Old Werner.  The Complaint in this action, filed on January 24, 2008, seeks to recover in excess of $330 million transferred by Old Werner to certain defendant shareholders, insiders, and professionals in 1997, and in excess of $150 million transferred by Old Werner to certain defendant shareholders, insiders, and professionals in 2003, on grounds that the transfers were fraudulent conveyances under state and federal law.  Plaintiff named as Defendants thirty-four Investcorp entities, including Investcorp Bank, B.S.C., Investcorp International, Inc., and Investcorp, S.A. (collectively

"(Investcorp Defendants"). Many of the Investcorp Defendants are Cayman Islands corporations or limited partnerships that are alleged to have been the initial transferees of the funds Plaintiff seek. Invoking section 550 of the Bankruptcy Code, Plaintiff also named numerous partners and investors in the Investcorp Defendants as "Doe" Defendants, who are alleged to have received distributions of the fraudulently conveyed funds (as "mediate transferees") from various Investcorp Defendants (the initial recipients of the alleged fraudulent conveyances).

Because the Investcorp Defendants refused to produce voluntarily the names and addresses of the Doe Defendants, on February 27, 2008, Plaintiff requested expedited discovery from each of the Investcorp Defendants regarding the identities and locations of their investor and partners who received distributions from the alleged fraudulently conveyed funds. On April 17, 2008, Defendants submitted a letter opposing the request, arguing that (1) expedited discovery was unwarranted, and (2) the Court lacked personal jurisdiction over certain of the Investcorp Defendants. At a hearing on April 21, 2008, counsel for the Investcorp Defendants represented on the record that Investcorp International, Inc., Investcorp, S.A., and Investcorp Bank, B.S.C. ("the Bank") had the ability to obtain the requested information, and agreed that the Court had jurisdiction over those entities. (See Transcript of April 21, 2008 Hearing ("Tr."), at 5, 7-8.) The

2

Court determined that there was a sufficient justification for the limited expedited discovery being sought, as the statute of limitations may soon expire with respect to unnamed Defendants. Up until that point, Defendants had not advanced any claim with respect to foreign secrecy laws and had not even investigated the issue.[1] It was only after bank secrecy was indirectly alluded to by the Court that Defendants' counsel stated that it was an issue he would need to explore.

Defendants have now moved for reconsideration of the Court's order to produce information on the identities and addresses of the Doe Defendants, arguing that the Bank, the ultimate parent company of the other Investcorp Defendants, is a Bahraini corporation subject to Article 117 of the Central Bank of Bahrain and Financial Institutions Law, which prohibits disclosure of investor identifying information, absent consent of the investor or an order of the Bahrain courts. Plaintiff responds that Defendants' motion should be denied because (1) reconsideration is inappropriate where the issue of Bahraini secrecy law could have been raised in opposing the initial discovery request, but it was not, and (2) there is no basis to apply Bahraini secrecy laws to the thirty-three non-Bahraini Defendant entities.

### DISCUSSION

---

[1] Plaintiff agreed that if any issue regarding confidentiality arose, it would, at least initially, maintain the confidentiality of the information.

3

As an initial matter, and apart from the substantive argument Defendants advance, Defendants have not satisfied the prerequisites for a motion for reconsideration. A party seeking reconsideration of a court's order must "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local Civil Rule 6.3 of the Southern District of New York.

> A motion for reconsideration or re-argument shall be granted only if the court has overlooked " 'controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court.'" Greenwald v. Orb Commc'ns & Mktg., Inc., No. 00 Civ. 1939 (LTS), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003) (quoting Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000)) (alteration in original); see also S.D.N.Y. Local Civ. R. 6.3. Local Rule 6.3 should "be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dellefave v. Access Temps., Inc., No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001). Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995); Brown v. Barnhart, No. 04 Civ. 2450 (SAS), 2005 WL 1423241, at *1 (S.D.N.Y. June 16, 2005) ("Accordingly, the moving party may not advance new facts, issues or arguments not previously presented to the Court.") (internal quotation marks and citation omitted). "Whether to grant or deny a motion for reconsideration or reargument is in the sound discretion of a district court judge." Greenwald, 2003 WL 660844, at *1 (internal quotation marks and citation omitted).

