1330237_1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC,<br>Plaintiff,<br><br>v.<br><br>INVESTCORP BANK B.S.C.; et al. | Case No. 08 CV 0876 |

## DECLARATION OF ERIC J. WERNER

I, Eric J. Werner, Esq., declare under penalty of perjury that the following is true and correct:

1.      During the period at issue in this lawsuit, I served as general counsel and corporate secretary for Werner Holding Co. (PA), Inc., Werner Holding Co. (DE), Inc., Werner Co., and WIP Technologies, Inc.  As such, I was responsible for maintaining and/or supervising the corporate records for each of the entities.  I have personal knowledge of the facts set forth in this affidavit.

2.      In 2006, these four companies filed voluntary petitions for bankruptcy in the U.S. Bankruptcy Court for the District of Delaware.

### Werner Holding Co. (PA), Inc.

3.      R.D. Werner Co., Inc. was incorporated under the laws of Pennsylvania in 1945. The name was changed to Werner Holding Co. (PA), Inc. in 1988.

4.      Werner Holding Co. (PA), Inc. and its predecessor maintained corporate offices in Greenville, PA.

5.      Werner Holding Co. (PA), Inc. reported its financials on a consolidated basis. Ernst & Young (form its Ohio office) served as the certified public accountants before the 1997

recapitalization. Ernst & Young performed the 1996-1998 year-end audit at Werner Holding Co. (PA), Inc.'s Pennsylvania offices. After 1998, the Pittsburgh, Pennsylvania offices of Price Waterhouse Coopers audited Werner Holding Co. (PA), Inc. and its subsidiaries.

6.    Prior to the 1997 recapitalization, none of the board of directors members or officers of Werner Holding Co. (PA), Inc. was a New York resident. Most resided in Pennsylvania.

7.    Prior to 1997, Werner Holding Co. (PA), Inc. held most of its board of director meetings in Pennsylvania, Illinois and Florida. None was held in New York.

8.    The books and records of the company were physically located in Pennsylvania.

<u>Werner Holding Co. (DE), Inc.</u>

9.    Werner Holding Co. (DE), Inc. was organized under the laws of Delaware in 1988.

10.    Contrary to the representations in the April 4, 2008 White & Case letter to the Court, Werner Holding Co. (DE), Inc. maintained an office in Delaware with at least one employee.

11.    Werner Holding Co. (DE), Inc. held most of its board of director meetings in Delaware.

12.    The company paid various taxes in Delaware, and the books and records of the company were physically located at its offices in Delaware.

13.    Werner Holding Co. (DE), Inc. owned 100% of the stock of Werner Co., the operating entity.

14.    Prior to 1997, Werner Holding Co. (DE), Inc. was involved in a number of intercompany loans with Werner Co.

<u>Werner Co.</u>

15.    In 1995, Werner Co. was organized under the laws of Pennsylvania and the predecessor operating entity was merged into Werner Co.. Its headquarters was located in Greenville, PA.

16.    It operated a manufacturing facility in Greenville, PA and employed over 1,000 persons in Pennsylvania. It also had manufacturing operations in Illinois and Alabama. It owned or leased warehouses in California, Arizona, Texas, Louisiana, North Carolina, Missouri, Kentucky and Minnesota. It had no operations in New York.

17.    Werner Co. owned 100% of the stock of WIP Technologies, Inc.

<u>WIP Technologies Inc.</u>

18.    WIP Technologies, Inc. was incorporated under the laws of Delaware in 1995 and was a wholly owned subsidiary of Werner Co.

19.    WIP Technologies, Inc. was the holder of intellectual property (U.S. domestic issued patents and trademarks) used by the Werner companies. The original documents evidencing the patents and trademarks were physically maintained in Delaware.

20.    WIP Technologies, Inc. licensed the use of its intellectual property to Werner Co. and in return received royalties from Werner Co.

21.    The license agreements were governed by Pennsylvania law.

<u>Operations of the Companies Prior to the 1997 Recapitalization</u>

22.    The corporate and financing activities of the related Werner companies were centered in Pennsylvania and Delaware, with their manufacturing facilities operating in Pennsylvania, Illinois, Kentucky and Alabama. This situation did not change significantly after the 1997 recapitalization.

23.     Prior to the 1997 recapitalization, family members in management held a series of meetings with Goldman Sachs and other advisors in Florida and Pennsylvania to determine the future course of the Company.

## The 1997 Recapitalization Agreement

24.     Investcorp and Werner management negotiated the terms of the recapitalization agreement in Pennsylvania and New York.  For example, Investcorp and Werner management held such meetings in Pennsylvania on August 5, 1997, September 8, 1997, September 10, 1997, and September 11, 1997.

25.     In October of 1997, the board of directors of Werner Holding Co. (PA), Inc. discussed and agreed to recommend the recapitalization.  These meetings occurred both in New York and Pennsylvania.

26.     In November of 1997, Werner Holding Co. (PA), Inc. held a special shareholders meeting in Boca Raton, Florida at which the shareholders approved the 1997 recapitalization.

27.     To effect the recapitalization, the shareholders surrendered their shares to the company at the corporate headquarters in Greenville, PA.

28.     After the recapitalization, the prior shareholders held approximately 33% of the outstanding voting shares, and the Investcorp related entities held approximately 67% of the outstanding shares.

29.     Pennsylvania law governed the agreements between Investcorp and the Werner family management group.  The indemnification of directors and officers by the corporation also was governed by Pennsylvania law.

30.     Investcorp performed due diligence relating to the recapitalization in Pennsylvania and Illinois.

31.     Goldman Sachs addressed its 1997 fairness opinion to Werner management in Greenville, PA.

32.     Murray, Devine & Co. performed its work in Pennsylvania, and it issued its valuation opinion from Philadelphia, PA.

