UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OLD LADDER LITIGATION CO., LLC, as Litigation　　　:
Designee on behalf of the Liquidation Trust,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiff,　　　　　　:　　08 cv 0876
　　　　　　　　vs.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
INVESTCORP BANK B.S.C., et al.,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendants.　　　　　:

## DECLARATION OF GREGORY W. WERKHEISER, ESQUIRE

I, Gregory W. Werkheiser, under penalty of perjury, state as follows:

1.　　I am an attorney at Morris, Nichols, Arsht & Tunnell, LLP, counsel for defendant Loughlin Meghji & Co., Inc. I am a member in good standing of the Delaware Bar and have been admitted *pro hac vice* in this case.

2.　　I respectfully submit this declaration in connection with Defendants' Joint Motions to Transfer Venue and to Dismiss the Complaint.

3.　　Attached hereto as Exhibit A is a true and correct copy of Debtors' Application for Order Authorizing Employment and Retention of Loughlin Meghji + Company as Restructuring Consultants Pursuant to Bankruptcy Code Sections 327(a), 330, and 105(a), filed by Werner Holding Co. (DE), Inc. on June 12, 2006 in the United States Bankruptcy Court for the District of Delaware.

4.    Attached hereto as Exhibit B is a true and correct copy of the July 13, 2006 Order Approving Employment and Retention of Loughlin Meghji + Company as Restructuring Consultants Pursuant to Bankruptcy Code Sections 327(a), 330, and 105(a).

Gregory W. Werkheiser

May 30, 2008

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - -x
In re                                          :       Chapter 11
                                               :
WERNER HOLDING CO. (DE), INC., *et al.*,       :       Case No. 06-10578 (___)
                                               :
            Debtors.                           :       Joint Administration Pending
- - - - - - - - - - - - - - - - - - - - - - - - -x

### DEBTORS' APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF LOUGHLIN MEGHJI + COMPANY AS RESTRUCTURING CONSULTANTS PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 330, AND 105(a)

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] seek entry of an order, pursuant to sections 327(a), 330, and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Code for the District of Delaware (the "Local Rules"), approving the employment and retention of Loughlin Meghji + Company ("LM+Co") as their restructuring consultants in these chapter 11 cases. In support of the Application, the Debtors rely upon and incorporate by reference the Affidavit of James J. Loughlin, Jr. in Support of Application for Order Authorizing Employment and Retention of Loughlin Meghi + Company as Restructuring Consultants Pursuant to Bankruptcy Code Sections 327(a), 330, and 105(a), annexed hereto as Exhibit A (the "Loughlin Affidavit"). In further support of the Application, the Debtors respectfully represent:

---

[1] The last four digits of the taxpayer identification numbers for each of the Debtors follow in parentheses: (i) Werner Holding Co. (DE), Inc. (1345); (ii) Werner Holding Co. (PA), Inc. (6895); (iii) Werner Co. (4435); and (iv) WIP Technologies, Inc. (2599). Werner Holding Co. (DE), Inc. and WIP Technologies, Inc. are located at 1105 North Market Street, Suite 1300, Wilmington, Delaware 19801. Werner Holding Co. (PA), Inc. and Werner Co. are located at 93 Werner Road, Greenville, Pennsylvania 16125.

## JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28

U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of

these cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a),

330, and 105(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 2014 and Local

Rule 2014-1.

## BACKGROUND

A.      The Chapter 11 Cases

2.      On the date hereof (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code. The

Debtors intend to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors also are seeking to

consolidate their chapter 11 cases for procedural purposes only.

3.      No trustee, examiner, or official committee of creditors has been

appointed in these cases. The following ad hoc committees of the Debtors' creditors have been

formed and are active: (i) the ad hoc committee of lenders under the credit agreement, dated as of

May 10, 2005, providing an aggregate second lien credit facility of $100 million (the "Ad Hoc

Committee of Second Lien Lenders"); and (ii) the ad hoc committee of holders of the Debtors'

10% Senior Subordinated Notes due 2007 (the "Ad Hoc Committee of Noteholders"). In

addition, prior to the Petition Date, JPMorgan Chase Bank, as agent (the "Prepetition Agent")

under the credit agreement, dated as of June 11, 2003, providing an aggregate first lien facility of

-2-

$230 million, and Black Diamond Commercial Finance LLC, the largest lender under the facility, have been in active negotiations with the Debtors.

B.     The Debtors' Business Operations

4.     Werner Co., the principal operating Debtor, is a wholly owned subsidiary of Werner Holding Co. (DE), Inc. ("Werner DE"), a Delaware corporation, which, in turn, is a wholly owned subsidiary of a Pennsylvania corporation, Werner Holding Co. (PA), Inc. ("Werner PA"). Neither Werner PA nor Werner DE has substantial operations, nor do they own assets other than their investments in Werner DE and Werner Co., respectively. WIP Technologies, Inc., a wholly owned subsidiary of Werner Co., holds the intellectual property for the Debtors.

5.     The Debtors are the nation's largest manufacturer and marketer of ladders and other climbing products, producing five principal categories of climbing equipment: (i) single and twin stepladders; (ii) extension, fixed, and multipurpose ladders; (iii) attic ladders; (iv) stages, planks, work platforms, and scaffolds; and (v) assorted climbing product accessories. The majority of the Debtors' climbing product sales are of either aluminum or fiberglass ladders.

6.     The Debtors' sales and marketing network is directed by an experienced in-house sales team of national and regional sales managers. The Debtors' climbing products are sold directly to customers and through approximately forty-five independent, commissioned manufacturer's representative organizations, which sell to four major distribution channels: (i) home improvement; (ii) hardware; (iii) professional; and (iv) other retail. The Debtors' sales organization is further supported by field merchandisers who assist non-retail customers with product merchandising, point-of-purchase signage, and sales techniques.

- 3 -

7.      The Debtors currently maintain their principal executive offices in Greenville, Pennsylvania. As of the Petition Date, the Debtors employed approximately 1,189 salaried and hourly employees. The Debtors operate manufacturing facilities in: (i) Chicago, Illinois; (ii) Merced, California; and (iii) Juarez, Mexico. In addition, the Debtors maintain numerous distribution facilities throughout the United States.

8.      For the year ending December 31, 2005, the Debtors reported audited net sales, on a consolidated basis, of $472,354,000. As of March 31, 2006, the Debtors' balance sheet reflected total assets of $201,042,000 and total liabilities of $473,447,000.

## RELIEF REQUESTED

9.      By this Application, the Debtors seek entry of an order, pursuant to sections 327(a), 330, and 105(a) of the Bankruptcy Code, authorizing the employment and retention of LM+Co as their restructuring consultants in these chapter 11 cases, effective as of the Petition Date and subject to the terms and conditions of the letter agreement between the Debtors and LM+Co dated February 14, 2005 (as amended on November 11, 2005, April 25, 2006, and May 31, 2006, the "LM+Co Agreement"), annexed hereto as Exhibit B.

