WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore (JS-6031)

633 West Fifth Street, Suite 1900
Los Angeles, California 90071
(213) 620-7700
Craig Averch (Admitted Pro Hac Vice)

*Attorneys for Plaintiff OLD LADDER LITIGATION CO., LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust, <br><br> Plaintiff, <br><br> v. <br><br> INVESTCORP BANK B.S.C., *et al.*, <br><br> Defendants. | Case No. 08 CIV 0876 (RMB)(THK) <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTIONS FOR TRANSFER OF VENUE AND DISMISSAL** |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .....................................................................................2

I.     THE COURT SHOULD DENY THE MOTION TO TRANSFER VENUE..........2

    A.    New York is the Locus of Events Underlying the Complaint ....................3

    B.    The Convenience of Witnesses Favors this District ...................................6

    C.    The Availability of Process to Compel the Attendance of
        Witnesses Favors this District.....................................................7

    D.    The Convenience and Relative Means of the Parties Favors this
        District........................................................................8

    E.    The Interests of Justice Do Not Favor Transfer............................................8

        1.    The Delaware District Court Has Little Familiarity With
            the Issues Framed in the Complaint.................................................8

        2.    The Delaware Bankruptcy Court Has Not, and Will Not,
            Address Matters Relating to the Subject Transactions. ...................9

II.    THIS COURT SHOULD NOT DISMISS ANY CLAIMS PURSUANT
     TO FRCP 12 ......................................................................11

    A.    This Court Has Jurisdiction Over All Defendants ....................................11

    B.    This Court Has Subject Matter Jurisdiction Over All Claims ...................13

    C.    The Court Should Not Dismiss Any Claims Pursuant to Rule
        12(b)(6) .......................................................................14

        1.    Statutes of Limitation Do Not Bar Claims 15-16, 18-22, 25
            and 30..........................................................................15

        2.    Section 546(e) of the Bankruptcy Code Does Not Protect
            Defendants From the Claims for Fraudulent Transfer.
            [Claims 1, 2, 5, 6]..........................................................17

            a.    The Plain Text Belies Defendants' Interpretation. ............18

            b.    The Legislative Intent Belies Defendants' Position...........19

# TABLE OF CONTENTS
(continued)

Page

        **c.**     No "Transfers" Were Made "by or to" a "Financial Institution." ..........................................................20

**3.**     The Bankruptcy Code Does Not Preempt Unjust Enrichment Claims. [Claims 27, 28]...........................21

**4.**     Claims for Deepening Insolvency Are Recognized at Law. [Claims 23, 24].............................................................21

**5.**     The Claims for Actual Fraudulent Transfer Are Properly Pleaded. [Claims 2, 4, 6, 8, 10, 12].................................22

**6.**     The Claims for Post-2003 Constructively Fraudulent Transfers [Claims 7, 9, 11] and Preferential Transfers [Claim 13] Are Properly Pleaded......................................24

**7.**     The Breach of Fiduciary Duty Claims  Include Breach of the Duties of Loyalty and Good Faith and Are Adequately Pleaded. [Claims 15-22]...................................................25

**8.**     The Claims for Breach of Fiduciary Duty and Aiding and Abetting Regarding Fees and Compensation Are Adequately Pleaded. [Claims 19, 22] ............................29

**9.**     The Officers [Claims 15, 16, 19-22] and Werner Family Controlling Shareholders [Claims 14-16, 19-24] Are Valid Defendants to the Claims for Breach of Fiduciary Duties and Aiding/Abetting.................................................30

**10.**    The Claims for Breach of Contract Against Investcorp International and Leonard Green [Claims 25, 26] and for Unjust Enrichment Based on the 2003 Shareholder Cashout and Later Management Fees and Compensation Are Properly Pleaded and Are Not Barred By Agreements. [Claims 27, 28]..............................................................32

**11.**    The Claims Against LM for Fraudulent and Preferential Transfer [Claims 9-13] and Aiding and Abetting [Claim 22] Are Properly Alleged. ...................................................34

**12.**    Claims 29 and 30 Against Murray Devine Are Properly Alleged. ...........................................................................34

CONCLUSION....................................................................35

# TABLE OF AUTHORITIES

Page

## Cases

*A. Esteban & Co., Inc. v. Metro. Transp. Auth.*,
    2002 WL 1059169 (S.D.N.Y. May 24, 2002) ...................................................... 21

*Abercrombie v. Andrew College*,
    438 F. Supp. 2d 243 (S.D.N.Y. 2006) ............................................................... 25

*Allard v. Arthur Andersen & Co. (USA)*,
    924 F. Supp. 488 (S.D.N.Y. 1996) .................................................................... 21

*Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. LaFarge N. Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) .............................................................. 3, 6

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    351 F. Supp.2d 79 (S.D.N.Y. 2004) ....................................................... 19, 22, 23

*Andrew Velez Constr., Inc. v. Consol. Edison Co of N.Y., Inc.*,
    373 B.R. 262 (Bankr. S.D.N.Y. 2007)............................................................... 34

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ................................................................................. 26

*Ayers v. Arabian Am. Oil Co.*,
    571 F. Supp. 707 (S.D.N.Y. 1983) ..................................................................... 8

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
    192 B.R. 73 (S.D.N.Y. 1996)............................................................................. 12

*Barclays Am./Bus. Credit, Inc. v. Boulware*,
    151 A.D.2d 330 (N.Y. A.D. 1989) ..................................................................... 13

*Benefit Trust Life Ins. Co. v. Union Nat'l Bank*,
    776 F.2d 1174 (3d Cir. 1974) ............................................................................ 34

*Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*,
    195 B.R. 971 (Bankr. D. Mass. 1996) ............................................................... 20

*Buckley v. Goldman, Sachs & Co.*,
    2005 WL 1206865 (D. Mass 2005) .............................................................. 18, 19

*Burtch v. Ganz (In re Mushroom Transp. Co.)*,
    382 F.3d 325 (3d Cir. 2004) ....................................................................... 15, 16

**TABLE OF AUTHORITIES**
(continued)

<u>Page</u>

*C.L. Grimes v. Vitalink Commc'ns Corp.*,
   17 F.3d 1553 (3d Cir. 1994) ................................................................. 13

*Cede & Co. v. Technicolor, Inc.*,
   634 A.2d 345 (Del. 1993) .................................................................... 30

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................ 15

*Christy v. Alexander & Alexander of New York Inc In re Finley, Kumble, Wagner, Heine,
   Underberg, Manley, Myerson & Casey)*,
   130 F.3d 52 (2d Cir. 1997) .................................................................. 21

*Conn. Nat'l Bank v. OMI Corp.*,
   687 F. Supp. 111 (S.D.N.Y. 1988) ........................................................ 3

*Crown Paper Co. v. Fort James Corp. (In re Crown Vantage, Inc.)*,
   2006 WL 2348850 (N.D. Cal. Aug. 11, 2006) ....................................... 20

*Diamond Mortg. Corp. of Illinois v. Sugar*,
   913 F.2d 1233 (7th Cir. 1990) ........................................................ 11, 12

*Drobbin v. Nicolet Instrument Corp.*,
   631 F. Supp. 860 (S.D.N.Y. 1986) ....................................................... 26

*DynCorp v. GTE Corp.*,
   215 F. Supp. 2d 308 (S.D.N.Y. 2002) .............................................. 31, 33

*Eclaire Advisor Ltd. as Trustee to Daewoo Int'l Am. Corp.*,
   375 F. Supp. 2d 257 (S.D.N.Y. 2005) .................................................. 22

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
   323 B.R. 857 (Bankr. S.D.N.Y. 2005).................................................. 18

*Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.)*,
   325 B.R. 671 (Bankr. S.D.N.Y. 2005).................................................. 19

*Enron v. Arnold Corp.*,
   317 B.R. 701 (Bankr. S.D. Tex. 2004) ................................................. 10

*eToll, Inc. v. Elias/Savion Adver., Inc.*,
   811 A.2d 10 (Pa. Super. Ct. 2002)....................................................... 35

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
   218 F. Supp. 2d 369 (S.D.N.Y. 2002) .................................................. 13

# TABLE OF AUTHORITIES
(continued)

Page

*Geyer v. Ingersoll Publ'ns Co.*,
    621 A.2d 784 (Del. Ch. 1992) ................................................................. 28

*Glenbrook Leasing Co. v. Beausang*,
    839 A.2d 437 (Pa. Super. Ct. 2003) ........................................................ 17

Granfinanciera, S.A. v. Nordberg,
    492 U.S. 33 (1989) ..................................................................................... 9

*Granite Partners, L.P. v. Bear, Stearns Co. Inc.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) ...................................................... 31

*Harrison III v. Entm't Equities, Inc.*,
    138 B.R. 390 (Bankr. S.D.N.Y. 1992) .................................................... 22

*Hassett v. Zimmerman* (*In re OPM Leasing*),
    32 B.R. 199 (Bankr. S.D.N.Y. 1983) ...................................................... 25

*Houbigant, Inc. v. Dev. Specialists, Inc.*,
    229 F. Supp. 2d 208 (S.D.N.Y. 2002) .................................................... 14

*Hughes v. BCI Int'l. Holdings, Inc.*,
    452 F. Supp. 2d 290 (S.D.N.Y. 2006) .................................................... 24

In re Adams Golf Inc. Sec. Litig.,
    381 F.3d 267 (3d Cir. 2004) .................................................................... 26

*In re Adelphia Commc'ns Corp. v. Bank of Am.*,
    365 B.R. 24 (Bankr. S.D.N.Y. 2007) ...................................................... 31

*In re Ames Dep't Stores, Inc.*,
    306 B.R. 43 (Bankr. S.D.N.Y. 2004) ...................................................... 21

*In re APF Co.*,
    274 B.R. 634 (Bankr. D. Del. 2001) ........................................................ 22

*In re Athos Steel & Aluminum, Inc.*,
    71 B.R. 525 (E.D. Pa. 1987) ............................................................... 27, 32

*In re Cruisephone, Inc.*,
    278 B.R. 325 (Bankr. E.D.N.Y. 2002) .................................................... 12

*In re Dean Witter P'ship Litig.*,
    1998 WL 442456 (Del. Ch. July 17, 1998) ............................................ 15

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Enron,*
316 B.R. 434 (Bankr. S.D.N.Y. 2004) ................................................................. 11, 12

*In re Fruehauf Trailer Corp. v. Lenz,*
250 B.R. 168 (D. Del. 2000) ................................................................. 16

*In re Grafton Partners, L.P.,*
321 B.R. 527 (B.A.P. 9th Cir. 2005) ................................................................. 18, 19, 20

*In re Hardwick Cos.,*
64 B.R. 113 (S.D.N.Y. 1986) ................................................................. 9

*In re Healthco Int'l Inc.,*
208 B.R. 288 (Bankr. D. Mass. 1997) ................................................................. 28

In re Hooker Invs., Inc.,
937 F.2d 833 (2d Cir. 1991) ................................................................. 9

*In re Lionel Corp.,*
24 B.R. 141 (Bankr. S.D.N.Y. 1982) ................................................................. 3, 6

*In re Loranger Mfg. Corp.,*
324 B.R. 575 (Bankr. W.D. Pa. 2005) ................................................................. 21

*In re Main, Inc.,*
239 B.R. 281 (E.D. Pa. 1999) ................................................................. 25, 31

*In re McCrory Corp.,*
160 B.R. 502 (S.D.N.Y. 1993) ................................................................. 2

*In re National Forge Co.,*
344 B.R. 340 (W.D. Pa. 2006) ................................................................. 17

*In re Pillowtex, Inc.,*
304 F.3d 246 (3d Cir. 2002) ................................................................. 14

*In re Randall's Island Family Golf Ctr. Inc.,*
290 B.R. 55 (Bankr. S.D.N.Y. 2003) ................................................................. 24

*In re Teknek, LLC,*
354 B.R. 181 (Bankr. N.D. Ill. 2006) ................................................................. 13