Mikol v. Barnhart, No. 05 Civ. 5355 (WCC), 2008 WL 2115396, at *1

(S.D.N.Y. May 16, 2008). See also Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., No. 07 Civ. 2735 (DC), 2008 WL 2059324, at *2 (S.D.N.Y. May 15, 2008) ("[R]econsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (internal citations and quotation marks omitted); Regent Ins. Co. v. Storm King Contracting, Inc., No. 06 Civ. 2879 (LBS), 2008 WL 1985763, at *1 (S.D.N.Y. May 7, 2008) ("A motion for reconsideration allows a party to direct the court to an argument the party has previously raised but the court has overlooked. It is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion, and which, had they been considered, might have reasonably altered the result before the court. A motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.") (internal citations and quotation marks omitted).

Until the Court granted Plaintiff's request for expedited

5

discovery, approximately seven weeks after Plaintiff issued its discovery request, Defendants had not based their opposition on the contention that Bahraini secrecy law prohibited disclosure of the information being sought. Thus, the Court did not overlook any controlling matters that had been put before it. This alone justifies denying Defendants' motion.

Nevertheless, because of the serious consequences Defendants suggest they may face should they be required to disclose investor information in violation of Bahraini law, the Court will address the merits of their argument.

The first question to be resolved is whether the information sought by Plaintiff is, in fact, subject to Bahraini secrecy laws.

"Under Fed. R. Civ. P. 44.1, the determination of the effect of a foreign law presents a question of law for the Court which may consider any relevant material or source without regard to its admissibility under the Federal Rules of Evidence. Among other sources, the Court may consider the opinions of experts, but it is not bound by their testimony, even if uncontradicted." British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A., No. 90 Civ. 2370 (JFK)(FM), 2000 WL 713057, at *7 (S.D.N.Y. June 2, 2000) (internal citations and quotation marks omitted).

The parties have each submitted an affidavit from individuals who purport to be knowledgeable in Bahraini law.

Defendants' Expert

6

Hatim S. Zu'bi ("Zu'bi"), an attorney licensed to practice law in Bahrain, submitted a declaration in support of Defendants' motion. (See Declaration of Hatim S. Zu'bi, dated May 17, 2008 ("H. Zu'bi Decl.").) Mr. Zu'bi asserts that the ultimate parent company of the Investcorp entities is Investcorp Bank B.S.C., a Bahraini company domiciled and registered in Bahrain as a wholesale bank, which is subject to the regulatory oversight of the Regulator of the Central Bank of Bahrain. (See id. ¶ 2.) According to Mr. Zu'bi, under Article 116 of the Central Bank of Bahrain Financial Institution Laws ("CBB Laws"), the private affairs of a licensee bank's customers are deemed to be "confidential information" which, under Article 117 of the CBB Laws, must not be disclosed by a licensee unless such disclosure is done pursuant to the consent of the person whose records are being disclosed, in compliance with any international agreements to which Bahrain is a signatory, pursuant to an order issued by a competent court (a Bahrain court), or for the purpose of implementing an instruction given by the Central Bank. (See id. ¶¶ 4-5.) According to Mr. Zu'bi, the names and addresses of investors in Investcorp Bank are confidential information. Therefore, in the absence of any statutory basis for disclosing the information, the disclosure of the information by Investcorp and its affiliated entities could be a criminal offense resulting in imprisonment and the imposition of a fine, as well as a suspension of the Bank's license. (See id. ¶¶ 6-8.)