33.     To facilitate the recapitalization, Werner Holding Co. (DE), Inc. issued Senior Subordinated Debt Securities in the amount of $135,000,000, which were privately placed. Werner Holding Co. (DE), Inc. also entered into credit facilities and borrowed $186.5 million. These funds, along with the amounts invested by Investcorp, were used to fund the recapitalization.

34.     Werner Holding Co. (DE), Inc. paid dividends to its parent, Werner Holding Co. (PA), Inc., to provide the parent with the funds to effectuate the redemption of stock.

35.     In 1998, Werner Holding Co. (DE), Inc. exchanged the privately placed notes for public debt pursuant to a registration statement filed with the Securities Exchange Commission. Thereafter, the notes were publicly traded.

36.     Plaintiffs filed litigation relating to the 1997 recapitalization in the United States District Court for the Western District of Pennsylvania. This litigation was resolved in 2003.

<u>2003 Recapitalization</u>

37.     After 1997, Werner Holding Co. (PA), Inc. held its board of director meetings in Pennsylvania, New York and Illinois.

38.     After 1997, Werner Holding Co. (DE), Inc. continued to hold its board of director meetings in Delaware.

39.    In 2003, Green Equity Investors III, L.P., with headquarters in Los Angeles, California, participated in a second recapitalization. Green Equity Investors III, L.P. is a Delaware limited partnership. As a result of the 2003 recapitalization, Green Equity Investor III, L.P. invested in and became a large shareholder of Werner Holding Co. (PA), Inc.

40.    The parties negotiated the 2003 recapitalization in Illinois, Pennsylvania, California and New York.

41.    As part of the 2003 recapitalization, Werner Holding Co. (PA), Inc. issued 65,000 Series A preferred shares of stock to Green Equity Investors III, L.P. pursuant to the Business Corporation Law of the Commonwealth of Pennsylvania. Green Equity Investors III, L.P. paid $65 million for the preferred stock.

42.    Werner Holding Co. (PA), Inc. also redeemed 39.66% of its then outstanding shares.

43.    Werner Holding Co. (DE), Inc. entered into new credit facilities after paying off the existing lines.

44.    In 2003, Werner Holding Co. (DE), Inc. paid cash dividends to its parent in order to finance the 2003 recapitalization.

45.    After the 2003 recapitalization, Werner Holding Co. (PA), Inc. also held board of director meetings in California.

46.    New York, Pennsylvania and Delaware law governed the various agreements associated with the 2003 recapitalization.

<u>2005 Re-Financing</u>

47.    In 2005, Werner Holding Co. (DE), Inc. refinanced its outstanding debt.

48.    The new loans were guaranteed by Werner Holding Co. (PA), Inc., Werner Co.

6

and WIP Technologies, Inc.

49.     Once Werner Holding Co. (DE), Inc. received the proceeds of the loans, it paid off the existing debt.

50.     The lead lender in the 2005 refinancing was The Trust Company of the West, headquartered in Los Angeles, California.

Miscellaneous

51.     The New York shareholder defendants identified in White & Case's April 4, 2008, letter to the Court represent less than 6% of the 1997 and 2003 redemptions by Werner Holding Co. (PA), Inc. The vast majority of the shareholders involved in those transactions. were not residents of New York.

52.     From time to time, other subsidiaries were formed by the Werner companies in Delaware – Werner Funding Co. (DE), Werner (DE) International, Inc., Ardee Investment Co., Inc., Werner Financial Inc, and Werner Ladder Co., Inc. (DE).

Executed this 29th day of May, 2008, subject to penalty of perjury.

Eric J. Werner

<u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK    )
: ss.:
COUNTY OF NEW YORK  )

Kenneth J. Horrmann, being duly sworn, deposes and says:

1. I am not a party to the action, am over 18 years of age and am employed by

Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036.

2. On June 2, 2008, I served the following:

- *Notice of Motion,*
- *Opening Memorandum of Law in Support of Defendants' Joint Motions to Transfer Venue and to Dismiss the Complaint,*
- *Declaration of Michael D. Brooks,*
- *Declaration of Anthony W. Clark,*
- *Declaration of David M. Conn,*
- *Declaration of Daniel M. DiDomenico,*
- *Declaration of John J. Dylik,*
- *Declaration of Christopher G. Filardi,*
- *Declaration of Bruce B. Fischer,*
- *Declaration of Karen R. Garcell,*
- *Declaration of Vincent J. Garcell,*
- *Declaration of Edward W. Gericke,*
- *Declaration of Timothy K. Lewis,*
- *Declaration of Neal R. Martin,*
- *Declaration of Lisa A. Pressler,*
- *Declaration of John M. Remmers,*
- *Affidavit of Steven P. Richman,*
- *Declaration of Christopher J. Stadler,*
- *Declaration of Gary Stewart,*
- *Declaration of Thomas J. Sullivan,*
- *Declaration of Gregory W. Werkheiser,*
- *Declaration of Eric J. Werner; and*
- *Declaration of Michael S. Wong*

by first-class mail by depositing same in a post-paid properly addressed envelope, in an official

depository under the exclusive care and custody of the U.S. Postal Service within the State of

New York upon:

Kevin C. Walz
8045 Bainbrook Drive
Chagrin Falls, OG 44023

David A. Cardillo
23 St. Glory Road
Greenville, PA 16125

Kenneth J. Horrmann

Kenneth J. Horrmann

Sworn to before me this
2nd day of June 2008.

Brian E. Keating
Notary Public, State of New York
No. 01KE5009535
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires March 15, 2011

2