## QUALIFICATIONS

10.     Beginning in February 2005, LM+Co was retained to advise and assist the Debtors' restructuring efforts. Working collaboratively with the Debtors' senior management team and professionals, LM+Co has assisted the Debtors in evaluating and implementing an operational restructuring of the Debtors' operations, including its manufacturing and distribution processes. With LM+Co's assistance, the Debtors are in the process of shifting much of their manufacturing to a lower-cost facility in Juarez, Mexico and opening a new distribution facility in El Paso, Texas. In addition, the Debtors have begun to source significant product from China

- 4 -

as part of their on-going effort to be the lowest cost provider of climbing products. LM+Co has also assisted senior management in its assessment of various business matters including cash management, business planning, and other customer and product related matters. The Debtors submit that they require the services of a qualified restructuring consulting firm to continue achieving these restructuring milestones and, ultimately, to successfully reorganize their business.

11.    Based on LM+Co's experience and expertise in providing restructuring advice and assistance to companies undergoing a chapter 11 reorganization, the Debtors believe LM+Co is well qualified to serve as the Debtors' restructuring consultants. In particular, the principals of LM+Co have provided restructuring services to companies experiencing operational and financial difficulties across a broad spectrum of industries, including the apparel, energy, healthcare, manufacturing and industrial, entertainment, retail, and telecommunications industries.

12.    In particular, James J. Loughlin, Jr., a principal of LM+Co and lead advisor from LM+Co on this engagement, has nearly 20 years of experience providing restructuring and turnaround services. Mr. Loughlin has advised more than 75 companies and has successfully restructured over $35 billion of debt. His industry experience includes turnarounds in the retail, healthcare, telecommunications, wholesale distribution, and various other industrial companies, and he has served as financial advisor to senior lenders and other creditor constituents in numerous matters. Mr. Loughlin, who is a Certified Turnaround Professional and is a former director of the Turnaround Management Association and the Association of Certified Turnaround Professionals, has served as the advisor to the debtor in the chapter 11 cases of Revco Drugstores, Greyhound Bus Lines, Circle K Corp., General Homes

- 5 -

Corp., Leslie Fay Companies, and Covanta Energy and was the Chief Restructuring Officer for Independent Wireless One (IWO). He has also served as advisor to various parties in interest in the chapter 11 cases of Interstate Bakeries Corp., MobileMedia, Burlington Industries, General Chemical Corp., Mariner Post-Acute Network, Inc., 360 Networks, and Safelite Corp. He has also advised numerous companies and their boards of directors in out-of-court operational and financial restructuring matters.

## SCOPE OF SERVICES

13.     The Debtors anticipate that LM+Co will provide restructuring consulting services to the Debtors throughout the course of these chapter 11 cases, as the Debtors may request. Certain of the services that LM+Co will render to the Debtors include the following:

(a)     Implementation of the Operational Restructuring Plan

(1)     Advise and assist management in analyzing and implementing all aspects of its operational turnaround plan, including:

(i)     Expansion of its manufacturing capabilities in Juarez, Mexico

(ii)     Customer pricing strategies to improve performance

(iii)     Product strategies including SKU reviews, profitability analysis, and procurement issues

(iv)     Corporate-wide expense management and reduction initiatives

(v)     Vendor and other supplier issues

(vi)     Employee related matters

(2)     Monitor the progress being made to achieve the operational restructuring plan and report the results to management

(3)     Assist management in managing various projects and initiatives underway

(b)     Business Planning and Financial Forecasting

(1)    Advise and assist management in developing the short-term business plans and financial forecasts

    (i)    Sales plans by customer and product

    (ii)    Manufacturing costs and efficiency improvements

    (iii)    Working capital requirements and cash flow forecasts

    (iv)    Analyses of various alternative operating scenarios

(2)    Advise and assist management in preparing forecasts relative to the Debtors' financing requirements in chapter 11

    (i)    Prepare debtor in possession financing models

    (ii)    Review and develop chapter 11 operating assumptions

    (iii)    Analyze and quantify potential customer and vendor issues

    (iv)    Other areas impacting performance

(3)    Advise and assist management in the development of a long-term strategic business plan and financial forecast

    (i)    Review various operating alternatives and analyze alternative operating scenarios

    (ii)    Develop customer and product sales and margin plans

    (iii)    Assist management in developing presentations of such plans to the Debtors' various constituents

(c)    Chapter 11 Case Management

(1)    Advise and assist management in all aspects of bankruptcy planning and preparation, including the various operational and financial issues that may arise as a result of the chapter 11 filing

    (i)    Provide insight to the Debtors in the development of cash flow budgets and first day pleadings

    (ii)    Work with the Debtors and its advisors to ensure a smooth transition into and out of chapter 11

    (iii)    Develop appropriate programs relating to retention, compensation, and severance of key personnel

- 7 -

(iv)    Assist in the management of the claims reconciliation process

(v)    Advising the Debtors on various customer and supplier issues

(vi)    Assist management in employee, customer, vendor, and creditor constituency communications

(d)    Other Items

(1)    Such other restructuring advisory services as may be requested by the Debtors

14.    Contemporaneously herewith, the Debtors are seeking to retain Willkie Farr & Gallagher LLP, as co-counsel, Young Conaway Stargatt & Taylor, LLP, as co-counsel, and Rothschild Inc., as financial advisors and investment bankers. Each of these firms will work under the Debtors' senior management team, which is committed to minimizing duplication of services in order to reduce professional fees and costs. To that end, LM+Co intends to work closely with each of these firms and the Debtors' senior management team to ensure that there is not unnecessary duplication of effort of cost.

## COMPENSATION

15.    As more fully described in the LM+Co Agreement, and subject to the Court's approval, the Debtors have agreed to pay the following compensation to LM+Co in consideration of the services to be performed in these chapter 11 cases:

(a)    $150,000 retainer paid to LM+Co upon execution of the LM+Co Agreement, to be held until the conclusion of the engagement, at which time a final billing will be applied to it, with any excess being returned to the Debtors

(b)    professional fees based on the actual hours incurred by LM+Co personnel on matters pertinent to this case, subject to a cap on such fees of $250,000 per month. Hourly rates for professional services shall be billed as follows:

- 8 -

|                    |                 |
|--------------------|-----------------|
| Partners           | $595            |
| Managing Directors | $475 to $575    |
| Directors          | $375 to $450    |
| Associates         | $295 to $350    |

(c)   reimbursement of all reasonable out-of-pocket expenses incurred in connection with the LM+Co Agreement

16.   In addition, the LM+Co Agreement provides that LM+Co shall be entitled to an additional fee upon completion of the Debtors' restructuring equal to $500,000 ("Value Added Fee").

17.   LM+Co will apply to the Court for the interim and final allowance of compensation, including its proposed Value Added Fee, and reimbursement of expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and other procedures that may be fixed by this Court.

18.   To the best of the Debtors' knowledge, the compensation arrangement described above is consistent with and typical of arrangements entered into by LM+Co and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

19.   There is no agreement or understanding between LM+Co and any other person or entity for sharing compensation received or to be received for services rendered by LM+Co in connection with these chapter 11 cases, except as permitted by section 504 of the Bankruptcy Code.