*In re TMI Litig.,*
89 F.3d 1106 (3d Cir. 1996) ................................................................. 15

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Total Containment, Inc.*,
2008 WL 682455 (Bankr. E.D. Pa. 2008) .............................................................. 21

*In re Total Containment, Inc.*,
335 B.R. 589 (Bankr. E.D. Pa. 2005) .................................................................... 27

*In re Tower Air, Inc.*,
416 F.3d 229 (3d Cir. 2005) ......................................................................... 14, 26

*In re Tyson Foods Inc.*,
919 A.2d 563 (Del. Ch. 2007) ........................................................................ 15, 16

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
263 B.R. 406 (S.D.N.Y. 2001) ........................................................................ 18, 19

*Jewel Recovery, L.P. v. Gordon*,
196 B.R. 348 (N.D. Tex. 1996) ................................................................... 18, 19, 20

*Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*,
913 F.2d 846 (10th Cir. 1990) ...................................................................... 18, 19

*Kaiser Steel Corp. v. Pearl Brewing Co.*,
952 F.2d 1230 (10th Cir. 1991) .................................................................... 18, 19

*Koken v. Steinberg*,
825 A.2d 723 (Pa. Commw. Ct. 2003) ................................................................. 35

*Kuhn v. Pac. Mut. Life Ins. Co.*,
37 F. Supp. 102 (S.D.N.Y. 1941) ........................................................................ 14

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004) ...................................................................................... 19

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*,
510 F. Supp. 2d 246 (S.D.N.Y. 2007) .................................................................. 31

*Laventhol, Krekstein, Horwath & Horwath v. Tuckman*,
372 A.2d 168 (Del. 1979) ................................................................................. 16

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972) ............................................................................ 12

*Lippe v. Bairnco Corp.*,
230 B.R. 906 (S.D.N.Y. 1999) ............................................................................ 25

**TABLE OF AUTHORITIES**
(continued)

Page

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*,
    181 F.3d 505 (3d Cir. 1999) ............................................................... 18, 19

*Lynch v. Nat'l Prescription Adm'rs*,
    2004 WL 385156 (S.D.N.Y. 2004)........................................................... 6

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)......................................................................................... 5

*Mariash v. Morrill*,
    496 F.2d 1138 (2d Cir. 1974) .................................................................. 11

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004) .................................................................... 14

*McMullin v. Beran*,
    765 A.2d 910 (Del. 2000) ........................................................................ 28

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430 (1994)............................................................................... 33

*Miller v. Santini*,
    No. 1225, 2007 Phila. Ct. Com. Pl. LEXIS 252 (Phila. Ct. Com. Pl. Sept. 20, 2007) ............ 21

*Mills v. Everest Reinsurance Co.*,
    410 F. Supp. 2d 243 (S.D.N.Y. 2006) .................................................... 24

*Munford v. Valuation Research Corp.In re Munford)*,
    98 F.3d 604 (11th Cir. 1996) ....................................................... 18, 19, 20

*N. Am. Catholic. Educ. Programming Found., Inc. v. Gheewalla*,
    930 A.2d 92 (Del. 2007) .......................................................................... 27

*Nat'l Equip. Rental Ltd. v. Szunkhent*,
    375 U.S. 311 (1964)................................................................................... 5

*Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.)*,
    835 F.2d 1341 (11th Cir. 1988) .............................................................. 13

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
    306 B.R. 746 (S.D.N.Y. 2004)........................................................... 2, 3, 8

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Investcorp*,
    137 F. Supp. 2d 502 (S.D.N.Y. 2001) .................................................... 27

**TABLE OF AUTHORITIES**
(continued)

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Delaware v. Fleet Retail Fin. Group,*
    274 B.R. 71 (D. Del. 2002) ................................................................................ 21

*Official Comm. of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Lattman (In re Norstan Apparel Shops, Inc.),*
    367 B.R. 68 (Bankr. E.D.N.Y. 2007) ........................................................... 18, 19

*Official Comm. of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Lattman In re Norstan Apparel Shops, Inc.),*
    367 B.R. 68 (Bankr. E.D.N.Y. 2007) ................................................................. 18

*Official Comm. Of Unsecured Creditors v. ASEA Brown Boveri, Inc. (In re Grand Eagle Cos., Inc.),* 288 B.R. 484 (Bankr. N.D. Ohio 2003) .................................................. 18, 20

*Orman v. Cullman,*
    794 A.2d 5 (Del. Ch. 2002) ......................................................................... 26, 27

*Pani v. Empire Blue Cross Blue Shield,*
    152 F.3d 67 (2d Cir. 1998) ......................................................................... 14, 26

*Patrick v. Allen,*
    355 F. Supp. 2d 704 (S.D.N.Y. 2005) ........................................................ 15, 26

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC,*
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) ........................................................ 25, 31

Pereira v. Farace,
    413 F.3d 330 (2d Cir. 2005) ............................................................................. 9

*Pogostin v. Rice,*
    480 A.2d 619 (Del. 1984) ............................................................................... 26

*Raines v. Switch Mfg. Corp.,*
    No. 96 Civ. 1361(JFK), 1996 WL 413720 (S.D.N.Y. July 24, 1996) ...................... 6

*Rapidigm Inc. v. ATM Mgmt. Servs. LLC,*
    63 Pa. D. & C. 4th 234 (Pa. Com. P. 2003) ...................................................... 35

*Resolution Trust Corp. v. Farmer,*
    865 F. Supp. 1143 (E.D. Pa. 1994) .................................................................. 16

Ross v. Bernhard,
    396 U.S. 531 (1970) ......................................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*S.E.C. v. Unifund Sal,*
  910 F.2d 1028 (2d Cir. 1990) ................................................ 12

*Seitz v. Detweiler, Hershey & Assoc., P.C. (In re Cit-X Corp.),*
  448 F.3d 672 (3d Cir. 2006) ................................................ 21

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),*
  403 F.3d 42 (2d Cir. 2005) ................................................ 31

*Solow v. Stone,*
  994 F. Supp. 173 (S.D.N.Y. 1998) ................................................ 31

*Solutia Inc v. FMC Corp.,*
  2004 WL 1661115 (S.D.N.Y. 2004) ................................................ 9

*Thompson v. Glenmede Trust Co.,*
  1993 WL 197031 (E.D. Pa. June 8, 1993) ................................................ 35

*Toy Biz, Inc. v. Centuri Corp.,*
  990 F. Supp. 328 (S.D.N.Y. 1998) ................................................ 3, 6

*United States v. Gilboe,*
  684 F.2d 235 (2d. Cir. 1982) ................................................ 12

*Van Brunt v. Rauschenberg,*
  799 F. Supp. 1467 (S.D.N.Y. 1992) ................................................ 35

*Vtech Holdings Ltd. v. Pricewaterhouse Coopers LLP,*
  348 F. Supp. 2d 255 (S.D.N.Y. 2004) ................................................ 31

*Wieboldt Stores, Inc. v. Schottenstein,*
  131 B.R. 655 (N.D. Ill. 1991) ................................................ 18, 20

*Wight v. BankAmerica Corp.,*
  219 F.3d 79 (2nd Cir. 2000) ................................................ 22, 31, 34

*William Iselin & Co., Inc. v. Boardwalk Regency Corp.,*
  703 F. Supp. 1084 (S.D.N.Y. 1989) ................................................ 22

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) ................................................ 12

*Young v. Higbee,*
  324 U.S. 204 (1945) ................................................ 19

## TABLE OF AUTHORITIES
(continued)

Page

*Zahn v. Yucaipa Capital Fund*,
  218 B.R. 656 (D.R.I. 1998) .................................................................................. 20


**Statutes**

11 U.S.C. § 546(e) ............................................................................ 17, 18, 19, 20, 21

11 U.S.C. § 548(a)(1)(A) ........................................................................................ 17

11 U.S.C. § 741(8) ............................................................................................ 17, 18

15 Pa. Cons. Stat. § 512(c) ...................................................................................... 30

28 U.S.C. § 1334 ...................................................................................................... 11

28 U.S.C. § 1404(a) ................................................................................................... 2

28 U.S.C. § 1412 ....................................................................................................... 2

28 U.S.C. § 157(c)(1) ................................................................................................ 9

28 U.S.C. § 157(e) ..................................................................................................... 9

N.Y. C.P.L.R. § 213(2) (2007) ............................................................................... 17


**Rules**

Fed. R. Civ. P. 12 ..................................................................................................... 11

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 14

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 14

Fed. R. Civ. P. 8 ....................................................................................................... 30

Fed. R. Civ. P. 8(a) ............................................................................................. 24, 25

Fed. R. Civ. P. 8(c) .................................................................................................. 14

Fed. R. Civ. P. 9(b) ................................................................................. 22, 24, 25, 30

# TABLE OF AUTHORITIES
### (continued)

<u>Page</u>

**Secondary Authorities**

Neal M. Garfinkle, *No Way Out: §546(e) is No Escape for the Public Shareholder of a Failed LBO*, 1991 Colum. Bus. L. Rev. 51 (1991) ........................................................................ 20

Christopher Redd, *Treatment of Securities and Derivatives Transactions in Bankruptcy*, 24 Am. Bankr. Inst. J. 36, 56 (Sept. 2005)........................................................................................ 19

Gerald K. Smith & Frank R. Kennedy, *Fraudulent Transfers and Obligations:  Issues of Current Interest*, 43 S.C. L.Rev. 709, 751-67 (1992) ........................................................................ 20

## PRELIMINARY STATEMENT

Fundamentally, the pending motions raise only two issues for the Court to address: (1) should this action proceed in New York or Delaware, and (2) if it is to proceed in New York, what claims are properly pleaded against which Defendants.[1]

With respect to venue, multiple legitimate reasons exist for this action to proceed here, all of which are catalogued in Section I below and in the accompanying declaration with exhibits thereto. For their part, Defendants still have not provided any legitimate basis for transferring this action to Delaware. They have not identified a single Defendant, non-party fact witness with material knowledge of the subject transactions, or relevant document located in that district. Nor have they established that any court in Delaware has, or will have, involvement with the complex issues surrounding the claims framed in the Complaint or the ability to compel any material witness to testify there. At best, Defendants simply ask the Court to respect the prior choice of forum made by the insider Defendants, and transfer this action to a court which has other (but not all) litigation involving Old Werner. Yet, the prior strategic decision to cause Old Werner to file bankruptcy in Delaware neither controls the Court's analysis nor changes the focus of this case. This case is not about Old Werner's business operations (the manufacture and sale of ladders that did not occur in Delaware in any event), but rather on three financial transactions: $330 million paid out to shareholders in 1997, $150 million paid out to shareholders in 2003, and a 2005 refinance of Old Werner's debt. All of those activities substantially took place in this district, where this action should remain.

On the issues of proper claims and parties, the Court indisputably has personal

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint. On June 12, 2008, Plaintiff filed a First Amended Complaint naming numerous additional defendants. "Defendants" here does not include those new parties.

1

jurisdiction over all Defendants and subject matter jurisdiction over all claims pleaded in the

Complaint.  Those U.S. resident Defendants who raise a jurisdictional defense simply have the

law wrong - - if they are resident in the U.S., they are subject to an action in this Court.  As for

the non-U.S. Defendants, they are subject to specific jurisdiction in this Court, and all but a few

have irrevocably consented in writing to jurisdiction here.  Further, as set forth in Section II(C),

the claims pleaded in the Complaint are all pleaded in accordance with state and federal law, and

provide Defendants with ample notice of the claims against them.  In short, the Court should

deny the Motion to Dismiss.

## ARGUMENT

### I.  THE COURT SHOULD DENY THE MOTION TO TRANSFER VENUE

Even when an adversary proceeding is filed outside the court in which an underlying

bankruptcy case was filed, the "strong presumption in favor of a plaintiff's choice of forum"

cancels out any presumption that the venue of the bankruptcy proceeding is the appropriate one.