7

<u>Plaintiff's Expert</u>

In response, Qays Hatim Zu'bi ("Q. Zu'bi"), also a practicing attorney in Bahrain, submitted a declaration on behalf of Plaintiff. (<u>See</u> Declaration of Qays Hatim Zu'bi, dated May 19, 2008 ("Q. Zu'bi Decl.").)    Mr. Q. Zu'bi reviewed a copy of the Investcorp group's 2007 annual report, which confirmed that with the exception of the Investcorp Bank, which is a Bahraini entity, the other Investcorp entities are either Cayman Islands, Luxembourg or United States companies.    Moreover, the other Investcorp entities are not described as either subsidiaries or affiliates of Investcorp Bank.    Mr. Q. Zu'bi concurs in Defendants' expert's opinion of Bahraini law governing confidential information, but clarifies that the law is aimed at the disclosure of confidential information relating to the private affairs of any customers of a "licensee" regulated by the CBB. (<u>See</u> <u>id.</u> ¶¶ 8-10.)    Mr. Q. Zu'bi opines that only Investcorp Bank's customers are entitled to the protection of the confidentiality law, because only Investcorp Bank is a registered licensee in Bahrain.    Mr. Q. Zu'bi knows of no decisional authority that would extend the CBB law to investor information held by non-licensee, non-Bahraini entities, simply because some management relationship may exist between the non-Bahraini entities and a Bahraini licensee. (<u>See</u> <u>id.</u> ¶¶ 11, 14-15, 17.)    Relying on Section 120 of the CBB Law, Mr. Q. Zu'bi further suggests that because the CBB Law was enacted in 2006, it would

8

retroactively apply only to certain categories of confidential information existing before the law was enacted, and it would not apply to the information at issue in this action because the information was not received by the Bahrain Monetary Agency, the Ministry of Commerce, or the Bahrain Stock Exchange, and then passed on to Investcorp Bank. (See id. ¶ 16.) Mr. Q. Zu'bi further opines that even when the confidentiality statute is applied to Bahraini entities, there are exceptions to the prohibition on disclosure. He is of the view that had Investcorp Bank sought permission from the Central Bank to disclose the information in issue, the Bank might have authorized its disclosure. (See id. ¶ 10.)

Finally, Mr. Q. Zu'bi notes that under Section 171 of the CBB Law,, imprisonment and/or a fine for disclosure of confidential information is only authorized where the information is disclosed in "bad faith." (See id. ¶ 15.) Where disclosure is made pursuant to a court order, particularly by a non-Bahraini entity subject to United States court orders, it would not be considered to be in "bad faith," and would not result in severe sanctions. (See id. ¶ 15.)

After receiving Plaintiffs' experts' declaration, Zu'bi, Defendants' expert, submitted a supplemental declaration, which had not been authorized by the Court. The principal point made in the supplemental declaration is that the investors in the various non-

9

Bahraini Investcorp Defendants, whose identity is sought, are also customers of Investcorp Bank. Thus, according to Zu'bi, those customers are entitled to the protection afforded by Bahraini law against disclosure of their confidential information. (See Supplemental Declaration of Hatim S. Zu'bi in Support of Motion for Reconsideration, dated May 23, 2008 ("Supp. Decl."), ¶¶ 4-5, 10.)

Having considered the experts' opinions, the Court concludes that, for the most part, the information sought by Plaintiff is not subject to the confidentiality provisions of Bahraini law. With the exception of Investcorp Bank, none of the Defendant entities from whom information is sought is a Bahraini bank or licensee of the CBB. As discussed, all but one of the Investcorp entities are domiciled in either the Cayman Islands, Luxembourg, or the United States. Therefore, their investors are not entitled to the protections of Bahraini law.

Even if the non-Bahraini entities were subject to the CBB laws, however, that would not necessarily preclude their being ordered to produce the requested information. "It is well settled that a foreign blocking statute does not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate the statute." Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 544, 107 S. Ct. 2542 (1987). In deciding the propriety of ordering disclosures prohibited by the

law of a foreign nation, courts consider: (1) the competing interests of the nations whose laws are in conflict; (2) the hardship of compliance on the party or witness from whom discovery is sought; (3) the importance to the litigation of the information sought and whether there are alternative means to secure the information; (4) the good faith of the party resisting discovery; (5) whether the information originated in the United States; and (6) the specificity of the request. See id. at 544 n.28, 107 S. Ct. at 2556; United States v. Davis, 767 F.2d 1025, 1033-34 (2d Cir. 1985); Trade Dev. Bank v. Cont'l Ins. Co., 469 F.2d 35, 41 (2d Cir. 1972); Strauss v. Credit Lyonnais, S.A., Nos. 06-CV-702 (CPS)(KAM), 07-CV-914 (CPS)(KAM), 2008 WL 2098100, at *10 (E.D.N.Y. Mar. 10, 2008); Reino De Espana v. Am. Bureau of Shipping, No. 03 Civ. 3573, 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005); Minpeco v. Conticommodity Servs., Inc., 116 F.R.D. 517, 523 (S.D.N.Y. 1987).