20.   Prior to the Petition Date, LM+Co received payments of $2,782,193 for services performed for the Debtors. In addition, LM+Co has received $393,598 for expenses

DB02:5358621.1                                                                                     065391.1001

incurred prior to the Petition Date. And the Debtors paid LM+Co a retainer of $150,000 before the

Petition Date. In total, LM+Co received $3,325,791 before the Petition Date from the Debtors.

       21.     As for the 90 days prior to the Petition Date, the following chart describes

the payments LM+Co received from the Debtors in detail:

| Retainer Balance | Invoice Amount | Invoice Date | Amount Received | Date Received |
|---|---|---|---|---|
| $150,000 | $24,316 | 3/24/06 | $24,316 | 4/24/06 |
| $150,000 | $276,438 | 5/4/06 | $276,438 | 5/11/06 |
| $150,000 | $20,914 | 2/28/06 | $20,914 | 5/15/06 |
| $150,000 | $19,064 | 5/2/06 | $19,064 | 6/2/06 |
| $150,000 | $271,513 | 5/26/06 | $271,513 | 6/2/06 |

## INDEMNIFICATION / LIMITATION OF LIABILITY

       22.     As more fully described in the LM+Co Agreement, if the Application is

granted, the Debtors will indemnify LM+Co and its affiliates against, inter alia, all costs, fees,

expenses, damages, and liabilities (including defense costs) associated with any third-party claim

relating to or arising as a result of the services (the "Losses"), or the LM+Co Agreement, except

to the extent that such Losses are determined to be the result of LM+Co's gross negligence or

willful misconduct. The LM+Co Agreement also limits LM+Co's total liability to the Debtors

relating to the LM+Co Agreement to an amount not to exceed the fees LM+Co receives for the

portion of work under the LM+Co Agreement giving rise to liability except for liability for gross

negligence or willful misconduct, which will not be so limited.

## DISINTERESTEDNESS

       23.     To the best of the Debtors' knowledge, LM+Co does not hold any interest

adverse to the Debtors or their estates, except as disclosed in the Loughlin Affidavit, annexed

hereto as Exhibit A. LM+Co believes that these connections have no bearing on the services for

which LM+Co's retention is being sought in these cases. Moreover, the Debtors do not owe

- 10 -

LM+Co any amount for services performed prior to the Petition Date. Hence, based upon the information available to them, the Debtors believe that LM+Co is a "disinterested person," pursuant to sections 101(14) and 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

## BASIS FOR RELIEF

24.    Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

25.    Bankruptcy Code section 330(a)(1) provides, in relevant part, as follows:

> After notice to the parties in interest and the United States Trustee and a hearing . . . the court may award to a . . . professional person employed under section 327 . . . reasonable compensation for actual, necessary services rendered . . . and . . . reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

26.    Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of financial advisors . . . or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

27.    Local Rule 2014-1 provides, in relevant part, as follows:

> Any entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . .

- 11 -

> shall file with the Court a motion, a supporting
> affidavit or verified statement of the professional
> person and a proposed order for approval.

Del. Bankr. L.R. 2014-1(a).

28.    The Debtors believe that the employment and retention of LM+Co, on the

terms and conditions set forth in the LM+Co Agreement, is necessary and in the best interests of

their bankruptcy estates.  As discussed above, LM+Co's expertise in providing restructuring

services to companies undergoing chapter 11 reorganizations, coupled with LM+Co's familiarity

with the Debtors, their operations and financial condition make LM+Co uniquely qualified to

serve as the Debtors' restructuring consultants during these chapter 11 cases.  Moreover, the

continued use of LM+Co as restructuring consultants will allow the Debtors to avoid the delay

and expense associated with replacing LM+Co with a different restructuring firm.

29.    Based on the foregoing, the Debtors submit that the relief requested is

necessary and appropriate, is in the best interests of their estates and creditors, and should be

granted in all respects.

## NOTICE

30.    Notice of this Application will be given to: (i) the United States Trustee

for the District of Delaware; (ii) counsel to the Prepetition Agent; (iii) counsel to the Ad Hoc

Committee of Second Lien Lenders; (iv) counsel to the Ad Hoc Committee of Noteholders;

(v) counsel to the proposed debtor in possession lenders; and (vi) the parties included on the

Debtors' list of thirty (30) largest unsecured creditors.  The Debtors submit that, under the

circumstances, no other or further notice is required.

31.    No previous application for the relief sought herein has been made to this

or any other court.

DB02:5358621.1                                                                065391.1001

3253196

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit C, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
June 12, 2006

WERNER HOLDING CO. (DE), INC., *et al.*

Larry V. Friend
Vice President, Chief Financial Officer, and Treasurer

# EXHIBIT A

**Loughlin Affidavit**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re                                          :     Chapter 11
                                               :
WERNER HOLDING CO. (DE), INC., *et al.*,       :     Case No. 06-_____ (____)
                                               :
            Debtors.                           :     Joint Administration Pending

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**AFFIDAVIT OF JAMES J. LOUGHLIN, JR. IN SUPPORT OF DEBTORS'
APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT
AND RETENTION OF LOUGHLIN MEGHJI + COMPANY AS
RESTRUCTURING CONSULTANTS PURSUANT TO
BANKRUPTCY CODE SECTIONS 327(a), 330, AND 105(a)**

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK    )

        James J. Loughlin, Jr., being duly sworn according to law, upon his oath, deposes and says:

      1.    I am a principal with Loughlin Meghji + Company ("LM+Co"), which has as its principal place of business 148 Madison Avenue, Suite 800, New York, New York 10016. LM+Co is a corporate restructuring firm specializing in advising management, investors, and creditors in the restructuring of financially distressed companies and in supplying senior executives on an interim basis to financially troubled companies

      2.    I submit this Affidavit in support of the Debtors' Application for Order Authorizing Employment and Retention of Loughlin Meghji + Company as Restructuring Consultants Pursuant to Bankruptcy Code Sections 327(a), 330, and 105(a) (the "Application").[1]

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

## QUALIFICATIONS

3.    Beginning in February 2005, LM+Co was retained to advise and assist the Debtors' restructuring efforts. Working collaboratively with the Debtors' senior management team and professionals, LM+Co has assisted the Debtors in evaluating and implementing an operational restructuring of the Debtors' operations, including its manufacturing and distribution processes. With LM+Co's assistance, the Debtors are in the process of shifting much of their manufacturing to a lower-cost facility in Juarez, Mexico and opening a new distribution facility in El Paso, Texas. In addition, the Debtors have begun to source significant product from China as part of their on-going effort to be the lowest cost provider of climbing products. LM+Co has also assisted senior management in its assessment of various business matters including cash management, business planning, and other customer and product related matters.

4.    The principals of LM+Co, including myself, have provided restructuring services to companies experiencing operational and financial difficulties across a broad spectrum of industries, including the apparel, energy, healthcare, manufacturing and industrial, entertainment, retail, and telecommunications industries. In particular, I have advised more than 75 companies and have successfully restructured over $35 billion of debt. My industry experience includes turnarounds in the retail, healthcare, telecommunications, wholesale distribution, and various other industrial companies, and I have served as financial advisor to senior lenders and other creditor constituents in numerous matters. I am a Certified Turnaround

---

[2]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at LM+Co and are based on information provided by them.