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 750

(S.D.N.Y. 2004) (denying motion to transfer to venue of bankruptcy); *see also* Defendants'

March 28, 2008 letter to this Court.  Thus, even though Old Werner's bankruptcy case was filed

in Delaware, the Court must still decide this Motion based on traditional transfer factors,

including: the locus of operative facts; the convenience and relative means of the parties; the

convenience of witnesses and the availability of process to compel their attendance; the location

of physical evidence; the familiarity of the court with the applicable law; and the interests of

justice, including trial efficiency.  *Id.* at 749-50.[2]

Here, as is the case in any traditional transfer motion, Defendants bear the burden of

---

[2] Whether a motion to transfer is brought under 28 U.S.C. Section 1412 or 1404(a), the standards
are virtually identical.  *Id.*, citing *In re McCrory Corp.*, 160 B.R. 502, 507 n 2 (S.D.N.Y. 1993).

proving that venue should be transferred.  *Heyman*, 306 B.R. at 749.  They "must establish not merely that the existing forum is inconvenient, but that the balance of convenience weighs clearly and substantially in favor of the proposed transfer."  *In re Lionel Corp.*, 24 B.R. 141, 143 (Bankr. S.D.N.Y. 1982) When the defendant fails to carry this burden, "the plaintiff's choice of forum is not to be disturbed."  *Id.  See also Conn. Nat'l Bank v. OMI Corp.*, 687 F. Supp. 111, 113 (S.D.N.Y. 1988) (no transfer when factors equal); *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 330-31 (S.D.N.Y. 1998) (shifting inconveniences not enough).  That burden is "even greater where there is a material connection or significant contact between the forum state and the events allegedly underlying the claim."  *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007).

Here, not only is New York <u>an</u> appropriate venue, it is the <u>most</u> appropriate venue for this proceeding, and Old Ladder's decision to file here should not be disturbed.

### A.  New York is the Locus of Events Underlying the Complaint

The location of operative events is a "primary factor" in determining where the "center of gravity" rests and whether to transfer venue.  *See, e.g., id.* at 485.  Here, New York City is indisputably the center of gravity for each of the three financial transactions at issue.[3]

The 1997 Shareholder Cashout, amounting to more than $330 million in fraudulent transfers, was negotiated and accomplished by professionals in New York, including lawyers, tax advisors, financial advisors, risk management consultants, lenders, agents used to facilitate the loans and distribution of debt instruments, and investment banking firms.  (Att. A, Exs. 1-20). The closing of the 1997 transaction occurred at Gibson Dunn & Crutcher LLP's New York

---

[3]  The primary documents evidencing the connections between this case and New York (as well as jurisdictional contacts with the U.S. discussed in Section II(A)) are described on **Attachment A** ("**Att. A**"), with Exhibits 1-73 thereto, attached to the Declaration of Craig Averch dated July 8, 2008, filed concurrently.

office.  (Att. A, Ex. 7).  Old Werner's management and advisors repeatedly met Investcorp and

its legal advisors in New York to negotiate the terms of the transaction.  (Att. A, Exs. 1-5).

Investcorp purchased Old Werner through funds transferred from its account at Chase Bank in

New York to Old Werner's account at Chase Bank in New York.  (Att. A, Ex. 6).  The remaining

funds for the 1997 transaction were secured through the 1997 Senior Credit Facility, which was

governed by New York law and specified venue in New York, and through bonds governed by

New York law and initially purchased largely by New York entities.  (Att. A., Exs. 11-20).

Thus, the funds used to pay the distributions and fees at issue, were transferred from Bankers

Trust Co. and Chase Securities, Inc., both in New York, to Old Werner's account at Chase Bank

in New York.  (Att. A, Ex. 6).  The distributions were initially paid from Old Werner's account

at Chase Bank in New York to other accounts at Chase Bank in New York.  *Id.*  Old Werner also

paid $17 million in fees to Investcorp entities from its account at Chase Bank in New York to

Investcorp International, Inc.'s and Invifin S.A.'s accounts at Chase Bank in New York.  *Id.*

The 2003 Shareholder Cashout, consisting of more than $150 million in fraudulent

transfers, was also negotiated and accomplished by numerous professionals located in New York

and the transaction closed in New York.  (Att. A, Exs. 21-42).  The May 7, 2003

"Recapitalization and Stock Purchase Agreement" (the "2003 Agreement"), authorized the 2003

Shareholder Cashout described in the Complaint.  (See, e.g., Att. A, Ex. 31 Background and

Article II).  Additionally, in the 2003 Agreement, all shareholders specifically waived in writing

the right to make any challenge to a New York venue as follows:

> The parties hereby irrevocably submit to the jurisdiction of the courts of the State
> of New York and the Federal courts of the United States of America located in the
> Borough of Manhattan, the City of New York solely in respect of the
> interpretation and enforcement of the provisions of this Agreement and the
> transactions contemplated hereby and hereby waive, and agree not to assert, as a
> defense in any action, suit or proceeding for the interpretation or enforcement

4

> hereof, that it is not subject thereto or that such action, suit or proceeding may not
> be brought or is not maintainable in said courts or that the venue thereof may not
> be appropriate…and the parties hereto irrevocably agree that all claims with
> respect to such action or proceeding shall be heard and determined in such courts.

(Att. A, Ex. 31, § 10.5).  Given that the 2003 fraudulent transfer claims (among others) arise

directly from the "transactions contemplated" by the 2003 Agreement, venue and jurisdiction are

not only proper in this Court, but most of the Defendants explicitly consented to them and should

be held to that consent.  *See M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10-12 (1972) (citing

*Nat'l Equip. Rental Ltd. v. Szunkhent*, 375 U.S. 311, 315-16 (1964))**.**  Further, most of the $150

million in dividends were paid from Old Werner's account at JP Morgan Chase Bank in New York

(an account opened explicitly to consummate the distribution) to the Investcorp entities' accounts

at Chase Bank in New York.  (Att. A, Exs. 27-30).   Dividends paid to many other Defendants

were paid to accounts at New York banks also.[4]  (Att. A, Ex. 30).

   Numerous additional factors show that Defendants purposely availed themselves of the

benefits and protections of this district.  For example, Old Werner's Board of Directors held

meetings in New York, including meetings that will be material to this proceeding, at least once

a year, every year, from 1998 to 2006, and its shareholders met in New York at least in 2000-

2003, and 2005.  (Att. A, Exs. 5, 26, 50-71).  Additionally, the management agreement between

Old Werner and Investcorp relating to management from 2003 onward -- also a subject of this

litigation -- was negotiated and executed, at least in part, in New York and is governed by New

York law.  (Att. A, p.17; Ex. A to Clark Decl.).

   In the Motion, Defendants simply characterize these New York connections as

"commonplace." (Motion, p. 7).  However, Defendants do not attempt to claim that Delaware is

---

[4] The material aspects of the 2005 Refinancing also took place in this District through
professionals located here.  The operative agreement was negotiated and executed, at least in
part, in New York, and it is governed by New York law.  (Att. A, Exs. 45-47).

actually the locus of <u>any</u> events central to the financial transactions, "commonplace" or otherwise. Defendants' declarations fail to tie to Delaware a single significant event relevant to this action except for the filing of Old Werner's chapter 11 petition. In fact, Director Thomas Sullivan and Director/Officer Eric Werner admit directors' meetings occurred in New York and states other than Delaware. (Werner Decl. ¶ 37, p.5; Sullivan Decl. ¶ 3, pp. 1-2). Mr. Werner further admits the 1997 Recapitalization Agreement was negotiated, in part, in New York; the directors meetings recommending the 1997 transaction occurred, in part, in New York; and the 2003 recapitalization was negotiated, in part, in New York. (Werner Decl. ¶ 24-25, 40).

Based on the foregoing, the center of gravity factor weighs heavily in favor of New York.

### B. The Convenience of Witnesses Favors this District

Some courts have found the convenience of witnesses to be the most important factor in venue analysis. *See, e.g. Am. S.S.*, 474 F. Supp. 2d at 482-83; *Toy Biz,* 990 F. Supp. at 331. In assessing whether this factor favors transfer, "the court generally considers only those witnesses residing in the proposed transferee district." *Id*. at 483. Further, the "moving party must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Lynch v. Nat'l Prescription Adm'rs*, 2004 WL 385156 at *2 (S.D.N.Y. 2004); *see also Lionel*, 24 B.R. at 143.

Defendants fail to meet there threshold requirements in any respect. They do not identify a single witness who resides in Delaware whose testimony would be relevant here. With respect to the statements by numerous non-Delaware Defendants that they would prefer not to appear in New York, the Court need not defer to their unexplained aversion to New York. *Raines v. Switch Mfg. Corp.*, No. 96 Civ. 1361(JFK), 1996 WL 413720 at *3 (S.D.N.Y. July 24, 1996) (dismissing argument that probable witnesses favored an East Coast venue because those witnesses were located in neither the transferee nor the current forum).

6

In contrast to Delaware, numerous Defendants are located in this District.[5]  Additionally, numerous witnesses employed at key third-party institutions work in New York and reside in New York or within the subpoena powers of this Court.[6]

Given the foregoing, this factor also weighs heavily in favor of New York.

### C.  The Availability of Process to Compel the Attendance of Witnesses Favors this District

In essence, although Defendants (as transferees) reside throughout the U.S., the material witnesses in this case reside primarily in New York and Pennsylvania.  The District Court in Delaware lacks subpoena power over many of these witnesses, in that the courthouse in Wilmington, Delaware is 120 miles from Manhattan, and 390 miles from Greenville, Pennsylvania (where Old Werner operated).  In contrast, this Court has subpoena power over at least the New York witnesses.  Further, the few entities subject to service in Delaware are also subject to service here (where their principal places of business are) and the actual witnesses from those entities reside in or around New York.  (See Motion, p. 9, n.9).  Recognizing the infirmity of their position, Defendants attempt to flip the burden by asserting that Old Ladder has

---

[5] These Defendants include Investcorp International, Inc.; Loughlin Meghji & Co., Inc.; James Baker; Thomas Sullivan; Mamoun Askari; Edward Pollack; Karen Lynn Moseska; Eli Berk-Rauch; Ellen Berk-Rauch; Hanna Berk-Rauch; Jessica Joubert; Linda Joubert; Mindy Werner Alter; Noel Berk-Rauch; Rauch Trust (Aleena Shapiro – Trustee); Suzanne Schwartz; Sylvia S. Kaplan; Estate of Max Hanfling; and Werner-Alter, LLC (Mindy Werner Alter-Manager). (Summons, filed Jan. 24, 2008)

[6] These potential witnesses include Chase Manhattan Bank; Chase Securities, Inc.; Goldman Sachs & Co.; Goldman Sachs Credit Partners L.P.; Bankers Trust Co.; IBJ Schroder Bank & Trust Co.; Depository Trust Co.; BT Alex, Brown, Inc.; Gibson, Dunn & Crutcher LLP; Cravath, Swaine & Moore; Coopers & Lybrand; Marsh & McLennan, Inc.; Skadden, Arps, Slate Meagher & Flom LLP; Baker & McKenzie; Salomon Smith Barney; JP Morgan; Citigroup; Simpson, Thatcher & Bartlett; Mackenzie Partners, Inc.; Tri-Artisan Partners LLC; Credit Suisse First Boston; Morgan Stanley; Willkie Farr & Gallagher LLP; JP Morgan Chase Bank; Alvarez & Marsal; Rothschild, Inc.; Jeffries & Co., Inc.; Harbinger Capital Partners; Weil, Goshal & Manges; and Murray Capital.  See Att. A at Exs. 1, 11, 16, 21, 24, 33, 43-44, 73 for details regarding these professionals.

not shown that any witnesses will refuse to testify in Delaware. Once again, they have the analysis backwards. The burden is on <u>Defendants</u> to establish that this Court cannot compel material witnesses to attend depositions and trial in this District and that the Delaware court can. Here, Defendants failed to make that showing, and this factor thus supports maintaining the action in New York.