Taking these factors into consideration, even if the Court were to decide that the non-Bahraini Investcorp Defendants were subject to Bahraini bank confidentiality laws, the balance of factors relevant to whether disclosure should be ordered tips in Plaintiff's favor. First, the information being sought is clearly relevant to this action. Plaintiff is attempting to identify unnamed Defendant investors in offshore entities and partnerships who may have received millions of dollars in distributions from Old Werner, to the detriment of its creditors. The investors are

11

potentially liable for fraudulent transfers, pursuant to 11 U.S.C. § 550. Moreover, the non-Bahraini entities face little likelihood of hardship if they comply with the Court's Order, as they are not subject to Bahraini penalties for disclosure of confidential information, and, in any event, since any disclosures would not have been in "bad faith," as they would be ordered by the Court, they would have a defense to liability. The Court further finds that there are no alternative means of securing the investors' identities. In addition, the United States has a strong interest in enforcing its statutes which prohibit fraudulent conveyances of funds to the detriment of creditors. In contrast, Bahrain's interest in its secrecy laws is highly attenuated where, as here, the information is being sought from entities which are not licensees in Bahrain. Moreover, Defendants' themselves did not appear to view Bahraini secrecy laws as a serious impediment to the discovery requests, as they did not initially rely on Bahraini law in objecting to disclose the requested information. Finally, the discovery request is focused and discrete, and not an open-ended fishing expedition. Indeed, Defendants appear to have already ascertained the identities of the individuals who are Doe Defendants.

All of these factors support the Court's conclusion that responsive information must be produced by the non-Bahraini Investcorp Defendants. However, the Court will not, at this time,

12

require Investcorp Bank to respond to the discovery request. The Bank clearly is subject to Bahraini secrecy laws. As Plaintiff concedes, it is not seeking the identities of Investcorp Bank's direct customers; rather, it seeks the identities of investors in the downstream investment entities who received distributions from Old Werner. That information appears to be available from alternative sources, i.e., the non-Bahraini Investcorp Defendants.[2]

## CONCLUSION

For the reasons set forth above, the Investcorp Defendants have not demonstrated that they are entitled to reconsideration of the Court's Order that they disclose the names and addresses of Doe Defendants who received proceeds from the funds that Plaintiff contends were fraudulently conveyed. Moreover, the information to be produced by the non-Bahraini Investcorp Defendants is not protected by Bahraini secrecy law.

Accordingly, the Investcorp Defendants, with the exception of Investcorp Bank, must produce the requested information within seven days of the issuance of this Order.

So Ordered.

---

[2] Simply because Defendants' expert has volunteered, albeit in an unauthorized submission, that the investors in the non-Bahraini entities are also customers of Investcorp Bank, does not alter the Court's conclusion that the non-Bahraini entities are not subject to the confidentiality provisions of Bahraini law.

13

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: May 29, 2008
       New York, New York

14

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                                ) ss.:
COUNTY OF NEW YORK  )

        Kenneth J. Horrmann, being duly sworn, deposes and says:

        1.  I am not a party to the action, am over 18 years of age and am employed by

Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY

10036.

        2.  On June 2, 2008, I served the following:

- **INVESTCORP Defendants' Objections To The Magistrate Judge's April 21, 2008 and May 29, 2008 Orders**
- **Declaration of Jason M. Liberi**

By first-class mail by depositing same in a post-paid properly addressed envelope, in an official depository under the exclusive care and custody of the U.S. Postal Service within the State of New York upon:

        Kevin C. Walz
        8045 Bainbrook Drive
        Chagrin Falls, OG 44023

        David A. Cardillo
        23 St. Glory Road
        Greenville, PA 16125

                            Kenneth J. Horrmann

Sworn to before me this
2nd day of June, 2008.

Brian E. Keating
Notary Public, State of New York
No. 60-5009535
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires March 15, 2011