Professional and a former director of the Turnaround Management Association and the
Association of Certified Turnaround Professionals, and have served as the advisor to the debtor
in the chapter 11 cases of Revco Drugstores, Greyhound Bus Lines, Circle K Corp., General
Homes Corp., Leslie Fay Companies, and Covanta Energy and was the Chief Restructuring
Officer for Independent Wireless One (IWO). I have also served as an advisor to various parties
in interest in the chapter 11 cases of Interstate Bakeries Corp., MobileMedia, Burlington
Industries, General Chemical Corp., Mariner Post-Acute Network, Inc., 360 Networks, and
Safelite Corp. I have also advised numerous companies and their boards of directors in out-of-
court operational and financial restructuring matters.

## SCOPE OF SERVICES

5.      The Debtors have executed a letter agreement, dated February 14, 2005
(as amended on November 11, 2005, April 25, 2006, and May 31, 2006, the "LM+Co
Agreement"), retaining LM+Co to act as restructuring consultants to the Debtors. A copy of the
LM+Co Agreement is attached to the Application as Exhibit B. Since February 2005, LM+Co
has worked diligently to assist the Debtors with their operational restructuring and related
matters in furtherance of the Debtors' reorganization efforts. If the Court grants the Application,
LM+Co will continue to provide restructuring consulting services on the terms and subject to the
conditions set forth in the LM+Co Agreement and the Application.

## COMPENSATION

6.      Prior to the Petition Date, LM+Co received payments of $2,782,193 for
services performed for the Debtors. In addition, LM+Co has received $393,598 for expenses
incurred prior to the Petition Date. And the Debtors paid LM+Co a retainer of $150,000 before

3

the Petition Date. In total, LM+Co received $3,325,791 before the Petition Date from the Debtors.

7.    As for the 90 days prior to the Petition Date, the following chart describes the payments LM+Co received from the Debtors in detail:

| Retainer Balance | Invoiced Amount | Invoice Date | Amount Received | Date Received |
|---|---|---|---|---|
| $150,000 | $24,316 | 3/24/06 | $24,316 | 4/24/06 |
| $150,000 | $276,438 | 5/4/06 | $276,438 | 5/11/06 |
| $150,000 | $20,914 | 2/28/06 | $20,914 | 5/15/06 |
| $150,000 | $19,064 | 5/2/06 | $19,064 | 6/2/06 |
| $150,000 | $271,513 | 5/26/06 | $271,513 | 6/2/06 |

8.    No promises have been received by LM+Co or by any member or associate thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. LM+Co has no agreement with any other entity to share with such entity any compensation received by LM+Co.

9.    Further, the terms of compensation of LM+Co for services to be performed in the Debtors' cases are set forth in the Application and the LM+Co Agreement. To the best of my knowledge, such terms are consistent with and typical of arrangements entered into by LM+Co and restructuring consultants with respect to rendering similar services for clients such as the Debtors.

**DISINTERESTEDNESS**

10.    In connection with the preparation of this Affidavit, LM+Co conducted a review of its conflicts check systems of the Debtors' potential parties in interest.

11.    To the best of my knowledge, information, and belief, LM+Co has not represented any of the Debtors' parties in interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are

4

nacedNasm.

professionals involved, and to the best of my knowledge and information, none of these business relations represents an interest materially adverse to the Debtors herein in matters upon which LM+Co is to be engaged.

(d)    LM+Co has from time to time advised senior lender groups in various restructuring matters. JPMorgan Chase Bank has been the agent bank on a number of those assignments. Simpson Thacher & Bartlett LLP ("Simpson Thacher") has been counsel to the agent on a number of those engagements. In addition, Simpson Thacher served as counsel to LM+Co in our fee application for the bankruptcy of USGen New England. Also, Black Diamond Commercial Finance LLC and Eaton Vance Corp. and its affiliates have been participants in senior bank syndicates in which LM+Co has been the financial advisor. And LM+Co has been engaged to provide customer and product profitability analysis for a client that is owned by Investcorp S.A. and certain of its affiliates. To the best of my knowledge, none of LM+Co's continuing connections with the entities listed in this subparagraph currently account for more than 20% of LM+Co's gross annual revenues.

14.    To the best of my knowledge, information, and belief, LM+Co has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases. If the Court approves LM+Co's retention, LM+Co will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases. LM+Co will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or parties in interest in these chapter 11 cases; provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

15.    If any new relevant facts or relationships are discovered or arise during the pendency of these chapter 11 cases, LM+Co will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit as required by Bankruptcy Rule 2014.

16.    Except as otherwise set forth herein, insofar as I have been able to determine, none of LM+Co, I, or any employee of LM+Co who will work on the engagement

6

holds or represents any interest adverse to the Debtors or their estates, and LM+Co is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that LM+Co, and its professionals and employees who will work on the engagement:

    (a)    are not creditors, equity security holders, or insiders of the Debtors; and

    (b)    were not, within two years before the date of filing of the Debtors' Chapter 11 petitions, a director, officer, or employee of the Debtors.

    17.    I am not related or connected to and, to the best of my knowledge, no other professional of LM+Co who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware who handle bankruptcy cases, or any employee in the Office of the United States Trustee for Region 3.

[Remainder of page intentionally left blank.]

7

I declare under penalty of perjury under the laws of the United States of America

that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: New York, New York
       June 9 , 2006

James J. Loughlin, Jr.
Loughlin Meghji + Company

Sworn to before me this 9 day
of _____ , 2006

_____
Notary Public
My Commission Expires: _____

**ANNE M. LEGIO**
NOTARY PUBLIC, STATE OF NEW YORK
No. 01LE6127350
QUALIFIED IN WESTCHESTER COUNTY
MY COMMISSION EXPIRES MAY 23, 2009

8

**EXHIBIT B**

**LM+Co Agreement**



LOUGHLIN MEGHJI
+ COMPANY

May 31, 2006

Mr. Steven P. Richman
President & CEO
Werner Holding Co. (PA), Inc.
93 Werner Road
Greenville, PA 16125

Mr. Richman:

This letter amends the letter agreement between us dated February 14, 2005 as amended
subsequently by our letters dated November 11, 2005 and April 25, 2006.