### D. The Convenience and Relative Means of the Parties Favors this District

Without reiterating the reasons why New York is the appropriate venue, Defendants have not offered any legitimate, material reason why Delaware is more convenient than New York. At best, Defendants argue that Delaware is preferable for Delaware counsel to certain of the Defendants. Counsel preference, however, is irrelevant in the analysis. *Ayers v. Arabian Am. Oil Co.*, 571 F. Supp. 707, 709 n.1 (S.D.N.Y. 1983).

### E. The Interests of Justice Do Not Favor Transfer

At heart, Defendants rest their Motion on a single factor – the "interests of justice." Their argument in that regard centers on their assertion that the Delaware Bankruptcy Court has had and will have material involvement in the facts and circumstances described in the Complaint and therefore should handle this proceeding as well. (Motion, p.4). As an initial matter, that assertion ignores that a plaintiff's choice of venue in an adversary proceeding overrides any presumption that the Bankruptcy Court is the appropriate forum for all adversary proceedings. *Heyman*, 306 B.R. at 750. In any event, Defendants' factual premises are materially flawed.

#### 1. The Delaware District Court Has Little Familiarity With the Issues Framed in the Complaint.

Defendants' assertion that the Bankruptcy Court has knowledge of the facts and circumstances of this action is a red herring. First, even if this case were transferred to Delaware, the Bankruptcy Court would not try it. Because Old Ladder seeks legal remedies in

8

this action, it is entitled to a jury trial on substantially all of its claims.[7]  Under 28 U.S.C. §

157(e), a bankruptcy judge may preside over a jury trial only by consent of all parties.  Due to

the complexity of the matters at issue and the need to have access to a court well-versed in jury

issues, Old Ladder will not consent to a jury trial in the Bankruptcy Court.  Thus, were this

action transferred to Delaware, it would be tried in the district court.  That court, however, has no

familiarity with the Old Werner bankruptcy case, and would have far less knowledge of the case

than this Court already has.

Moreover, beyond the jury trial issue, half of Old Ladder's claims are non-core, "related

to" claims that would necessarily result in a waste of judicial resources were they first heard by

the Bankruptcy Court.  That court's authority to adjudicate non-core claims is limited, absent

consent of the parties, to the issuance of non-binding findings of fact and conclusions of law for

review by the district court.  28 U.S.C. § 157(c)(1).  On review, the district court would therefore

be obligated to consider matters of law *de novo*, and independently assess the factual issues

presented.  *See In re Hardwick Cos.*, 64 B.R. 113, 119 (S.D.N.Y. 1986).  Where non-core

matters are involved, "unnecessary costs [can] be avoided by a single proceeding in district

court."  *Solutia Inc v. FMC Corp.*, 2004 WL 1661115, at *2 (S.D.N.Y. 2004).  As such, there is

no judicial advantage in having this matter transferred to the Delaware Bankruptcy Court.

## 2.  The Delaware Bankruptcy Court Has Not, and Will Not, Address Matters Relating to the Subject Transactions.

Even if the Bankruptcy Court could be involved in pretrial activities in this action,

Defendants have placed near total reliance on that Court's involvement in other pending

---

[7] *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (fraudulent conveyance action); *Ross v. Bernhard*, 396 U.S. 531 (1970) (claims for breach of contract and gross negligence, among others); *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005) (trustee's breach of fiduciary duty claim against the debtor's former officers and directors); *In re Hooker Invs., Inc.,* 937 F.2d 833 (2d Cir. 1991) ("an action to recover a monetary preference").

9

preference and fraudulent conveyance actions as the reasons why this action should proceed there. That reliance is far too simplistic. First, in almost every chapter 11 case, garden variety preference and fraudulent conveyance actions are brought in the bankruptcy court. As a practical matter though, few cases present billion-dollar fraudulent conveyance actions which require a court's inquiry into material disputed facts relating to valuation, financial projections, management and shareholder misconduct and fraud. By definition, an action such as this requires an individualized forum analysis and should be brought in the right court, not the default court. In fact, in those chapter 11 cases which generate massive fraudulent conveyance suits, the trial court can proceed in a district other than the "home" court. *See*, *e.g.*, *Enron v. Arnold Corp.*, 317 B.R. 701 (Bankr. S.D. Tex. 2004). Second, the vast majority of the actions pending in the Bankruptcy Court only deal with transfers made within 90 days of the bankruptcy filing, during which there is a presumption of insolvency. Given that Old Werner failed to make any distribution of assets (other than the right to recover in litigation) on as much as a billion dollars of claims by unsecured creditors, it is extremely unlikely that solvency in that 90-day period will be a material issue in the preference cases. Moreover, a substantial number of Old Ladder actions are pending in courts other than the Bankruptcy Court.[8]

      Finally, Defendants' assertion that Old Ladder is forum shopping is not only factually untrue - - this action was filed here because it belongs here - - but ignores the prior strategic behavior of those Defendants who were employed as fiduciaries by Old Werner. The only reason a bankruptcy proceeding exists in Delaware is that insider Defendants <u>chose</u> to file there. At filing, Old Werner's sole connection to Delaware was that one of its holding corporations was formed there. It certainly had no business operations there. Defendants have provided no

---

[8] A list of cases pending in courts other than Delaware is attached to the Averch Declaration as Exhibit B.

authority for the proposition that Old Werner or its creditors should have to accede blindly to the

forum choice made by those insider Defendants.  Indeed, the interests of justice cannot be served

by allowing insiders to deny a plaintiff its right to choose the most appropriate forum by

strategically filing their own action in an inappropriate forum.

This final factor does not support transfer to Delaware.

## II.  THIS COURT SHOULD NOT DISMISS ANY CLAIMS PURSUANT TO FRCP 12

On the assumption that this Court will retain venue, the Motion then sets forth a

cavalcade of purported reasons to dismiss various Defendants and claims under FRCP 12.  None

are winning reasons, and all aspects of the Rule 12 motion should be denied.[9]

### A.  This Court Has Jurisdiction Over All Defendants

A subset of Defendants have argued that this Court lacks personal jurisdiction over them

and have therefore moved to dismiss under Rule 12(b)(2).  With respect to the U.S. resident

Defendants, any district court, including this one, has jurisdiction to hear claims brought under

section § 1334 of title 28, as the "sovereign" exercising its authority is the U.S., not a state.

*Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990) (Bankruptcy

Rule 7004, authorizing nationwide service of process, applies to non-core, related proceedings,

the sovereign exercising jurisdiction is the U.S., and state minimum contacts analysis is

inapplicable); *In re Enron*, 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004) ("only a federal

'minimum contacts' test is required"); *In re J.T. Moran Financial Corp.*, 124 B.R. 931, 941-44

(S.D.N.Y. 1991) (following *Diamond* and rejecting the argument that nationwide service of

process should apply only to proceedings in the bankruptcy court)  *Mariash v. Morrill*, 496 F.2d

1138, 1143 (2d Cir. 1974) ("minimal contacts" present where the defendants reside in the U.S.).

---

[9] Old Ladder has worked with Defendants to accommodate meritorious requests to dismiss
Defendants or claims, and has agreed to dismiss certain Defendants.  See docket no. 106.

With respect to the foreign Investcorp Defendants, the analysis is more complex, but the conclusion is the same. First, the Investcorp Defendants concede that this Court has general jurisdiction over Investcorp International, Inc., Investcorp S.A., and Investcorp Bank B.S.C. (Motion, p. 24). Second, this Court has specific jurisdiction over 25 additional Investcorp Defendants who were direct recipients of the transfers at issue because those Defendants have minimum contacts with the U.S. in connection with the subject transactions. *Diamond Mortg.*, 913 F.2d at 1244; *In re Enron*, 316 B.R. at 444. Specifically, a foreign defendant exposes itself to jurisdiction by causing an effect in the U.S. by a foreign act and the "conduct and connection with the [U.S.] are such that he would reasonably anticipate being haled into court there." *S.E.C. v. Unifund Sal*, 910 F.2d 1028, 1033 (2d Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *In re Cruisephone, Inc.*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002) (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972)).

As alleged, the Investcorp Defendants directly targeted the U.S. by purchasing a controlling interest in Old Werner, a U.S. corporation, exercising control over it, and causing it to transfer tens of millions of dollars to themselves to the detriment of the company and U.S. creditors that have over $1 billion in unpaid claims. (¶ 43-45, 48, 51, 60, 74, 82, 119-24, 127, 136-40, 142, 220-24). A long line of authority exists allowing a U.S. court to exercise jurisdiction over foreign defendants in cases with fewer contacts than those existing here. *See, e.g., United States v. Gilboe*, 684 F.2d 235, 238 (2d. Cir. 1982) (transfer of funds from Manhattan banks to accounts in the Bahamas); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 192 B.R. 73, 79-80 (S.D.N.Y. 1996) (jurisdiction because "the proceeds of accounts receivable, on instructions from [a foreign entity], passed through [the foreign entity's]

LOS ANGELES 742426 (2K)

New York clearing account"); *Barclays Am./Bus. Credit, Inc. v. Boulware*, 151 A.D.2d 330

(N.Y. A.D. 1989) (purposeful availment by defendant's appointment of an agent in New York

for the purpose of entering into a financing agreement); *Nordberg v. Granfinanciera, S.A. (In re*

*Chase & Sanborn Corp.)*, 835 F.2d 1341, 1345-47 (11th Cir. 1988) (transfers "were made from

debtor's U.S. bank accounts in New York and Miami in U.S. currency, to the Miami bank

accounts of each defendant.  Sufficient contacts exist in this case with the entire U.S. and with

the forum state") *rev'd on other grounds*, 492 U.S. 33 (1989); *In re Teknek, LLC,* 354 B.R. 181,

199 (Bankr. N.D. Ill. 2006) (causing the withdrawal of money from an LLC operating in the

forum established specific jurisdiction); *C.L. Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553,

1559-60 (3d Cir. 1994) ("stock ownership alone suffices for 'specific jurisdiction'" and

surrendering shares to a company constituted purposeful availment).

 Moreover, it is somewhat astonishing that, despite the issue having been raised before

Magistrate Judge Katz, the Investcorp Defendants failed to apprise this Court of the agreements

that they signed in connection with the two major transactions at issue.  All 25 Investcorp

Defendants that received transfers in 2003 are parties to a written agreement in which they

submitted to jurisdiction in the U.S. (Att. A, Ex. 31; see section 11(A)).  Similarly, in the 1997

Recapitalization Agreement, 16 Investcorp Defendants submitted to jurisdiction in the U.S.  (Att.

A, Ex. 7).

 Notwithstanding the foregoing, if the Court believes additional evidence would be helpful

on the jurisdictional contacts issue, it should order those Defendants who have asserted the

defense to submit to limited discovery.  *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218

F. Supp. 2d 369, 387 (S.D.N.Y. 2002).

### B.  This Court Has Subject Matter Jurisdiction Over All Claims

 Loughlin Meghji & Co., Inc. ("LM") has moved to dismiss Claim 13 pursuant to Rule

12(b)(1) on the theory that this Court lacks subject matter jurisdiction to hear that Claim.  LM's

reliance on *In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2002) to argue that the Bankruptcy

Court's approval of Old Werner's retention of LM <u>necessarily</u> determined that LM did not

receive any prepetition avoidable transfers, is misplaced.  *Pillowtex* held only that, "*when there

has been a facially plausible claim of a substantial preference",* the court cannot conditionally

approve the retention pending a later determination of the preference issue.  *Id.* at 255 (emphasis

added).  Here, even if the Bankruptcy Court had determined (which it did not) that there was no

prepetition fraudulent conduct by LM, that would not restrict this Court's subject matter

jurisdiction.  At best, it would provide a *res judicata* defense to be asserted by LM in an

answer.[10]  To be clear, though, unlike *Pillowtex*, no evidence exists here that the Bankruptcy

Court ever considered whether LM had received any prepetition avoidable transfers - - neither

Old Werner's application to employ LM nor the Court's order approving it mentions claims

against LM, nor did any party litigate that issue.  The Bankruptcy Court, thus, was not required

to, and did not, make any determination that would preclude this Court from acting against LM.