The following modifications to the scope of services section of our engagement letter are
intended to further define the professional services we mutually agree should be
performed during our continued engagement:

    The Scope of Services section on pages 1 and 2 is hereby deleted in its entirety and
the following is substituted therefore:

(i)   **Implementation of Operational Restructuring Plan**
  - o Advise and assist Management in analyzing and implementing all aspects
    of its operational turnaround plan, including:
    - Expansion of its manufacturing capabilities in Juarez, Mexico
    - Customer pricing strategies to improve performance
    - Product strategies, including SKU reviews, profitability analysis
      and procurement issues
    - Corporate-wide expense management and reduction initiatives
    - Vendor and other supplier issues
    - Employee related matters
  - o Monitor the progress being made to achieve the operational restructuring
    plan and report the results to Management
  - o Assist Management in managing various projects and initiatives underway
    throughout the Company

(ii)   **Business Planning and Financial Forecasting**
  - o Advise and assist Management in developing the short-term business
    plans and financial forecasts
    - Sales plans by customer and product
    - Manufacturing costs and efficiency improvements
    - Working capital requirements and cash flow forecasts
    - Analyses of various alternative operating scenarios

LOUGHLIN MEGHJI
+ COMPANY

   o Advise and assist Management in preparing forecasts relative to the Company's financing requirements in chapter 11
     ▪ Prepare Debtor-In-Possession ("DIP") financing models
     ▪ Review and develop chapter 11 operating assumptions
     ▪ Analyze and quantify potential customer and vendor issues
     ▪ Other areas impacting performance
   o Advise and assist Management in the development of a long-term strategic business plan and financial forecast
     ▪ Review various operating alternatives and analyze alternative operating scenarios
     ▪ Develop customer and product sales and margin plans
     ▪ Assist Management in developing presentations of such plans to Company's various constituents

**(iii)** **Chapter 11 Case Management**
   o Advise and assist Management in all aspects of bankruptcy planning and preparation, including the various operational and financial issues that may arise as a result of the chapter 11 filing
     ▪ Provide insight to the Company in the development of cash flow budgets and first day pleadings
     ▪ Work with the Company and its advisors to ensure a smooth transition into and out of chapter 11
     ▪ Develop appropriate programs relating to retention, compensation and severance of key Company personnel
     ▪ Assist in the management of the claims reconciliation process
     ▪ Advising the Company on various customer and supplier issues
     ▪ Assist Management in employee, customer, vendor and creditor constituency communications

**(iv)** **Other Items**
   o Such other restructuring advisory services as may be requested by the Company

Except as set forth above, the letter agreement between us, dated February 14, 2005, as subsequently amended on November 11, 2005 and April 25, 2006, remains in full force and effect.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this amendment, whereupon it shall become binding and enforceable in accordance with its terms.

LOUGHLIN MEGHJI
+ COMPANY

LOUGHLIN MEGHJI + COMPANY

By: _____
James J. Loughlin, Jr.
Principal

WERNER HOLDING CO. (PA), INC

By: _____
Steven P. Richman
President & CEO



April 25, 2006

Mr. Steven P. Richman
President & CEO
Werner Holding Co. (PA), Inc.
93 Werner Road
Greenville, PA 16125

Dear Steve:

This letter amends the letter agreement between us dated February 14, 2005 as amended subsequently by our letter dated November 11, 2005, as follows:

Paragraph b) on page 4 is hereby deleted in its entirety and the following is substituted therefore:

b)  *Compensation for Services*:  *As compensation for providing the Services hereunder, the Company shall pay LM+Co as follows:*

1.  *Non-refundable professional fees based on the actual hours incurred by LM+Co. personnel on matters pertinent to this case (the "Monthly Fees").  Hourly rates for professional services shall be billed as follows:*

|      |                     |                |
|------|---------------------|----------------|
| (i)  | *Partners*          | *$595*         |
| (ii) | *Managing Directors*| *$525*         |
| (iii)| *Directors*         | *$375 to $450* |
| (iv) | *Associates*        | *$295 to $350* |

*LM+Co agrees to cap the Monthly Fees at $250,000 each month.*

2.  *Value Added Adjustment*:  *As further compensation, the Company shall pay LM+Co an additional amount (the "Value Added Adjustment") equal to $500,000.00 upon the completion of a restructuring in or out of court.*

The third paragraph on page 4 (after paragraphs b) and c)) is hereby deleted and the following is substituted therefore:

*The Monthly Fees and Out-of-Pocket Expenses shall be payable, by check or wire transfer, not later than the tenth day after the end of each month, with the first such payment (for Services during April 2006) due and payable on or before May 10, 2006, and the last such payment due and payable on or before the tenth day following the month in which the Services terminate as provided under "Termination" below.  It is our intention to submit an invoice for Monthly Fees at the end of each month of the*

Page 1 of 2



*Agreement. The Value Added Adjustment shall be payable by check or wire transfer not later than 10 days after the submission of an invoice for such compensation, with the understanding that the invoice will be contingent upon meeting the requirements described above.*

Except as set forth above, the letter agreement between us, dated February 14, 2005, as subsequently amended on November 11, 2005 remains in full force and effect.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this amendment, whereupon it shall become binding and enforceable in accordance with its terms.

LOUGHLIN MEGHJI + COMPANY

By: _____
James J. Loughlin, Jr.
Principal

WERNER HOLDING CO. (PA), INC

By: _____
Steven P. Richman
President & CEO

November 11, 2005

LOUGHLIN MEGHJI + COMPANY



Mr. Steven P. Richman
President & CEO
Werner Holding Co. (PA), Inc.
93 Werner Road
Greenville, PA 16125

Mr. Richman:

This letter amends the letter agreement between us dated February 14, 2005 as follows:

Paragraph b), section 1, on page 4 is hereby amended to add the following sentences after the first sentence of such section:

"LM+Co agrees that the professional fees for this engagement will not exceed $1,310,000 for the Services rendered through December 31, 2005."

"Commencing January 1, 2006 the Monthly Base Fee shall be increased to $325,000.00 due and payable by wire transfer, following the receipt of an invoice for such fee. The Company hereby agrees to pay the first three months in advance."

Paragraph b), section 2, on page 4 titled "Value Added Adjustment:" is hereby deleted, and the following is substituted therefore:

"Value Added Adjustment: As further compensation, the Company shall pay LM+Co an additional amount (the "Value Added Adjustment") equal to $500,000.00 upon the successful implementation of the manufacturing, distribution, product and customer profitability strategies reflected in the Enterprise business model, with such implementation expected by April 1, 2006."

Except as set forth above, the letter agreement between us, dated February 14, 2005, remains in full force and effect.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this amendment, whereupon it shall become binding and enforceable in accordance with its terms.

LOUGHLIN MEGHJI + COMPANY

By: _James J. Laughlin_
    James J. Loughlin, Jr.
    Principal

WERNER HOLDING CO. (PA), INC

By: _Stephen P. Richman_
    Stephen P. Richman
    President & CEO



February 14, 2005

Mr. Steven P. Richman
President & CEO
Werner Holding Co. (PA), Inc.
93 Werner Road
Greenville, PA 16125

Dear Steven:

This letter agreement ("Agreement") confirms that Werner Holding Co. (PA), Inc. ("Werner" or the "Company") has engaged Loughlin Meghji + Company ("LM+Co") effective February 9, 2005 (the "Commencement Date") to provide the services described in more detail below.

**LM+Co Services and Responsibilities**

**Scope of Services**

Based on our discussions with Management, LM+Co shall perform the following services (the "Services") for the Company as required during the course of the engagement:

(i)  Strategic Planning
   o  Assist Management in developing an enterprise-wide business model
      ▪ Assess current procurement, manufacturing and distribution/freight cost structures
      ▪ Evaluate non-domestic vs. domestic sourcing/production alternatives, including impact on centralized production support functions (e.g., purchasing, engineering, administrative, etc.)
      ▪ Analyze the impact of various "kitting" alternatives
      ▪ Evaluate various distribution center and warehouse locations
   o  Identify customer/segment and product profitability opportunities
      ▪ Assess the profitability impact of customer and product driven activities
      ▪ Evaluate existing profitability models and potential improvements to current allocation methodology, e.g., activity-based costing within certain manufacturing, distribution and overhead functions
   o  Assist Management in developing feasible action plans to implement its new business model
   o  Assist with overall project management, including timelines, critical path issues, etc.