## C.  The Court Should Not Dismiss Any Claims Pursuant to Rule 12(b)(6)

A 12(b)(6) motion may be granted with respect to a claim for relief "only where it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that

would entitle him to relief."  *McKenna*, 386 F.3d at 436.  Courts may also consider documents

incorporated into the complaint and judicially noticeable matters, but a "plaintiff's *reliance* on

---

[10] *See, e.g.,* Fed. R. Civ. P. 8(c); *McKenna v. Wright, 386 F.3d 432, 435 (2d Cir. 2004)*; *Kuhn v. Pac. Mut. Life Ins. Co.*, 37 F. Supp. 102, 105 (S.D.N.Y. 1941) (affirmative defenses are "properly interposed in an answer...and cannot be availed of upon a motion to dismiss under Rule 12(b)").  Further, a defendant may raise an affirmative defense in a 12(b)(6) motion only when the facts supporting the defense appear on the face of the complaint.  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also McKenna*, 386 F.3d at 436; *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 220 (S.D.N.Y. 2002) (defense of res judicata not available); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).

14

the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document…; mere notice or possession is not enough." *Patrick v. Allen*, 355 F. Supp. 2d 704, 709 (S.D.N.Y. 2005) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Here, Defendants fail to meet their burdens.

### 1.  Statutes of Limitation Do Not Bar Claims 15-16, 18-22, 25 and 30.

Defendants' arguments are substantially devoted to the assertion that Pennsylvania and Delaware's statutes of limitation bar Claims 15-16, 18-22, 25 and 30, on the theory that the limitation period with respect to those claims expired prior to Old Werner's chapter 11 filing.[11] Even assuming that Pennsylvania or Delaware law applies, Defendants fail to address the tolling principles that will preclude the running of those statutes.

Under Pennsylvania's discovery rule, a statute of limitations does not begin to run until the plaintiff reasonably knows, or should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.  *In re TMI Litig.*, 89 F.3d 1106, 1116 (3d Cir. 1996).  In the context of a fiduciary, "it may take a 'smoking gun' to excite searching inquiry." *Burtch v. Ganz* (*In re Mushroom Transp. Co.*), 382 F.3d 325, 343 (3d Cir. 2004).  Similarly, in Delaware, the statute will not run where it was practically impossible for a plaintiff to discover a claim, and "[b]lameless ignorance" may be established by showing "justifiable reliance."  *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *18-20 (Del. Ch. July 17, 1998) (in the context of an expert).  The statute is also tolled when a defendant has fraudulently concealed material facts or led the plaintiff away from the truth.  *In re Tyson Foods Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

---

[11] Defendants seem to have conceded that, to the extent the relevant limitations period did not expire prior to June 12, 2006, the claims are now timely given the tolling provided in Section 108 of the Bankruptcy Code.  In that regard, they have abandoned their earlier arguments raised in correspondence with the Court that the limitations period on avoidance actions had run.

15

Pennsylvania and Delaware also allow equitable tolling if the plaintiff could not, through reasonable diligence, have discovered essential information or where the plaintiff has reasonably relied upon the competence and good faith of a fiduciary. *Burtch*, 382 F.3d at 338-39; *Tyson Foods*, 919 A.2d at 585. A complaint invokes equitable tolling by alleging: (1) a fiduciary relationship; (2) actionable self-dealing; and (3) lack of inquiry notice. *In re Fruehauf Trailer Corp. v. Lenz*, 250 B.R. 168, 193 (D. Del. 2000). Moreover, a fiduciary who has engaged in fraudulent self-dealing cannot use the statute as a shield under Delaware law. *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, 372 A.2d 168, 170 (Del. 1979).

Here, the Complaint alleges facts establishing that the fiduciaries engaged in fraudulent self-dealing (¶ 105, 114, 124, 127-30); that they repeatedly made false representations to lenders and bondholders regarding Old Werner's financial prospects and concealed material adverse information regarding customers (¶ 95, 106-09, 111-13, 116, 118); that they wasted millions of dollars buying covenant waivers from lenders to further conceal Old Werner's financial problems and refinancing debt to stall filing bankruptcy until one day after the statute would have run – the very statute Defendants now attempt to hide behind. (¶ 168, 183-85, 187, 192, 194, 210, 213, 217). As pleaded, Old Werner's creditors were ignorant of, and had no reason to question, Defendants' actions and were unaware of Old Werner's true financial condition for a substantial portion of the limitation period. (¶ 95, 106-09, 111-13, 116, 118, 479-80, 497-98, 522(i)). Defendants should not be allowed to avoid liability by attempting to run out the clock on claims against them, and the relevant statutes must be extended to prevent inequity.

Finally, the doctrine of adverse domination tolls the statute because there was no informed but not culpable person who was in a position to induce Old Werner to initiate the Claims. *Resolution Trust Corp. v. Farmer*, 865 F. Supp. 1143, 1156-58 (E.D. Pa. 1994). Those

persons or entities with knowledge of Old Werner's true financial state and standing to initiate

suit were either (1) breaching their fiduciary duties or (2) aiding and abetting fiduciaries'

breaches. (¶ 469-70, 480, 486-87, 499, 510, 516-19, 524, 526, 535, 548, 559).

In light of the foregoing tolling doctrines, all of the challenged claims were timely filed.[12]

### 2. Section 546(e) of the Bankruptcy Code Does Not Protect Defendants From the Claims for Fraudulent Transfer. [Claims 1, 2, 5, 6]

Beyond statutes of limitations defenses, Defendants' other primary challenge centers on

Section 546(e) of the Bankruptcy Code.  Pursuant to that section, "the trustee may not avoid a

transfer that is a . . . settlement payment . . . made by or to a . . . financial institution… except

under section 548(a)(1)(A) of this title [intentionally fraudulent transfers]."  *Id.* (emphasis

added).  Section 741(8) of the Code provides that "settlement payment" means "any settlement

payment commonly used in the securities trade."  11 U.S.C. § 741(8).

According to the Motion, Defendants seek to use Section 546(e) to bar all fraudulent

conveyance claims (both state and federal) against them on the basis that distributions in the

1997 and 2003 transactions were paid by wire transfer from Old Werner's bank accounts to

theirs.  (Motion, p. 11).  In so doing, Defendants ignore Section 546(e)'s inapplicability on its

face to claims for intentional fraudulent transfer and also attempts to create the impression that

courts in this Circuit are outliers in rejecting an application of Section 546(e) to bar constructive

fraudulent transfer claims against shareholders of private companies as part of leveraged buyouts

---

[12] For the same reasons, the statute is extended for Claims 18 and 30.  *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 441 (Pa. Super. Ct. 2003) (professional negligence); *In re National Forge Co.*, 344 B.R. 340, 375-76 (W.D. Pa. 2006) (unlawful dividend/unlawful distribution). With respect to Claim 25, Defendants totally ignore that this claim alleges breaches of the June 11, 2003 agreement (Clark Decl., Ex. A), which amended prior similar agreements to provide that New York law governs.  Under that agreement, Old Werner paid Investcorp International Inc. $1 million per year from 2003-2006, and $1.5 million for 2002-2003.  New York law provides for a six year statute of limitations for such claims.  N.Y. C.P.L.R. § 213(2) (2007).

("LBOs") and/or dividend distributions.  In fact, the opposite is true.  Most courts have refused

to bar such claims.[13]  And <u>no</u> circuit court (including the Third Circuit) has held that dividends to

*non-public* security holders as part of LBOs are protected by Section 546(e) merely because the

defendants funneled dividends through a "financial institution."  Indeed, the transfers at issue - -

payments to shareholders while insolvent - - are classic fraudulent transfers which the

Bankruptcy Code and state laws were designed to prevent, regardless of whether the transferees

received wire transfers or stacks of currency.

      **a.   The Plain Text Belies Defendants' Interpretation.**

      With respect to the plain language of the statute, to qualify as a "settlement payment," the

payment must be commonly used "in the securities trade." 11 U.S.C. § 741(8).  Numerous courts

hold that this phrase unambiguously means the "public" securities markets and that construing it

otherwise would be absurd and at odds with legislative intent.  *See*, *e.g.*, *Norstan*, 367 B.R. at 75-

77 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 478

(S.D.N.Y. 2001) and *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857,

866 (Bankr. S.D.N.Y. 2005)); *Grafton*, 321 B.R. at 538-39 .[14]  The extension of 546(e) to private

transactions also conflicts with the Bankruptcy Code's design to pay creditors before

---

[13]This includes courts in the Second, First, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits. *Official Comm. of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Norman* (*In re Norstan Apparel Shops, Inc.*), 367 B.R. 68 (Bankr. E.D.N.Y. 2007); *Buckley v. Goldman, Sachs & Co.*, 2005 WL 1206865 (D. Mass 2005); *Jewel Recovery, L.P. v. Gordon*, 196 B.R. 348 (N.D. Tex. 1996); *Official Comm. Of Unsecured Creditors v. ASEA Brown Boveri, Inc. (In re Grand Eagle Cos., Inc.)*, 288 B.R. 484 (Bankr. N.D. Ohio 2003); *Wieboldt Stores, Inc. v. Schottenstein,* 131 B.R. 655, 663-64 (N.D. Ill. 1991); *In re Grafton Partners, L.P.*, 321 B.R. 527 (B.A.P. 9th Cir. 2005); and *Munford v. Valuation Research Corp. (In re Munford)*, 98 F.3d 604 (11th Cir. 1996).

[14] The partial definition in *Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846, 848 (10th Cir. 1990) ("*Kaiser I*"), *Kaiser Steel Corp. v. Pearl Brewing Co.*, 952 F.2d 1230, 1237-40 (10th Cir. 1991) ("*Kaiser II*"), and *Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 515-16 (3d Cir. 1999) involved *public* securities and required no analysis of whether payments were made within the "securities trade."

stockholders.  *Young v. Higbee*, 324 U.S. 204, 210 (1945) ("one of the prime purposes of the

bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's

assets").  Nothing in the Bankruptcy Code supports the view that a shareholder or fiduciary of a

non-public company can upset the absolute priority rule merely by choosing a method to

effectuate corporate distributions to him or her which involves a "financial institution."  Such a

view would lead to an absurd construction of the Code, and the Court need not adopt it.  *See*,

*Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 537 (2004).[15]

### b.  The Legislative Intent Belies Defendants' Position.

To the extent the Court finds Section 546(e) ambiguous as to whether it should apply to

private LBOs and dividends, Courts interpreting the Section's legislative history have stressed its

goal: protecting financial markets because unwinding public transactions could undermine the

stability of the clearinghouse system (buying and selling public securities in a liquid market).

*See Adler*, 263 B.R. at 477; *Norstan*, 367 B.R. at 76; *Munford*, 98 F.3d at 609; *Grafton*, 321 B.R.

at 533 n.6; *Resorts*, 181 F.3d at 515-16;  *Kaiser II*, 952 F.2d at 1237-38, 1240 n.10; *Kaiser I*, 913

F.2d at 849.

Multiple courts that have reviewed this history have held that Section 546(e) was not

intended to shield private transactions, as it would eviscerate avoidance laws without advancing

any legislative purpose.  *Norstan*, 367 B.R. at 76-77; *Am. Tissue, Inc. v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.,* 351 F. Supp.2d 79, 107-09 (S.D.N.Y. 2004) ("it is not clear that the 'reversal

of the [transfer] may result in disruption of the securities industry, creating a potential chain

reaction that could threaten collapse of the affected market.'") (quoting *Adler*, 263 B.R. at 480);

*Jewel Recovery*, 196 B.R. at 352-53); *Buckley*, 2005 WL 1206865 at *6-7; *Zahn v. Yucaipa*

---

[15] Defendants' attack is also premature for a motion to dismiss.  Whether a payment is
"commonly used" in the securities trade is a "factual issue requiring a trial."  *See Enron Corp. v.
J.P. Morgan Secs., Inc. (In re Enron Corp.)*, 325 B.R. 671, 687 (Bankr. S.D.N.Y. 2005).