(ii)  Operational Improvement
   o  Review the planning functions from demand/sales forecasting, production scheduling and financial modeling to identify opportunities for improvement
   o  Assist Management in identifying and reviewing overhead cost reductions
   o  Assist Management in identifying and reviewing working capital and liquidity improvements, as needed



(iii)   Financial
- Review FY2005 Management/Internal and Bank/External Financial Forecasts
- Assist Management in developing its FY2006 Forecast and longer term business plan, including financial projections
- Assist Management in presenting its Business Plan and/or Forecasts to its lenders, shareholders and other constituents
- Advise and assist in negotiations with current and potential new lenders
- Advise and assist in any refinancing activity

(iv)   Evaluation of the Extruded Products Business
- Analyze and assess the various casting and extrusion strategic alternatives
- Assist Management and their investment banker in maximizing the value of the Extruded Products business segment
- Support the execution of the sale of the Extruded Products business segment

(v)   Other Items
- Such other restructuring or financial advisory services as may be mutually agreed upon by the parties hereto

LM+Co shall perform those tasks Werner requests that are within our scope of practice, always keeping in mind that, to the extent Werner asks us to reach conclusions or form opinions, LM+Co shall do so without regard to or consideration of the impact that such conclusions or opinions may have upon the initiation or outcome of any litigation.

## Deliverables

Materials prepared in connection with our engagement hereunder (the "Deliverables") may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available. The parties understand and acknowledge that LM+Co will not have an obligation to update the Deliverables as part of its Services hereunder in the event of such change. Any materials prepared by LM+Co are solely for the Company's confidential use as it relates to this matter, and may not be reproduced, summarized, referred to, disclosed publicly or given to any other person without our prior written consent, which permission shall not be unreasonably withheld, provided that such permission shall not be required (i) if the materials are required to be disclosed by process of law, or (ii) for disclosures by the Company to its other advisors and representatives.

## Limitations on Services

LM+Co's Services are limited to those specifically noted in this Agreement and do not include accounting, auditing, tax related assistance, or other advisory services, except as specifically described herein. LM+Co shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with this engagement or LM+Co's Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. The accuracy and completeness of such information submitted by the Company to LM+Co for analysis, on which LM+Co relies and which will form the basis of LM+Co's conclusions, are the responsibility of the Company.

LM+Co's Services hereunder do not include preparing, auditing or otherwise attesting in any way (including without limitation, the accuracy, achievability, reliability, relevance, usefulness or other



appropriateness) to the Company's financial projections. The Company acknowledges that it will remain at all times solely responsible for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. There will usually be differences between the projected and actual results, and those differences may be material. To the extent that, during the performance of Services hereunder, LM+Co is required to consider the Company's financial projections, the parties acknowledge that LM+Co's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide any assurance that LM+Co might not become aware of significant matter affecting the reasonableness of the projections that might be disclosed by more extensive procedures. The Company understands and agrees that LM+Co will have no responsibility or liability relating to any such differences.

## Company Responsibilities

In connection with LM+Co's provision of the Services, the Company shall perform those tasks and assume those responsibilities specified herein and as stated elsewhere in this Agreement (the "Company Responsibilities"). The Company understands that LM+Co's performance depends on the Company's timely and effective satisfaction of the Company Responsibilities hereunder and timely decisions and approvals by the Company. The Company shall promptly provide LM+Co with all decisions, approvals and acceptances as requested by LM+Co, and further, LM+Co shall be entitled to rely on all such decisions and approvals of the Company in connection with the Services. Further, the Company understands that LM+Co is relying upon the information that the Company provides to LM+Co in order for LM+Co to provide the Services hereunder and that LM+Co shall have no responsibility for the accuracy or completeness of such information. LM+Co's ability to perform acceptably under this Agreement is expressly conditioned and contingent upon the foregoing understanding.

In performing the Services hereunder, LM+Co will not be assuming the role of management; LM+Co's role will be advisory only. It is understood that any decision to select or implement LM+Co's recommendations or to act on LM+Co's advice will be solely within the Company's discretion and at the direction of the Company's management.

LM+Co's delivery of the Services and the fees charged depend on (i) the Company's timely and effective completion of the Company Responsibilities, and (ii) timely decisions and approvals by the Company's management.

## Fees and Expenses

LM+Co understands that all amounts payable under this Agreement will be paid directly by the Company.

a) Retainer: Simultaneously with the execution of this Agreement, the Company will pay LM+Co a $150,000 Retainer (the "Retainer"). The Retainer is not intended to be an estimate of the total fees and expenses to be paid to LM+Co during the course of the engagement. Rather, LM+Co shall hold the Retainer until the conclusion of this engagement, at which time the final billing shall be applied against it, with any excess being returned to the Company.



b) <u>Compensation for Services</u>:  As compensation for providing the Services hereunder, the Company shall pay LM+Co as follows:

1.  Non-refundable professional fees of $150,000 per month (the "Monthly Base Fee"), due and payable by wire transfer, following receipt of an invoice for such fee, commencing March 1, 2005; it being understood that the Company shall pay a pro-rated share of the Monthly Base Fee for services performed between the Commencement Date and February 28, 2005.

    The Monthly Base Fee may be adjusted from time to time by mutual agreement between the Company and LM+Co.

2.  <u>Value Added Adjustment</u>:  As further compensation, the Company shall pay LM+Co an additional amount to be agreed upon by the Company and LM+Co (the "Value Added Adjustment").  The determination of the Value Added Adjustment will be a qualitative assessment after consideration of the following factors:  (i) the complexity of the engagement and the Services provided, (ii) the quality of advice, (iii) the value added to the restructuring engagement by LM+Co and (iv) current market compensation for the type of services contemplated hereunder.  The Company shall pay LM+Co, by wire transfer, the Value Added Adjustment immediately upon the completion of the engagement.

    Specific guidelines for the Value Added Adjustment, if appropriate, will be developed by April 15, 2005 between LM+Co and the Company.

c) <u>Out-of-Pocket Expenses</u>:  The Company agrees to reimburse LM+Co promptly from time to time upon request for its reasonable out-of-pocket expenses incurred in connection with this Agreement.  It is our intention to submit invoices for reimbursement of Out-of-Pocket Expenses at the end of each month of the Agreement.

The Monthly Base Fee and Out-of-Pocket Expense invoices shall be payable, by check or wire transfer, not later than the thirtieth day after the invoice date (it being understood and agreed, however, that payment of the Monthly Base Fee shall be due and payable by the thirtieth day following the due date specified above, regardless of any delay in mailing or receipt of the invoice).

Invoices for which payment is not received within thirty (30) days of the invoice date shall be deemed "past due" and shall be set off against the Retainer to satisfy payment.  LM+Co reserves the right to suspend further Services, until payment is received on past due invoices and/or the Retainer is restored.  In the event that LM+Co so suspends its Services, LM+Co shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.