*Capital Fund*, 218 B.R. 656, 675-77 (D.R.I. 1998); *Wieboldt*, 131 B.R. at 663-64; *Grand Eagle,* 288 B.R. at 494; *Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*, 195 B.R. 971, 983 (Bankr. D. Mass. 1996); *Crown Paper Co. v. Fort James Corp. (In re Crown Vantage, Inc.),* 2006 WL 2348850 at *5 (N.D. Cal. Aug. 11, 2006); *Grafton*, 321 B.R. at 529-31; Christopher Redd, *Treatment of Securities and Derivatives Transactions in Bankruptcy*, 24 AM. BANKR. INST. J. 36, 56 (Sept. 2005).

Indeed, because of the closed-ended structure of an LBO, commentators have asserted that sheltering *public* LBO payments violates legislative intent, and some courts have refused to apply 546(e) to them. *Jewel Recovery*, 196 B.R. at 351-55; *Wieboldt*, 131 B.R. at 663-65; Gerald K. Smith & Frank R. Kennedy, *Fraudulent Transfers and Obligations:  Issues of Current Interest*, 43 S.C. L.Rev. 709, 751-67 (1992); Neal M. Garfinkle, *No Way Out: §546(e) is No Escape for the Public Shareholder of a Failed LBO*, 1991 Colum. Bus. L. Rev. 51 (1991).

### c.  No "Transfers" Were Made "by or to" a "Financial Institution."

Independently, Defendants' 546(e) analysis also falls apart when one looks at how the transfers are alleged to have occurred - - directly from bank accounts owned and controlled by Old Werner to accounts owned and controlled by Defendants.  (Att. A, Exs. 6, 27-30).  By the nature of these transfers, no "financial institution" ever held title to the funds or will be exposed to liability when the recipients are forced to return them.  Title to all transferred funds went directly to the Defendants and will be recovered directly from them.  Since neither Old Werner nor Defendants are financial institutions, there was no "transfer . . . made by or to . . . a financial institution."  *See Munford*, 98 F.3d at 610 (payments to a financial institution that was "nothing more than an intermediary or conduit" are not protected by section 546(e)); *Healthco*, 195 B.R.

at 982.[16]

In light of the foregoing, all fraudulent transfer claims should remain.

### 3. The Bankruptcy Code Does Not Preempt Unjust Enrichment Claims. [Claims 27, 28]

In attacking Claims 27 and 28, Defendants rely exclusively on a district court decision from Delaware, *Official Comm. of Unsecured Creditors of Hechinger Investment Co. of Delaware v. Fleet Retail Fin. Group*, 274 B.R. 71 (D. Del. 2002). That case, however, is predicated on the faulty application of 546(e) discussed above. Indeed, even other courts within the Third Circuit have discounted *Hechinger* as not precedential. *See In re Loranger Mfg. Corp.*, 324 B.R. 575, 582 (Bankr. W.D. Pa. 2005).

### 4. Claims for Deepening Insolvency Are Recognized at Law. [Claims 23, 24]

Notwithstanding Defendants' protests, federal courts have predicted that Pennsylvania courts would recognize these claims. *See Seitz v. Detweiler, Hershey & Assoc., P.C. (In re Cit-X Corp.)*, 448 F.3d 672, 680-81(3d Cir. 2006); *In re Total Containment, Inc.*, 2008 WL 682455 at *9 (Bankr. E.D. Pa. 2008) (motion for summary judgment denied). Further, federal courts have recognized a claim for deepening insolvency in New York. *Allard v. Arthur Andersen & Co. (USA)*, 924 F. Supp. 488, 494 (S.D.N.Y. 1996). Because Pennsylvania or New York law could apply here, Old Ladder has properly pleaded these claims.[17]

---

[16] The widely-adopted "mere conduit" doctrine under section 550 of the Bankruptcy Code is analogous and provides that financial institutions are not "initial transferees" unless they had "dominion" over funds. *Christy v. Alexander & Alexander of New York Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997). The terms "transfer" and "transferee" should not have different meanings in sections 546 and 550 of the Code, and the Bankruptcy Code should be read so that it is consistent. *See, e.g.*, *A. Esteban & Co., Inc. v. Metro. Transp. Auth.*, 2002 WL 1059169 at *1 (S.D.N.Y. May 24, 2002); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43 (Bankr. S.D.N.Y. 2004).

[17] The "authority" cited by Defendants, *Miller v. Santini*, No. 1225, 2007 Phila. Ct. Com. Pl. LEXIS 252, at *10 (Phila. Ct. Com. Pl. Sept. 20, 2007), is an unpublished trial court ruling that is

**5.   The Claims for Actual Fraudulent Transfer Are Properly Pleaded. [Claims 2, 4, 6, 8, 10, 12]**

Defendants assert that Claims 2, 4, 6, 8, 10 and 12 are defective in that they only conclusorily allege intent to hinder, delay or defraud.  That assertion ignores the actual allegations in the Complaint and misapplies FRCP 9(b).

For fraudulent conveyance claims, "[m]alice, intent, knowledge, and other conditions of mind…may be averred generally."  *Wight v. BankAmerica Corp*., 219 F.3d 79, 91 (2nd Cir. 2000).  Further, "[c]ourts usually evaluate averments of fraud more liberally in the bankruptcy context" where the plaintiff is a trustee acting on behalf of the estate or its creditors.  *Am. Tissue,* 351 F. Supp. 2d at 106-07 (quoting *Harrison III v. Entm't Equities, Inc.*, 138 B.R. 390, 395 (Bankr. S.D.N.Y. 1992)) (upholding complaint that "'describe[d] the specific injury,' 'describe[d] the legal theories upon which it bases its claims,' and suffice[d] 'to allow each defendant to prepare an effective answer or defense"); *In re APF Co.*, 274 B.R. 634, 638 (Bankr. D. Del. 2001).  Intent may also be inferred from "badges of fraud," including, (1) the inadequacy of consideration received; (2) the close relationship between the parties; (3) information that the transferor was made insolvent by the conveyance; and (4) the suspicious timing of transactions or existence of a pattern after the debt had been incurred.  *Eclaire Advisor Ltd. as Trustee to Daewoo Int'l Am. Corp*., 375 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005).  Moreover, where a conveyance is made without consideration, intent to defraud is presumed.  *William Iselin & Co., Inc. v. Boardwalk Regency Corp.*, 703 F. Supp. 1084, 1088 (S.D.N.Y. 1989).

Here, while the burden remains with Defendants to disprove fraudulent intent with respect to the dividend transactions, the Complaint pleads the badges of fraud more specifically

---

not controlling authority and has never been cited by any court for any reason, including in March of 2008 when the court in *In re Total Containment* held that a claim for deepening insolvency was allowed under Pennsylvania law.

than in *Am. Tissue*, in which the court found the complaint sufficient. The badges relating to the 1997 Shareholder Cashout include: (1) the consideration was inadequate (¶ 45-46, 48, 50-51, 216); (2) the shareholders and Investcorp transferred funds to themselves (¶ 44, 46, 48, 51); (3) the cashout rendered Old Werner insolvent (¶ 44, 47, 49, 51-52, 56-59, 62-65); and (4) the Werner and Solot families, looking to cash out their interest, shopped Old Werner without regard to its continued existence (¶ 43, 44, 46, 61). The badges relating to the fraudulent transfers between 1997 and 2003 include: (1) the consideration was inadequate (¶ 74, 216); (2) Investcorp extracted at least $1,500,000 in fees (¶ 45, 60, 74); (3) these payments rendered Old Werner insolvent (¶ 62-67, 72-73); and (4) simultaneously, Investcorp tried to cash out its investment because it knew that Old Werner was insolvent and underperforming. (¶ 61, 66, 68-71, 75-81). The badges relating to the 2003 Shareholder Cashout include: (1) the consideration was inadequate (¶ 120, 122-123, 126-29, 131, 216); (2) the shareholders and Investcorp transferred funds to themselves (¶ 119, 120, 124-25, 127-28); (3) the cashout rendered Old Werner insolvent (¶ 121, 122, 132, 134-35); and (4) the cashout immediately followed Investcorp's failed attempts to sell Old Werner (¶ 82) and before management disclosed their knowledge of Old Werner's deteriorating performance (¶ 99-101, 107-08, 112, 116-17) and serious problems with customers (¶ 85-98, 102-06, 109, 111, 113, 116-17, 119, 130). The badges relating to the fraudulent transfers made between 2003 and Old Werner's bankruptcy filing include: (1) the consideration was inadequate (¶ 187, 216, 218, 220); (2) management and Investcorp transferred funds to themselves and their professionals (¶ 218, 220, 223); (3) Old Werner was insolvent (¶ 162-64, 166, 168, 171, 173, 177-80, 182-83, 188, 196-97, 203, 212); and (4) management caused Old Werner to operate and pay out millions in fees despite Old Werner's insolvency (¶ 148, 163, 165, 168, 172, 178, 180, 182, 184-85, 190, 196-97, 201, 205, 209-10, 215, 221). The Complaint

23

pleads intent sufficiently under any applicable standard.

### 6. The Claims for Post-2003 Constructively Fraudulent Transfers [Claims 7, 9, 11] and Preferential Transfers [Claim 13] Are Properly Pleaded.

Again, despite Defendants' protests, the heightened pleading requirements of Rule 9(b) do not apply to allegations of constructive fraudulent transfer and preferential transfer. *See Hughes v. BCI Int'l. Holdings, Inc.,* 452 F. Supp. 2d 290, 316 (S.D.N.Y. 2006). Rather, pleading these claims requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 254 (S.D.N.Y. 2006) ("relatively bare-bones" allegations that "defendants received grossly excessive and inappropriate compensation" from the transferor; the transferor "was insolvent at the time [of the transaction] or was rendered insolvent thereby;" the transferor was "engaged in or about to engage into a transaction for which the property remaining in [its] hands was unreasonably small;" and the transferor "knew or believed that it would incur debts beyond its ability to pay as they matured" provided the defendant with fair notice of the plaintiff's constructive fraudulent transfer claims); *In re Randall's Island Family Golf Ctr. Inc.*, 290 B.R. 55, 64 (Bankr. S.D.N.Y. 2003) (the complaint properly pleaded preference claims despite combining defendants and not identifying the debtor-beneficiary of each transfer).

The Complaint pleads more than sufficient facts to inform each Defendant of the constructive fraudulent conveyance claims asserted against them. Old Ladder seeks recovery of the transfers made in a defined period of time (June 2003 – 2004 for Claim 7 and June 2004 – 2006 for Claims 9 and 11) to the identified Defendants. The Complaint identifies the exact recipients, amounts, and time frames of the transfers and alleges lack of fair consideration (¶ 142, 187, 216, 218, 220, 223, 225, 229, 230, 363-365, 390-392, 416-18) and the bases for the recovery of the transfers. *See, e.g.*, ¶ 148, 162-63, 166, 173, 178, 182-83, 188, 197, 199, 200,

24

203, 208, 209, 211, 229, 231, 367(a)-(b), 394 (a)-(b), 420 (a)-(b) (insolvency); ¶ 151-53, 164, 167, 170, 173, 176, 188, 194, 196, 198-200, 202, 203, 206, 207, 229, 231, 367(c), 368, 394(c), 395, 420(c), 421 (unreasonably small capital and intent/belief that debts are beyond ability to pay).[18] Old Ladder also pleaded the transferor, transferees, the exact amounts received, and the time frame during which the preferential transfers were made.  (¶ 218, 220, 223, 442).