<u>Termination of Engagement</u>

Both the Company and LM+Co shall have the right to terminate LM+Co's Services upon thirty (30) days' prior written notice to the other.  Upon such termination, the Company shall remain obligated to pay LM+Co: (i) any unpaid Monthly Base Fee due as of the termination, (ii) any current Monthly Base Fee prorated to the effective date of the termination, and (iii) all Out-of-Pocket expenses hereunder

Page 4 of 8



incurred on or before the effective date of such termination. In addition, the Indemnification and Statement of Limitation provisions contained in Annex A hereto shall survive any such termination and are incorporated herein by reference and made a part of this Agreement.

## Conflicts

LM+Co is not aware of any business relationship it has that creates a potential conflict of interest with the Company, based on its current knowledge of the Company. Should any potential conflict pertaining to LM+Co's engagement hereunder come to the attention of either party hereto, such party shall immediately advise the other. LM+Co reserves the right to terminate this engagement at any time, if a conflict of interest arises or becomes known to it that, in its judgment, would impair its ability to perform the Services objectively. However, LM+Co agrees to accept no engagement after the date hereof that, at the time of the engagement, could reasonably be foreseen to involve such a conflict.

## Confidentiality

Any information supplied to LM+Co in connection with this Agreement shall be treated in accordance with the confidentiality agreement entered into between the parties on February 4, 2005.

## Additional Engagements

It is understood and agreed that, in connection with LM+Co's engagement by the Company under this Agreement, the Company may desire to engage LM+Co in one or more additional capacities, and that the terms of any such additional engagement may be embodied in one or more separate agreements acceptable to the Company and LM+Co.

## Complete Agreement; Amendments; Governing Law; Sole Benefit

This Agreement (including all Annexes) (a) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other prior communications, understandings and agreements (both written and oral) between the parties with respect to the subject matter hereof, and (b) may be modified, amended or supplemented only by written agreement between the parties hereto.

This Agreement and all controversies arising from or related to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to such State's conflict of laws principles.

This Agreement has been and is made solely for the benefit of the Company, LM+Co, and the Indemnified Parties, and their respective successors and assigns, and no other person or entity shall acquire or have any right under or by virtue of this Agreement.



Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

Loughlin Meghji + Company

By _____
James J. Loughlin, Jr.
Principal


Accepted and Agreed to this 14th day of February, 2005

Werner Holding Co. (PA), inc.

By _____
Steven P. Richman
President & CEO



**ANNEX A**
**Page 1 of 2**

## INDEMNIFICATION and STATEMENT OF LIMITATIONS

As LM+Co is performing the Services for the benefit of the Company, the Company shall, upon receipt of written notice, indemnify LM+Co and its affiliates (including past, present or future partners, principals and personnel of each of them) (collectively called the "Indemnified Persons") against all costs, fees, expenses, damages, and liabilities (including defense costs) associated with any third party claim relating to or arising as a result of the Services ("Losses"), the Company's use or disclosure of the Deliverables, or this Agreement. This provision is intended to apply regardless of the nature of any claim (including contract, statute, any form of negligence, whether of the Company, LM+Co, or others, tort, strict liability or otherwise), except to the extent such Losses are determined to be the result of LM+Co's gross negligence or willful misconduct.

The Company shall not, without LM+Co's prior written consent, settle, compromise, or consent to the entry of any judgment in any pending or threatened claim, action, or proceeding in respect of which indemnification could reasonably be sought hereunder (whether or not LM+Co or any other indemnified Person is an actual or potential party to such claim, action, or proceeding), if such settlement, compromise, or consent does not include an unconditional release of each Indemnified Person from all liability arising out of such claim, action, or proceeding. Promptly after receipt by any person claiming the benefit of this provision of notice of its involvement in any action, proceeding, or investigation, such person shall, if a claim in respect thereof is to be made against the Company under the preceding paragraph, notify the Company in writing of such involvement. The Company and its counsel shall be entitled to participate therein with the Indemnified Person and its counsel. To the extent it wishes, the Company shall be entitled to assume the defense of any action that is the subject of the preceding sentence with counsel reasonably satisfactory to the Indemnified Person, and, if it elects to do so, the Company shall be thereafter relieved of any further obligation for the payment of the fees and expenses of the Indemnified Person's counsel, provided, however, that the Indemnified Person shall be entitled to continued separate counsel at such Indemnified Person's own expense.

In the event that any LM+Co personnel are requested or required to appear as a witness in connection with any action, claim or proceeding for which indemnification is available hereunder, the Company shall reimburse LM+Co for all reasonable out-of-pocket expenses incurred by it in connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, and to compensate LM+Co in an amount to be mutually agreed upon per person per day for each day that such personnel is involved in preparation, discovery proceedings or testimony pertaining to such action, claim or proceeding.



ANNEX A
Page 2 of 2

LM+Co's total aggregate liability to the Company relating to this Agreement shall in no event exceed the fees LM+Co receives hereunder for the portion of the work giving rise to liability, except for liability for gross negligence or willful misconduct, which will not be so limited.  In no event shall LM+Co have any responsibility for any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). This paragraph shall apply regardless of the nature of any claim(s) (including contract, statute, any form of negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not LM+Co was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined to be prohibited by applicable law.

The Indemnification and Limitation of Liability provisions contained in this Annex A shall survive the termination or expiration of this Agreement for any reason.

Confirmed and Agreed to this
14th day of February, 2005

Werner Holding Co. (PA), Inc.