### 7.  The Breach of Fiduciary Duty Claims  Include Breach of the Duties of Loyalty and Good Faith and Are Adequately Pleaded. [Claims 15-22]

Defendants argue that the claims against Old Werner's fiduciaries are barred by various affirmative defenses such as contractual exculpations and the business judgment rule.  Those arguments fail on a motion to dismiss (as we believe they will on a more developed record).[19]

In Pennsylvania, the duty of loyalty requires a fiduciary to "devote him/herself to corporate affairs with a view to promote the common interests and not only their own, and they cannot directly or indirectly utilize their position to obtain any personal profit or advantage other than that enjoyed by their fellow shareholders."  *In re Main, Inc.*, 239 B.R. 281, 291 (E.D. Pa. 1999).  Similarly, in Delaware, a breach is established if the plaintiff pleads facts demonstrating

---

[18] Defendants' citations to *Lippe v. Bairnco Corp., 230 B.R. 906 (S.D.N.Y. 1999),* and *Hassett v. Zimmerman* (*In re OPM Leasing*), 32 B.R. 199 (Bankr. S.D.N.Y. 1983), are inapposite. In *Lippe*, the plaintiff insufficiently pleaded because (unlike in this case) it failed to distinguish between its constructive and intentional fraudulent transfer claims.  230 B.R. at 915.  In *In re OPM Leasing*, the bankruptcy court misapplied FRCP 9(b) to the extent it was applied to constructively fraudulent transfers, the focus was on a failure to plead facts supporting fraud, and the complaint pled far less detail than is alleged here.  To the extent, however, that any claims are insufficiently pleaded, Old Ladder respectfully requests leave to replead in greater detail.

[19] The general pleading standards of FRCP 8(a) govern a claim for breach of fiduciary duty. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 446 F. Supp. 2d 163, 196 (S.D.N.Y. 2006).  The heightened standard of 9(b) applies only when the claim involves fraud.  Even then, however, the plaintiff is not required to plead with detailed evidence – the "allegations may be made on information and belief where the fraud is based on matters within the adverse party's sole knowledge," as long as a statement of facts upon which the belief is founded is also alleged.  *Abercrombie v. Andrew College,* 438 F. Supp. 2d 243, 272 (S.D.N.Y. 2006).  Old Ladder 's allegations of Defendants' self-dealing sufficiently meet either standard.

that the defendant (1) was interested in the transaction and/or (2) lacked independence to determine objectively whether a transaction was in the best interests of the corporation. *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002); *Pogostin v. Rice,* 480 A.2d 619, 624 (Del. 1984) (interested means (1) divided loyalties or (2) either appearing on both sides of a transaction, or receiving personal financial benefit not shared by the corporation).[20]

      Further, "if plaintiff has made a prima facie showing of a lack of … disinterested independence …, the complaint may not be dismissed for failure to state a cause of action solely upon application of the business judgment rule." *Patrick,* 355 F. Supp. 2d at 711 (internal citations omitted); *see also Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). A director's "interestedness" and "independence" is quintessentially a question of fact. *Patrick*, 355 F. Supp. 2d at 712 (citing *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 880 (S.D.N.Y. 1986)).

      Here, the Complaint alleges that the Old Werner fiduciaries ignored these duties and acted in their own self-interest and in bad faith, from 2003 through Old Werner's bankruptcy filing, by concealing and manipulating material information to their personal benefit and to the detriment of Old Werner and its creditors. (¶ 85-98, 102-18). The fiduciaries implemented the 2003 Shareholder Cashout despite Old Werner's weak financial condition and undisclosed problems. (*Id.*). The fiduciaries were interested in the 2003 Shareholder Cashout because they stood to gain many benefits, including bonuses, option cashouts, and shareholder distributions. (¶ 120, 123-25, 127-28). Whether the fees are sufficiently meaningful to these Defendants to create a conflict of interest is a question of fact. *See Official Comm. of Unsecured Creditors of Color*

---

[20] Generally, affirmative defenses such as the business judgment rule and exculpatory clauses do not permit dismissal of a complaint under Rule 12(b)(6). *In re Tower Air*, 416 F.3d at 238, 242 (citing *In re Adams Golf Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004)); *Pani*, 152 F.3d at 74 (affirmative defense properly raised only when the supporting facts appear on the face of the complaint); *see also* n.10 above.

*Tile, Inc. v. Investcorp*, 137 F. Supp. 2d 502, 509 (S.D.N.Y. 2001) (applying Del. law).[21]

Moreover, as alleged, the fiduciaries here had divided loyalties and were not truly independent. Each of them was appointed by a controlling shareholder, and their actions demonstrate that they were working to promote the interests of those shareholders, and not of Old Werner or the creditors, through their concealments (¶ 60, 85-98, 102-18). The shareholders reaped great benefits to the detriment of creditors: (1) Investcorp and its investors received $97 million (¶ 124); (2) Werner family and management shareholders received $50 million (¶ 124); and (3) Investcorp received substantial fees (¶ 127). Old Werner and the creditors, on the other hand, were deprived by the 2003 transaction of $150 million to satisfy legitimate creditor claims. (¶ 122-23).

Further, fiduciaries typically are not entitled to the protection of the business judgment rule if they received material benefits not equally shared by the corporation's shareholders. *Orman*, 794 A.2d at 23; *In re Athos Steel & Aluminum, Inc*., 71 B.R. 525, 541 (E.D. Pa. 1987). Here, however, the $150 million 2003 payout to the shareholders when Old Werner was in the zone of insolvency breached fiduciary duties owed to creditors. Fiduciary duties owed to shareholders are owed to the creditors when a company is insolvent or in the zone of insolvency. *In re Total Containment, Inc.,* 335 B.R. 589, 603-04 (Bankr. E.D. Pa. 2005); *N. Am. Catholic. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007); *Geyer v. Ingersoll*

---

[21]Defendants' reliance on *Color Tile* is misplaced as the $4.3 million in fees paid as part of the $80 million *Color Tile* transaction (approximately 5%) were paid to a single corporate subsidiary, not individuals or related professional managers. *Id.* at 506. Also, the court's refusal to submit the question of materiality to the jury (and not on a motion to dismiss) was based, in part, on its assessment that these fees were fair and for value. *Id.* at 509 ("[P]laintiff has not proffered any evidence that Color Tile would not have incurred similar fees had the transaction been structured [differently]"). Here, no such determination has been made and a reasonable factfinder could certainly find that the bonuses, including $250,000 each to six officers, were meaningful to their respective recipients. Also, the fees and bonuses were not for value and were paid as part of an aggregate 12.5% of transaction cost for the self-serving cashout. (¶ 121, 123)

27

*Publ'ns Co.*, 621 A.2d 784, 787-90 (Del. Ch. 1992).

As alleged, following the 2003 Shareholder Cashout, the fiduciaries continued to breach their duties of loyalty by failing to cause Old Werner to de-leverage, despite their knowledge that it was in Old Werner's best interest.  They acted in self-interest by focusing their efforts on (1) schemes to extract more money from Old Werner in the form of fees and compensation; and (2) extending Old Werner's existence in hopes of recouping out-of-the-money equity holders' investments and running out the statute of limitations relating to their misconduct in the 2003 Shareholder Cashout. (¶ 163, 165, 168, 180, 185, 187, 205, 213, 215-217).  From 2003 to 2006, they also caused Old Werner to retain numerous professionals to try to avoid bankruptcy, even though filing earlier was in the best interest of Old Werner and its creditors.  (¶ 141-42, 218-25). They lacked independence to determine objectively whether a transaction was in the best interests of Old Werner.  (¶ 136-140, 154-56, 159, 171-72, 180, 197, 200, 205, 215-17). Accordingly, Old Ladder has properly alleged facts to support its claims based on breaches of fiduciary duties.

In addition, Old Ladder sufficiently alleges Defendants' gross negligence in fulfilling their duty of care.  *See McMullin v. Beran*, 765 A.2d 910, 921 (Del. 2000) (business judgment rule is rebutted if the board failed to inform themselves fully and in a deliberate manner before voting upon a significant transaction); *In re Healthco Int'l Inc.*, 208 B.R. 288, 305 (Bankr. D. Mass. 1997) ("[t]he more significant the subject matter of the decision, the greater is the requirement to probe and consider alternatives").  Defendants' failure to question a transaction that would withdraw $150 million in capital from Old Werner at a time when it was struggling financially and about to lose its biggest customer was not only grossly negligent, but intentionally disloyal and reckless.  (¶ 105-22, 131-33).  Indeed, Defendants' purported

LOSANGELES 742426 (2K)

"reliance" on Murray Devine's solvency opinion when they knew that Murray Devine was not conducting any independent valuation of Old Werner's solvency was reckless.  (¶ 131-33).

Old Ladder also properly alleges Claims 17 and 18 because the bylaws of both Werner Holding Co. (PA), Inc. (Article V, Section 1) and Werner Holding Co. (DE), Inc. (Article VIII, Section 8.01) expressly subject the directors of the Company to liability for unlawful distributions and unlawful dividends imposed by state statutes.

> **8.    The Claims for Breach of Fiduciary Duty and Aiding and Abetting Regarding Fees and Compensation Are Adequately Pleaded. [Claims 19, 22]**

Defendants characterize Claims 19 and 22 solely as claims for waste of corporate assets. They ignore, however, the totality of the alleged breaches of fiduciary duties – for example, failing to preserve Old Werner's breach of fiduciary duty claims under Delaware and Pennsylvania law by strategically delaying the bankruptcy filing until one day after the third anniversary of the 2003 Shareholder Cashout (just one day after the statute of limitations in Delaware would run if not tolled, and one year and a day after the Pennsylvania statute would run if not tolled).  (¶ 185, 215, 225).  Moreover, Old Ladder's allegations demonstrate that each of the post 2003 Shareholder Cashout transactions satisfy the standard Defendants proffer (Motion, p. 21) because they were exceedingly one-sided, including:  (1) seeking a loan amendment and debt covenant waivers which provided no value in 2004 (¶ 165-73); (2) causing Old Werner to spend millions of dollars for a 2005 refinancing that provided no benefit (¶ 174-80); (3) liquidating Old Werner's Extruded Products Division in a "fire sale" (¶ 204-05); and (4) spending millions of dollars to retain professionals to help delay the bankruptcy filing (¶ 214-21).  As such, Old Ladder alleges facts sufficient to state Claims 19 and 22.

**9.   The Officers [Claims 15, 16, 19-22] and Werner Family Controlling Shareholders [Claims 14-16, 19-24] Are Valid Defendants to the Claims for Breach of Fiduciary Duties and Aiding/Abetting.**

Certain Defendants attempt to raise an issue of material fact regarding the scope of the Defendant officers' "corporate power." (Motion, p. 26). As noted, such an inquiry into an alleged affirmative defense is inappropriate on a motion to dismiss. See note 10, <u>supra</u>. Furthermore, the Complaint alleges what Defendants contend is required: the existence of the duty and actions that violate it. 15 Pa. Cons. Stat. Section 512(c); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993); (¶ 467, 470-81, 485, 487-500, 514-15, 517, 519-26). The officers stood to receive substantial distributions from the 2003 Shareholder Cashout. (¶ 124-25, 127-28). The officers were interested in prolonging the existence of Old Werner, even at the expense of Old Werner and its creditors, in order to continue receiving compensation, and defer liability for their misconduct. (¶ 214-19, 221-25). Old Ladder's allegations that the officers worked with the other fiduciaries to implement the cashout and delay Old Werner's bankruptcy filing sufficiently demonstrate the officers' self-interest and breaches of their duties.