By: _____
      Steven P. Richman
      President & CEO

# EXHIBIT C

## Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - -x
In re                              :    Chapter 11
                                   :
WERNER HOLDING CO. (DE), INC., et al.,  :    Case No. 06-_____ (____)
                                   :
            Debtors.               :    Joint Administration Pending
- - - - - - - - - - - - - - - - - - - - - - - - - -x
```

## ORDER APPROVING EMPLOYMENT AND RETENTION OF LOUGHLIN MEGHJI + COMPANY AS RESTRUCTURING CONSULTANTS PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 330, AND 105(a)

Upon the application (the "Application") of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for an order, pursuant to sections 327(a), 330, and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the employment and retention of Loughlin Meghji + Company ("LM+Co") as restructuring consultants to the Debtors, to render such services as are more fully set forth in the Application and the LM+Co Agreement; and upon the Affidavit of James J. Loughlin, Jr. in Support of Debtors' Application for Order Authorizing Employment and Retention of Loughlin Meghi + Company as Restructuring Consultants Pursuant to Bankruptcy Code Sections 327(a), 330, and 105(a); and due and adequate notice of the Application having been given; and it appearing that no other or further notice need be provided; and the Court being satisfied that LM+Co is a "disinterested person" as such term is defined under section 101(14), as modified by section 1107(b), of the Bankruptcy Code; and it appearing that the relief requested by this Application is in the best interests of these estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

1.      The Application is granted to the extent set forth herein.

DB02:5358621.1

065391.1001

2.    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

3.    Pursuant to sections 327(a), 330, and 105(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain LM+Co as restructuring consultants under the terms of the LM+Co Agreement in these chapter 11 cases.

4.    LM+Co shall be compensated in accordance with the terms set forth in the LM+Co Agreement, and otherwise pursuant to such procedures as may be fixed by the Court.

5.    The Debtors are authorized to indemnify LM+Co in accordance with the LM+Co Agreement and the Application, but not for any claim arising from, related to, or in connection with LM+Co's postpetition performance of any services other than the services described in the LM+Co Agreement unless such services and indemnification therefor are approved by the Court.

6.    Notwithstanding any provision of the Application or the LM+Co Agreement to the contrary, the Debtors have no obligation to indemnify LM+Co, or provide contribution or reimbursement to LM+Co for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from LM+Co's gross negligence or willful misconduct, or (ii) settled prior to a judicial determination as to LM+Co's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which LM+Co should not receive indemnity, contribution, or reimbursement under the terms of the Application and the LM+Co Agreement, as modified by this Order.

7.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii)

-2-

the entry of an order closing these chapter 11 cases, LM+Co believes that it is entitled to the

payment of any amounts by the Debtors on account of the Debtors' indemnification,

contribution, and/or reimbursement obligations under the LM+Co Agreement and the

Application (as modified by this Order), including without limitation the advancement of defense

costs, LM+Co must file an application therefor in this Court, and the Debtors may not pay any

such amounts to LM+Co before the entry of an order by this Court approving the payment. This

paragraph is intended only to specify the period of time under which the Court shall have

jurisdiction over any request for fees and expenses by LM+Co for indemnification, contribution,

or reimbursement and not a provision limiting the duration of the Debtors' obligation to

indemnify LM+Co.

        8.    This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware
       June \_\_\_, 2006

_____
UNITED STATES BANKRUPTCY JUDGE

DB02:5358621.1

065391.1001

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re                                    :    Chapter 11
                                         :
WERNER HOLDING CO. (DE), INC., et al.,   :    Case No. 06-10578 (KJC)
                                         :
         Debtors.                        :    Jointly Administered
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x    Ref. Docket No. 22
```

**ORDER APPROVING EMPLOYMENT AND RETENTION OF LOUGHLIN
MEGHJI + COMPANY AS RESTRUCTURING CONSULTANTS
PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 330, AND 105(a)**

Upon the application (the "Application") of the debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors") for an order, pursuant to sections

327(a), 330, and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"),

authorizing the employment and retention of Loughlin Meghji + Company ("LM+Co") as

restructuring consultants to the Debtors, to render such services as are more fully set forth in the

Application and the LM+Co Agreement; and upon the Affidavit of James J. Loughlin, Jr. in

Support of Debtors' Application for Order Authorizing Employment and Retention of Loughlin

Meghji + Company as Restructuring Consultants Pursuant to Bankruptcy Code Sections 327(a),

330, and 105(a); and due and adequate notice of the Application having been given; and it

appearing that no other or further notice need be provided; and the Court being satisfied that

LM+Co is a "disinterested person" as such term is defined under section 101(14), as modified by

section 1107(b), of the Bankruptcy Code; and it appearing that the relief requested by this

Application is in the best interests of these estates, their creditors, and other parties in interest;

and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Application is granted to the extent set forth herein.

DB02:5358621.3                                                            065391.1001

2.      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

3.      Pursuant to sections 327(a), 330, and 105(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain LM+Co as restructuring consultants under the terms of the LM+Co Agreement in these chapter 11 cases.

4.      LM+Co shall be compensated in accordance with the terms set forth in the LM+Co Agreement, and otherwise pursuant to such procedures as may be fixed by the Court.

5.      Notwithstanding the foregoing, the United States Trustee retains all rights to object to the Value Added Fee based on the reasonableness standard provided for in section 330 of the Bankruptcy Code; provided, however, that although it may be considered, reasonableness shall not be evaluated primarily on an hourly- or length of case-based criteria

6.      The Debtors are authorized to indemnify LM+Co in accordance with the LM+Co Agreement and the Application, but not for any claim arising from, related to, or in connection with LM+Co's postpetition performance of any services other than the services described in the LM+Co Agreement unless such services and indemnification therefor are approved by the Court.

7.      Notwithstanding any provision of the Application or the LM+Co Agreement to the contrary, the Debtors have no obligation to indemnify LM+Co, or provide contribution or reimbursement to LM+Co for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from LM+Co's gross negligence or willful misconduct, or (ii) settled prior to a judicial determination as to LM+Co's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which LM+Co should not receive indemnity, contribution,

2

or reimbursement under the terms of the Application and the LM+Co Agreement, as modified by this Order.

        8.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, LM+Co believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the LM+Co Agreement and the Application (as modified by this Order), including without limitation the advancement of defense costs, LM+Co must file an application therefor in this Court, and the Debtors may not pay any such amounts to LM+Co before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by LM+Co for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify LM+Co.

        9.     The provision of the LM+Co Agreement regarding the limitation of the aggregate liability of LM+Co to the Debtors shall be deemed stricken.

        10.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware
      July 12, 2006

                                 Kevin J. Carey
                                 United States Bankruptcy Judge

3

065391.1001

<u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK    )
                             : ss.:

COUNTY OF NEW YORK  )

          Kenneth J. Horrmann, being duly sworn, deposes and says:

          1. I am not a party to the action, am over 18 years of age and am employed by

Skadden, Arps, Slate, Meagher &  Flom LLP, Four Times Square, New York, NY 10036.

          2. On June 2, 2008, I served the following:

- *Notice of Motion,*
- *Opening  Memorandum of Law in Support of Defendants' Joint Motions to Transfer Venue and to Dismiss the Complaint,*
- *Declaration of Michael D. Brooks,*
- *Declaration of Anthony W. Clark,*
- *Declaration of David M. Conn,*
- *Declaration of Daniel M. DiDomenico,*
- *Declaration of John J. Dylik,*
- *Declaration of Christopher G. Filardi,*
- *Declaration of Bruce B. Fischer,*
- *Declaration of Karen R. Garcell,*
- *Declaration of Vincent J. Garcell,*
- *Declaration of Edward W. Gericke,*
- *Declaration of Timothy K. Lewis,*
- *Declaration of Neal R. Martin,*
- *Declaration of Lisa A. Pressler,*
- *Declaration of John M. Remmers,*
- *Affidavit of Steven P. Richman,*
- *Declaration of Christopher J. Stadler,*
- *Declaration of Gary Stewart,*
- *Declaration of Thomas J. Sullivan,*
- *Declaration of Gregory W. Werkheiser,*
- *Declaration of Eric J. Werner; and*
- *Declaration of Michael S. Wong*

by first-class mail by depositing same in a post-paid properly addressed envelope, in an official

depository under the exclusive care and custody of the U.S. Postal Service within the State of

New York upon:

          Kevin C. Walz
          8045 Bainbrook Drive
          Chagrin Falls, OG 44023

David A. Cardillo
23 St. Glory Road
Greenville, PA 16125


_Kenneth J. Horrmann_
Kenneth J. Horrmann

Sworn to before me this
2nd day of June 2008.

Brian E. Keating
Notary Public, State of New York
No. 01KE5009535
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires March 15, 2011