Moreover, Old Ladder's claims do not fail for lack of particularity regarding the officers' acts. First, Defendants fail to provide any supporting law to the effect that Rule 9(b) applies to such claims. Second, all allegations necessary to establish the claims have been pleaded. (¶ 85-98, 102-118, 122-25, 127-28, 141-42, 154-56, 159, 163, 165, 168, 171-72, 180, 185, 187, 197, 200, 205, 215-25). Third, the individual officers are, sufficiently identified – each officer is named in the claims brought against him. (¶ 467, 485, 514, 530-31, 543-44, 557). Old Ladder also has pleaded the periods in which Defendants were officers and the positions they held (¶ 30-31, 263-76). As a result, each officer can ascertain what he did wrong and when.[22]

---

[22] The Court should consider that the Complaint is the result of Old Ladder's good faith effort to balance between the FRCP 8 requirement that the pleading be "concise and direct" (to avoid

LOSANGELES 742426 (2K)

Old Ladder also pleads aiding and abetting of the other fiduciaries' breaches alleging:  (1) the existence of a breach by a fiduciary; (2) knowing inducement or participation by the defendant; and (3) damages.  *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 42, 49-50 (2d Cir. 2005);[23] *see also Vtech Holdings Ltd. v. Pricewaterhouse Coopers LLP*, 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004); *Wight,* 219 F.3d at 92 (knowledge); *Pension*, 446 F. Supp. 2d at 201  (participation includes affirmative assistance, concealing, or allowing wrongdoing to proceed); *In re Main, Inc.*, 239 B.R. at 291 (failure to take steps to correct illegal corporate action equals active participation).

Each of the relevant officers knowingly participated in the other fiduciaries' breaches. They were part of the Management Leadership Teams responsible for sales, operations and/or finance.  (¶ 31).  They had intimate knowledge of the increasingly competitive ladder industry and decreasing sales figures (¶ 62, 66-67), Old Werner's faltering performance (¶ 63-64), its strained cash flows and inability to meet loan covenants (¶ 65-67), and insolvency.  They did nothing when the other fiduciaries repeatedly concealed adverse information (¶ 95, 111-14, 115-17, 148).  They concealed Old Werner's financial condition by creating false projections.  (¶ 105-09, 111-14, 115-17).  They received substantial bonuses in the 2003 Shareholder Cashout.

---

burdening Defendants and this Court with an enormous and unmanageable complaint) and pleading with specificity to put Defendants on notice of the claims against them.  *See DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 318 (S.D.N.Y. 2002) (failure to abide by Rule 8 can produce "great mischief" because "[u]nnecessary allegations promote discovery abuse, contentiousness and difficulties in understanding and treating the case for motions, legal sufficiency and trial").

[23] Federal courts in New York have split on which law applies to aiding and abetting claims – the law of the state with the greatest interest or the law of the state of incorporation.  Recent cases with facts showing significant contacts with one jurisdiction have adopted the greatest interest rule.  *In re Adelphia Commc'ns Corp. v. Bank of Am.*, 365 B.R. 24, 39-40 (Bankr. S.D.N.Y. 2007); *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 266 n. 7 (S.D.N.Y. 2007); *Granite Partners, L.P. v. Bear, Stearns Co. Inc.*, 17 F. Supp. 2d 275, 306, n.16 (S.D.N.Y. 1998); *Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998).  Here, the New York contacts are so substantial that New York has the superior interest in this dispute. (See Section I).

(¶ 128).  After the 2003 Cashout, they continued to assist the other fiduciaries by: (1) manipulating financials to mask loan covenant defaults (¶ 172, 201); (2) obtaining waivers of loan covenants (¶ 168, 183-184, 190, 210); (3) fabricating financials to secure refinancing (¶ 187-188, 195); (4)  misrepresenting Old Werner's financial viability (¶ 198-99); (5) selling Old Werner's Extruded Products Division at a reduced price to temporarily alleviate financial pressures (¶ 205); and (6) delaying the bankruptcy filing against the interests of the creditors.

Defendants' argument that the Werner Family Controlling Shareholders did not owe a fiduciary duty because they held less than a majority of the outstanding shares (Motion p. 26) also fails at the motion to dismiss phase.  Pennsylvania recognizes a cause of action against a "group of shareholders who combine to form a majority . . . if the majority dominates the board of directors and controls the corporation."  *In re Athos Steel & Aluminum, Inc.*, 71 B.R. at 540. As pleaded, the Werner Family Controlling Shareholders, together with Investcorp, controlled all of Old Werner's outstanding shares and board seats during the 2003 Shareholder Cashout. (¶ 42-43, 45, 60).  Subsequently, with Investcorp and Leonard Green, they controlled all the Company's outstanding shares and all board seats.  (¶ 136-37).  Old Ladder plainly alleges facts showing that they were part of the group of shareholders controlling Old Werner.  Defendants cannot, at this stage, avoid suit by pointing to the others as the abettors.

### 10. The Claims for Breach of Contract Against Investcorp International and Leonard Green [Claims 25, 26] and for Unjust Enrichment Based on the 2003 Shareholder Cashout and Later Management Fees and Compensation Are Properly Pleaded and Are Not Barred By Agreements. [Claims 27, 28]

In attacking Claims 25-28, Defendants argue that the management agreements are not enforceable because of the scope of their exculpatory provisions.  In making that argument, Defendants' omit the principle that the court should honor a limitation of liability provision "if the limitation is not the result of unconscionable conduct or unequal bargaining power between

the parties." *Dyncorp*, 215 F. Supp. 2d at 317 (citing *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994)).  Language placing one party at the mercy of the other is disfavored.  *Metro. Life*, 84 N.Y. 2d at 438.  A court, therefore, will interpret it equitably so as to not give one party an unfair and unreasonable advantage.  *Id.*

As argued by Defendants, the exculpatory provisions agreed to by and between Defendants who are alleged to have acted in concert would absolve them of any and *all* liability arising from their advisory services.  (Motion, p. 22).  Here, however, Old Ladder does not simply seek consequential damages based on advice rendered.  Old Ladder seeks recovery of the fees paid to Defendants based on the failure to provide advice in accordance with the agreements – by providing advice in their own interests and against Old Werner's interests.  Further, the "limitation" Defendants propose is not a reasonable one in that it would leave Old Werner with no recourse.  The Court should not allow such an inequitable result, given that, as pleaded, the provisions resulted from the unequal bargaining power between the fiduciaries (here, Investcorp and Leonard Green as controlling shareholders) and an unrepresented principal.  (¶ 136-42).  In effect, Defendants "negotiated" with themselves.

Further, to the extent the exculpation argument has merit, it would render the contract totally illusory, and if that is true, Old Ladder may recover payments made to Defendants on an unjust enrichment theory (Claim 28).  Similarly, Defendants' argument that Claim 27 for unjust enrichment fails because of the Recapitalization Agreement is wrong.  That agreement was formed by and for the benefit of Defendants and does not provide consideration to Old Werner.  Defendants' own authority explains that "if there is a relationship in the form of a promise to, or for the benefit of, the plaintiff," his right to recover on that promise precludes a claim of unjust enrichment.  *Benefit Trust Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir.

33

1974).[24]  The only promise Defendants made was to accept $150 million.  The agreement

entirely benefitted Defendants and cannot bar an unjust enrichment claim.

### 11. The Claims Against LM for Fraudulent and Preferential Transfer [Claims 9-13] and Aiding and Abetting [Claim 22] Are Properly Alleged.

Old Ladder sufficiently pleaded the fraudulent and preferential transfer claims against

LM, as discussed in Sections II(C)(5) & (6) above.  (*See also* ¶ 187-88, 194, 196-97, 200-01,

203, 208, 218, 225, 229-31, 390, 392, 394-95, 403, 405, 407-09, 416, 418, 420-21, 428, 430,

432-34, 442, 444-48).  Defendants overstate the holding of *Andrew Velez Constr., Inc. v. Consol.

Edison Co of N.Y., Inc.*, 373 B.R. 262 (Bankr. S.D.N.Y. 2007), which actually supports the

pleading standards referenced herein.  "Misconduct" is not an element.

Old Ladder properly alleged a claim for aiding and abetting by alleging that LM

affirmatively assisted Old Werner's management in presenting false information to lenders (¶

181, 187, 218, 225), and that the 2005 Refinancing cost millions of dollars, and was a tactic to

delay bankruptcy filing, which damaged Old Werner's creditors.  (¶ 194, 196-97, 229).  LM's

asserted *in pari delicto* defense on grounds that Defendants' conduct was designed to benefit Old

Werner fails for three reasons.  First, the Complaint alleges that Defendants acted wholly in their

own interests to the detriment of Old Werner.  (¶ 522).  Second, the premise of the doctrine is to

prevent wrongdoers from profiting from their bad acts - not to bar relief to the innocent and Old

Ladder seeks to recover funds for Old Werner's innocent creditors.  Third, even if *in pari delicto*

applied, the Complaint alleges sufficient facts to apply the well established adverse interest

exception.  *Wight*, 219 F.3d at 87.

### 12. Claims 29 and 30 Against Murray Devine Are Properly Alleged.

In challenging Claim 29, Murray Devine deceptively omits the provision in the

---

[24] Although New York law will control Claims 27 and 28, Defendants' failure to cite controlling authority is immaterial as the law is substantially similar.

engagement letter that it could only rely on certain information "to the extent such reliance is reasonable…." Because the issue of reasonableness is a factual issue, it cannot therefore be adjudged on a motion to dismiss. The claim adequately alleges damages from lenders' reliance and Murray Devine's breaches by inadequate performance and failing to comply with professional standards. Murray Devine has more than enough information to respond to the charges. *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1470 (S.D.N.Y. 1992).

With respect to Claim 30, "[u]nder settled Pennsylvania case law, a client may bring both a contract action and a tort action against a professional based on allegations that he or she failed to provide the client with professional services consistent with those expected of the profession." *Rapidigm Inc. v. ATM Mgmt. Servs. LLC*, 63 Pa. D. & C. 4th 234, 240 (Pa. Com. P. 2003).[25] Murray Devine, who provided a solvency opinion based on Old Werner's financial statements, can be fairly characterized as an accountant or a financial advisor (¶ 131-33) who may be liable on this claim. *Koken v. Steinberg*, 825 A.2d 723, 730 (Pa. Commw. Ct. 2003); *Thompson v. Glenmede Trust Co.*, 1993 WL 197031, at *12-13 (E.D. Pa. June 8, 1993) (investment advisor). Notably, Murray Devine provides no authority to support its contention that Pennsylvania does not recognize a claim for professional negligence against a professional firm. (Motion, p. 32).

## CONCLUSION

For the above reasons, the Motions should be denied.

Dated: July 8, 2008                          WHITE & CASE LLP

                                             By: /s/ J. Christopher Shore_____
                                                  J. Christopher Shore (JS–6031)
                                             *Attorneys for Plaintiff OLD LADDER*
                                             *LITIGATION CO., LLC*

---

[25] *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 20-21 (Pa. Super. Ct. 2002) is inapposite. It analyzes whether a fraud action arising out of a contract dispute (not a professional negligence claim) can be brought.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLD LADDER LITIGATION CO., LLC, as Litigation Designee on behalf of the Liquidation Trust, <br><br> Plaintiff, <br><br> v. <br><br> INVESTCORP BANK B.S.C., *et al.*, <br><br> Defendants. | Case No.  08 CIV 0876 (RMB)(THK) <br><br> **AFFIDAVIT OF SERVICE** |

## AFFIDAVIT OF SERVICE

STATE OF CALIFORNIA           )
                                            ) s.s.:
COUNTY OF LOS ANGELES     )

        Doah Kim, being duly sworn, deposes and states that she resides in Los Angeles, CA; that she is over the age of twenty-one years and that she is not a party to this proceeding.

        On the 8th day of July, 2008, deponent caused a copy of the 1) **Memorandum Of Law In Opposition To Defendants' Consolidated Motions For Transfer Of Venue And Dismissal; 2) Declaration Of Craig Averch In Support Of Opposition To Defendants' Motions For Transfer Of Venue, And Dismissal; 3) Appendix of Unreported Authorities;** and all exhibits to be served via first-class mail on:

Kevin Walz
93 Werner Road, Building A
Greenville, PA 16125

David Cardillo
23 St. Glory Road
Greenville, PA 16125

_____
Doah Kim

Sworn to before me this
8th day of July, 2008

_____
Notary Public State of California

ELENOR ASHE STONE
Commission # 1577170
Notary Public - California
Los Angeles County
My Comm. Expires May 8, 2009